1   Sheri L. Kelly, SBN 226993
    E-mail: slk@sherikellylaw.com
2   **LAW OFFICE OF SHERI L. KELLY**
3   31 E. Julian Street
    San Jose, CA 95112
4   Telephone:     (408) 287-7712
    Facsimile:     (408) 583-4249
5
    Counsel for Plaintiffs
6   [Additional Counsel Listed on Signature Page]

7

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10                       SAN FRANCISCO DIVISION

11

12
    STANLEY D. CANNON and PATRICIA R.          Case No. CV-12-01376 EMC
13  CANNON, individually, and for all other persons
    similarly situated                         **FIRST AMENDED CLASS ACTION
14                                              COMPLAINT**
15          Plaintiffs,
                                                **1. BREACH OF CONTRACT,
16      v.                                          INCLUDING THE IMPLIED
                                                    COVENANT OF GOOD FAITH AND
17  WELLS FARGO BANK, N.A., FEDERAL                 FAIR DEALING**
18  NATIONAL MORTGAGE ASSOCIATION, and
    ASSURANT, INC.,                             **2. UNJUST ENRICHMENT**
19
            Defendants.                         **3. CONVERSION**
20
                                                **4. BREACH OF FIDUCIARY DUTY**
21
                                                **5. VIOLATIONS OF THE TRUTH IN
22                                                  LENDING ACT, 15 U.S.C. § 1601
                                                    *et seq.***
23
                                                **6. VIOLATIONS OF CAL. BUS. & PROF.
24                                                  CODE § 17200, *et seq.***

                                                **7. VIOLATIONS OF THE REAL ESTATE
25                                                  SETTLEMENT PROCEDURES ACT, 12
                                                    U.S.C. § 2601, *et seq.***
26
                                                **8. EQUITABLE RELIEF**
27
                                                **[JURY TRIAL DEMANDED]**

PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT, CASE NO. CV-12-01376 EMC

Plaintiffs Stanley D. Cannon and Patricia R. Cannon, acting individually and on behalf of all others similarly situated, for their First Amended Complaint and demand for jury trial, state and allege as follows:

## **NATURE OF THE ACTION**

1.      This is an action seeking damages and other relief against Wells Fargo Bank, N.A. ("Wells Fargo" or "Wells"), Federal National Mortgage Association ("Fannie Mae"), and Assurant, Inc. ("Assurant") for wrongful and collusive business practices relating to force-placed flood insurance.

2.      Wells Fargo is among the country's largest residential mortgage lenders and loan servicers. Fannie Mae is a national mortgage finance company that buys and owns mortgages originated by other lenders, such as Wells Fargo. To service its vast portfolio of loans, Fannie Mae hires servicing agents to service its loans pursuant to the contract terms contained within the loans. The mortgages Wells Fargo services require the borrowers to maintain acceptable flood and hazard insurance on the residential property securing their loans. When borrowers do not obtain insurance coverage in the amounts Wells Fargo requires, it exercises its right to purchase insurance for the borrower. This is standard and appropriate. Such purchase of insurance by the lender is commonly known as "force-placement."

3.      What is not standard and appropriate is the exploitative and self-dealing arrangement Wells Fargo engages in when it purchases force-placed insurance. Wells Fargo entered into an exclusive purchase arrangement with Assurant. Under this agreement, Wells agreed to purchase every force-placed insurance policy for homeowners with home mortgages from Assurant's subsidiaries, American Security Insurance Company and Standard Guaranty Insurance Company (collectively, "ASIC"). In return, Assurant contractually agreed to pay Wells Fargo or its affiliates a kickback equal to 10% to 20% of the premium for every force-placed insurance policy. This arrangement is an exclusive arrangement, meaning that Wells Fargo purchases all force-placed insurance from ASIC and does not seek competitive bids for insurance policies. This arrangement is never disclosed to borrowers.

4.      Wells Fargo's servicing responsibilities such as tracking insurance coverage on borrower's properties, sending notices related to insurance coverage issues, and force-placing insurance are performed by ASIC. Borrowers foot the bill for this outsourcing arrangement when they pay exorbitant force-placed insurance premiums, including Wells Fargo's kickbacks, to ASIC.

5.      Wells Fargo uses its sister corporation, Wells Fargo Insurance, Inc., as the "agent" that gets paid for "finding" and placing the force-placed insurance. But there is no "finding" involved. No typical insurance agent services that would entitle an agent to a commission are performed. Wells already has written contracts with ASIC where it is agreed that *all* force-placed insurance for Wells Fargo's borrowers will be purchased from ASIC. These agreements provide that ASIC will pay 10%-20% rebates as "commissions," which are actually just kickbacks.

6.      Wells Fargo charges borrowers' mortgage escrow accounts for force-placed insurance premiums, including its kickbacks, and increases borrowers' mortgage payments to pay the premiums and kickbacks. If the borrower refuses or fails to pay, Wells Fargo adds the premiums to borrower's mortgage balance and charges the borrower interest on these charges, creating a new loan. Fannie Mae, by and through its servicing agent Wells Fargo, has a fiduciary duty to Plaintiffs and Class members with respect to their escrow accounts. The purpose of force-placed insurance is to protect the lender's interest in the property securing a mortgage. The purpose is not to gouge the borrower solely to profit the mortgage servicer. The purpose is not to shift the cost of the mortgage servicer's operations—such as keeping up with the status of borrowers' insurance coverage, sending notices about deficient coverage, and the like—to the borrower by outsourcing these operations to an insurance company that charges two to ten times the going rate for insurance.

7.      Wells Fargo requires all borrowers with loans it services to maintain flood insurance equal to the "replacement cost value" of the borrower's property. That is, Wells requires borrowers to maintain enough flood insurance to rebuild the property in the event that a flood completely destroys it. If the borrower does not maintain this amount of flood insurance, Wells force-places insurance up to the replacement cost value of the property or $250,000 (the federal maximum for flood insurance), whichever is less. Regardless of the propriety of maintaining replacement cost

value coverage, no borrower's mortgage authorizes the servicer to force-place insurance in excess of the borrower's mortgage balance. The purpose of force-placed insurance is only to protect the lender's interest in the property, which is the outstanding principal balance on the loan. For example, in 2008 Plaintiffs were force-placed into a flood insurance policy that resulted in at least $238,100 of total flood insurance when combined with their existing coverage. The principal balance on their mortgage at origination three years earlier was $128,000. Wells Fargo force-placed Plaintiffs into a flood insurance policy that, at the very least, provided $110,100 more coverage than their initial mortgage balance. This practice of requiring "excess" insurance is not necessary to protect Fannie Mae's interests. If a loss to the property occurred and the Plaintiffs maintained only $128,000 in insurance, the policy's proceeds would pay off their mortgage, and the lender would be fully protected. Force-placing more is unlawful and breached Plaintiffs' mortgage.

8.     Plaintiffs allege that (1) Defendants force residential borrowers to purchase and/or maintain flood insurance in excess of the amounts required by federal law, in amounts greater than the note owner's secured interest in the property, and contrary to the amounts agreed upon in the relevant loan and mortgage documents; and (2) Defendants derive an improper financial benefit by charging residential borrowers for the "cost" of procuring force-placed insurance from ASIC when a portion of such "cost" is returned, transferred or paid to Wells Fargo or an affiliate. Wells characterizes these hidden costs as "commissions," or otherwise earned, but in reality they are unearned kickbacks.[1]

9.     Fannie Mae is the owner of Plaintiffs' note and mortgage, and, as more fully set forth below, is jointly and severally liable for the wrongful actions undertaken by its agent Wells Fargo. Additionally, as the entity in privity of contract with Plaintiffs, Fannie Mae is directly liable to Plaintiffs for its own wrongful actions.

10.     Fannie Mae's and Wells Fargo's practices alleged in this Amended Complaint constitute a breach of contract, including the implied covenant of good faith and fair dealing, violate

---

[1] "**Kickback**, *n.* (1920) A return of a portion of a monetary sum received, esp. as a result of coercion or a secret agreement." Black's Law Dictionary (9th Ed. 2009).

the fiduciary duty Defendants have with respect to the management and use of borrowers' escrow funds, violate the Truth in Lending Act ("TILA") and the Real Estate Settlement Procedures Act ("RESPA"), violate California Bus. & Prof. Code § 17200, unjustly enriched the defendants, and constitute an act of conversion. Assurant's actions alleged in this Amended Complaint constitute unjust enrichment, a violation of RESPA, and a violation of California Bus. & Prof. Code § 17200.

11.     Plaintiffs seek to recover damages equal to the amount of the improper and inequitable financial benefit received by Wells or its affiliate as a result of this anti-consumer practice, treble damages pursuant to RESPA, and to enjoin the future collection of amounts charged against the mortgage accounts of residential borrowers but not yet collected.

## JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT

12.     This Court has jurisdiction over this action under the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d)(2) and (6), because the aggregate claims of the putative Class members exceed $5 million, exclusive of interest and costs, and because there is diversity of citizenship between Plaintiffs, who are citizens of a different state than the defendants.

13.     This Court also has original jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331. Plaintiffs' state law claims arose out of the same transaction and occurrence as their RESPA and TILA claims and are so related to Plaintiffs' RESPA and TILA claims that they form part of the same case or controversy.

14.     Venue is proper in this district pursuant to 28 U.S.C. § 1391.  Wells Fargo is subject to personal jurisdiction here and resides here, because its principal place of business is 420 Montgomery Street, San Francisco, California 94163, and because a substantial part of the acts or omissions giving rise to the claims herein occurred and continue to occur in this district.

## PARTIES

15.     Stanley D. Cannon and Patricia R. Cannon are, and, at all relevant times have been, residents of Sarasota County, Florida.

16.     Proposed Class members are residents of the United States.

17.     Defendant, WELLS FARGO BANK, N.A. ("Wells Fargo Bank") is a national bank

1   registered to do business in the State of California with its principal address in San Francisco,

2   California. As a result of a 2004 merger, Wells Fargo Bank is the successor to Wells Fargo Home

3   Mortgage, Inc., which no longer exists. Wells Fargo Bank sometimes does business under the name

4   Well Fargo Home Mortgage.

5         18.    Defendant, FEDERAL NATIONAL MORTGAGE ASSOCIATION, ("Fannie Mae")

6   is a federally chartered company formed under the laws of the District of Columbia doing business

7   in the State of California.

8         19.    Defendant ASSURANT, INC. is a for profit corporation with its principal office in

9   New York, New York doing business in the State of California. It owns American Security

10  Insurance Company and Standard Guaranty Insurance Company, which are insurance companies

11  with their principle offices in Atlanta, Georgia, and which do business in the State of California.

12                              **FACTUAL ALLEGATIONS**

13        **A.     Wells's Role as Servicer**

14        20.    Wells Fargo provides services including, but not limited to, banking, insurance,

15  investments, mortgage, and consumer and commercial finance across North America. It services

16  approximately 9 million mortgages, and has assets of $1.2 trillion.

17        21.    As servicer, Wells Fargo's responsibilities included sending monthly mortgage

18  statements, collecting monthly mortgage payments, collecting and maintaining escrow accounts for

19  the payment of insurance on properties used to collateralize loans, paying for such insurance on

20  those properties from borrower's escrow accounts, monitoring and ensuring that all required forms

21  of insurance are in full force and effect, notifying borrowers of insurance lapses and other required

22  actions, procuring and paying for force-placed insurance, and accounting for and remitting

23  borrowers' payments to Wells Fargo.

24        22.    Wells Fargo is delegated these responsibilities as a mortgage servicer by the lender,

25  or note holder, for millions of mortgages. Wells Fargo, in turn, outsources many of these

26  responsibilities to third parties. Wells Fargo delegates many of its insurance-related responsibilities

27  to ASIC and other companies owned by separate Defendant Assurant.

### B.   ASIC's Role as an Outsourcer and Insurance Company

23.   Wells Fargo outsources many of its servicing responsibilities described above to ASIC, or one of Assurant's other subsidiaries. Under this outsourcing arrangement, Assurant's subsidiaries monitor borrowers' flood insurance coverage, send letters on Wells Fargo letterhead stating when borrowers need to increase their flood insurance coverage, and force-place coverage on borrowers' property if the borrowers do not obtain sufficient coverage to meet Wells Fargo's requirements.

24.   As part of this "bundle" of services, Wells Fargo also authorizes Assurant to purchase every force-placed policy for Wells Fargo's borrowers with ASIC. In return for this lucrative business, every time ASIC force-places an insurance policy on one of Wells Fargo's borrowers' property, it pays a portion of the premium to Wells Fargo, or its affiliate Wells Fargo Insurance, Inc.

### C.   Fannie Mae's Role as Note Owner

25.   Defendant Fannie Mae is a national mortgage finance company that buys and owns mortgages originated by other lenders, such as Wells Fargo. As a major purchaser of mortgages on the "secondary market," Fannie Mae produces standard form mortgages for mortgage originators to use when originating loans that will ultimately be sold to Fannie Mae. To service its vast portfolio of loans, Fannie Mae hires servicing agents to service its loans pursuant to the contract terms contained within the loans. Fannie Mae is the owner of the Plaintiffs' note and mortgage.

26.   On information and belief, Fannie Mae hired Wells Fargo as its actual and general agent to service Plaintiffs' loan. In addition, Fannie Mae, intentionally, or by want of ordinary care, causes its borrowers to believe Wells Fargo to be its agent by virtue of the actions taken by Wells Fargo under its servicing agreement with its principal Fannie Mae. As its principal, Fannie Mae is vicariously liable for the acts of its agent Wells Fargo. As the sole party in privity of contract with Plaintiffs, Fannie Mae is also directly liable to Plaintiffs and Class members for its own wrongful actions.

### C.     Facts as to Stanley D. Cannon and Patricia R. Cannon.

27.     On September 9, 2005, Plaintiffs obtained their mortgage loan from Amerisave Mortgage Corporation. The principal balance of their mortgage at closing was $128,000. After the closing of the loan, the note and mortgage were ultimately purchased by Fannie Mae. A true and correct copy of the mortgage is attached as **Exhibit A**.

28.     Pursuant to the mortgage, Plaintiffs are required to insure the improvements on the real property:

> 5.     Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included with the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires…The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably…
>
> If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrowers expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with

PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT, CASE NO. CV-12-01376 EMC

such interest, upon notice from Lender to Borrower requesting payment.

(Emphasis added)

29.    Plaintiffs' mortgage was a Fannie Mae form mortgage. Most of the mortgages Wells Fargo serviced during the Class period were, likewise, Fannie Mae mortgages written on forms that contained provisions regarding property insurance that were substantially similar to those in Section 5 of Plaintiffs' mortgage.

30.    While this standardized provision states that the "cost of the [force-placed] insurance so obtained might significantly exceed the cost of insurance that Borrower could have obtained," it does not authorize or contemplate that Wells Fargo or an affiliate will derive a hidden profit or financial benefit by procuring force-placed insurance from ASIC. Nor does it authorize Wells Fargo to add these hidden kickbacks as additional debt of the borrower.

31.    Plaintiffs' home was located in a Special Flood Hazard Area, as defined by federal regulations, at the time they entered into the mortgage. Plaintiffs' signed a "Notice of Special Flood Hazards and Availability of Federal Disaster Relief Assistance" at the time they entered into their mortgage. On information and belief, based on the fact that these notices were standard form documents used by many mortgage originators, this notice stated that Plaintiffs were required to maintain flood insurance that "must cover ***the*** lesser of: (1) the outstanding principal balance of the loan; or (2) the maximum amount of coverage allowed for the type of property under the NFIP. Flood insurance coverage under the NFIP is limited to the overall value of the property securing the loan minus the value of the land on which the property is located." Plaintiffs received a form disclosure containing this language with a prior mortgage on their property, but do not possess a copy of this notice as provided with the mortgage that is the subject of their contract claims.

32.    Plaintiffs obtained sufficient flood insurance coverage to close on their mortgage in 2005. Neither their mortgage lender nor initial servicer (Ohio Savings Bank) advised them to increase their flood insurance coverage.

33.    Wells Fargo Home Mortgage began servicing Plaintiffs' mortgage on or about

February 1, 2006 and continued to do so until Wells Fargo Home Mortgage and Wells Fargo merged. Since the merger, Wells Fargo has serviced Plaintiffs' mortgage for Fannie Mae.

34.     Beginning in April of 2006—two months after Wells Fargo began servicing their mortgage—and continuing until the present, Wells Fargo incrementally increased the amount of flood insurance Plaintiffs were required to maintain.

35.     Defendants did not and cannot identify any changes in Plaintiffs' mortgage or circumstances that justified Wells Fargo's unilateral decision to increase the amount of flood insurance it required Plaintiffs to maintain. The mortgage contract did not require Plaintiffs to maintain flood insurance in an amount greater than the principal balance of the mortgage loan, and Plaintiffs' existing coverage was adequate under federal law and the mortgage agreement.

36.     For example, in 2006, Wells Fargo demanded that Plaintiffs increase their flood insurance coverage by $79,200. Plaintiffs did so and maintained $227,900 of flood insurance coverage beginning in August of 2006. Despite this, Wells Fargo force-placed them into $10,200 of additional flood insurance on May 29, 2008.

37.     On April 6, 2006, Wells Fargo sent Plaintiffs a form letter stating "Our records indicate that the amount of coverage provided by your current flood insurance is less than the coverage required by Wells Fargo Home Mortgage." The letter went on to say that "your flood insurance coverage should provide replacement cost coverage for your structure/improvements…"

38.     On May 30, 2006, Wells sent Plaintiffs a form letter titled "NOTICE OF TEMPORARY FLOOD INSURANCE PLACED BY LENDER DUE TO DEFICIENT COVERAGE" stating that it had purchased a flood insurance binder from ASIC to obtain $79,200 in additional flood insurance coverage for him at an annual cost of $772.18. The policy was placed with ASIC. Plaintiffs subsequently purchased $227,900 in flood insurance from Fidelity National Property & Casualty Insurance Company to avoid paying ASIC's exorbitant premiums and maintained this amount of insurance to avoid further force-placement in the future.

39.     Again on April 21, 2008, ASIC sent Plaintiffs another "INSURANCE BINDER" force-placing an additional $10,200 in flood insurance for which Plaintiffs were charged $94.95.

40.     On May 29, 2008, Wells Fargo sent Plaintiffs a form letter titled "NOTICE OF PLACEMENT OF FLOOD INSURANCE," which informed them that Wells Fargo had purchased a flood insurance policy that would cost $94.95 in annual premiums, which would be withdrawn from their escrow account. This policy was placed with ASIC. Wells Fargo withdrew $94.95 from Plaintiffs' escrow account to pay ASIC. On information and belief, ASIC returned at least $9.50 of this amount to Wells Fargo or Wells Fargo Insurance, Inc.

41.     At this time, Plaintiffs' private flood insurance policy combined with ASIC's force-placed flood insurance policy provided a total of at least $238,100 in flood insurance coverage. Their mortgage balance was significantly below this amount. Although documents in Defendants' possession—such as mortgage statements—will be necessary to verify the amount of excessive coverage, Plaintiffs' original principal balance at the time of closing on their mortgage was $128,000 and the total principal balance on the mortgage on November 23, 2011, when Wells Fargo filed a complaint to foreclose on Plaintiffs' mortgage, was $104,828.11.

42.     Plaintiffs lack administrative remedies to address the wrongful conduct alleged herein.

43.     All conditions precedent to the relief sought herein have been performed, occurred or been waived. Plaintiffs' contract requires pre-suit notice, but such notice would be futile. First, Wells has already filed a complaint to foreclose on Plaintiffs' property due to a default on the mortgage that arose from Defendant's wrongful practices. Second, Defendant's practices that are the subject of this complaint—force-placing excessive insurance on borrowers in order to receive a kickback—are contractually mandated, such that Wells Fargo cannot correct its practices to conform with the law absent intervention of the Court.

**C.     Facts Common to the Classes**

44.     Each and every mortgage at issue in this litigation which is owned by Fannie Mae or Wells Fargo and/or serviced by Wells Fargo requires borrowers, including Plaintiffs, to maintain insurance on their real property. If the borrower fails to maintain the requisite insurance, the mortgage servicer may force-place insurance on the property.

45.     Fannie Mae mortgages serviced by Wells Fargo are standardized residential mortgage instruments that contain substantially identical provisions regarding flood insurance and fees that may be imposed in connection with force-placed insurance to those cited above (section 5 of **Exhibit A**).

46.     Pursuant to the mortgage contracts at issue, once an insurance policy has lapsed, the mortgage servicer can purchase insurance for the home, "force-place" it, and then charge the borrower the full cost of the premium. However, these premiums are not the actual amount that Wells Fargo pays, because a substantial portion of the premiums are refunded to Wells Fargo through kickbacks or unwarranted "commissions."

47.     In accomplishing this force-placement, Wells Fargo, in bad faith, entered into arrangements with Assurant to guaranty that Assurant's subsidiary, ASIC, would be the exclusive force-placed insurance provider for all force-placed policies on mortgages Wells Fargo services. Under this arrangement Wells Fargo charges exorbitant rates to Plaintiffs and the Classes who have no way of refusing the force-placed charges. These premium rates or charges were not arrived at on a competitive basis and were well in excess of those which could have been obtained in the open market by Wells Fargo, Plaintiffs or the Classes. Accordingly, no good faith arms-length transactions are taking place.

48.     The premiums on force-placed insurance policies generally cost at least five to six times, and often up to ten times, more than what the borrower was either originally paying or what the borrower could obtain if he or she purchased the insurance on a competitive basis on the open market.

49.     Force-placed insurance policies are extremely lucrative for ASIC and generate extremely high profit margins. Assurant collected $2.7 billion of premiums in 2010 through its force-placed insurance division alone.

50.     Wells Fargo and Assurant have reaped significant profits relating to force-placed insurance.

51.     Wells Fargo receives commissions or kickbacks from ASIC once one of the high-

PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT, CASE NO. CV-12-01376 EMC

priced, force-placed, insurance policies is purchased. These kickbacks are directly tied to the cost of the force-placed insurance and are usually a percentage of the premium for the policy.

52.     This kickback arrangement provides the mortgage servicer with an incentive to purchase the highest priced force-placed insurance policy on a non-competitive basis that it can— the higher the cost of the insurance policy, the higher their kickback. Ultimately, the consumer pays the bill. Wells maximizes the amount of its commissions or kickbacks by force-placing borrowers into insurance policies in excess of the amounts required by federal law, in amounts greater than the note owner's secured interest in the property, and contrary to the amounts agreed upon in the relevant loan and mortgage documents.

53.     The commission or kickback is paid by Assurant to Wells Fargo in order to maintain their pre-existing uncompetitive and exclusive relationship, to induce Wells Fargo to purchase excessively-priced force-placed insurance policies from ASIC, and to cause Wells Fargo to not seek competitive bids in the market.

54.     The Defendants have entered into an arrangement such that a competitively priced insurance policy is not actually "found" for any given property. Therefore, the notion that any "commission" is due to Wells Fargo or its affiliates is false. Rather, Wells has a pre-set arrangement by which Assurant has access to and searches Wells Fargo's database to find lapsed insurance policies. Then Assurant writes to the homeowners to notify them of the force-placed coverage. Assuming there is a lapse in coverage, insurance is automatically placed—the provider of the insurance and the cost of the insurance are pre-determined under this relationship. Further, the cost of the insurance for each home bears no relation to each homeowner's individual home. Rather it is pre-determined based upon Well Fargo's entire portfolio of mortgages.

55.     Therefore, Wells Fargo is not just paying Assurant for force-placed insurance. It is also paying Assurant for a bundle of services, including performing Well Fargo's job of administering and servicing the mortgages (monitoring Wells Fargo's entire portfolio for lapses and providing proper notification to homeowners under the mortgage). This bundle of administrative services includes Wells Fargo's cost of monitoring and servicing its entire portfolio of loans and is

not chargeable to Plaintiffs under the mortgages.

56.    Under this arrangement, the "premiums" for insurance that are charged to the Plaintiffs are exorbitant and illegal because they not only include the excessive cost of insurance, but they also include illegal kickbacks and the cost of the bundle of administrative services that Assurant is providing to Wells Fargo.

57.    This arrangement insures that Assurant and its subsidiaries are the only entities providing force-placed insurance for Wells Fargo borrowers, with Wells Fargo signing off on the force-placed policies and collecting kickbacks, and the consumer providing the money.

58.    If the consumer cannot afford to pay the exorbitant premiums for force-placed insurance, the premiums are added to the mortgage's principal balance.

59.    In addition, Wells force-places retroactive insurance policies covering periods of time in the past where coverage had lapsed. This is done despite the fact that there are no claims during the lapsed period and the homeowner has since secured standard insurance. Moreover, retroactive force-placed insurance is especially egregious given the fact that the National Association of Insurance Commissioners has stated that insurance is "prospective in nature" and that policies should not be backdated.

60.    The actions and practices described herein represent bad faith and unconscionable practices that, even if the terms of the mortgage could be construed to allow them, would still be an abusive and unlawful exercise of the lender's authority under the contract. Placing these unreasonably, uncompetitively, and excessively priced insurance policies on Plaintiffs and the similarly situated Class Members' mortgages without regard for competition on the open market to obtain a commercially reasonable price, is solely to maximize Wells Fargo's own profits through kickbacks collected from the exorbitant premiums for force-placed policies. Said conduct is prohibited by state and Federal law.

61.    As servicing agent for Fannie Mae, Wells Fargo is entitled under Plaintiffs' and each Class Member's mortgage to purchase force-placed insurance. Wells Fargo must, however, purchase force-placed insurance in good faith. Indeed, Plaintiffs do not seek to prevent or significantly

interfere with Defendants' ability to force place insurance coverage pursuant to the mortgage contracts. Rather, Plaintiffs demand that the Defendants perform their duties in good faith.

62.     Wells Fargo's manipulation of its force-placed insurance purchases has maximized the profits to themselves to the great detriment of Plaintiffs and the Classes.

63.     Wells Fargo was not, and is not, authorized by any federal, state, or local governing body, contract, or agreement to manipulate its force-placed insurance purchases in bad faith as alleged above.

64.     Furthermore, these fraudulent practices have recently come under fire by all fifty State Attorneys General as part of a nationwide investigation. As the State Attorneys General have recognized, this practice has greatly contributed to the foreclosure crisis.

**D.     Facts Supporting Equitable Tolling**

65.     Plaintiffs' RESPA and TILA claims are timely irrespective of equitable tolling because Defendants added fees for their undisclosed kickbacks on force-placed insurance premiums to the Plaintiffs mortgage balance repeatedly from 2008 through 2011. Wells Fargo charged Plaintiffs interest on these force-placed insurance charges. Adding force-placed insurance premiums above the for coverage above Plaintiffs' mortgage balance and charging interest on these charges created a new loan obligation subject to all requirements of RESPA and TILA. Wells Fargo last added force-placed insurance charges to Plaintiffs' mortgage balance on November 23, 2011 when they filed a complaint to foreclose on Plaintiffs' property. The foreclosure documents included a claim of $7,811.27 for "escrow advances," which are used to pay for insurance premiums and property taxes, and added this amount to the total value of the foreclosure claim.

66.     To the extent that Plaintiffs' or any Class Member's claims accrued outside the applicable statute of limitations, these claims are subject to equitable tolling.

67.     Plaintiffs' and Class Members' claims are subject to equitable tolling because they could not, despite the exercise of due diligence, have discovered the underlying basis for their claims against Defendants. Defendants, through Wells Fargo's notices to Plaintiffs and Class Members, actively and knowingly concealed the basis for Class Members' claims by engaging in a

scheme that was self-concealing by its very nature and design. Any delay by Plaintiffs or Class Members in raising claims against Defendants was, therefore, excusable.

68.    Due to the complex, undisclosed and self-concealing nature of Defendants' scheme to collect kickbacks from ASIC, Class Members whose claims accrued outside the statute of limitations did not possess sufficient information or the requisite expertise to enable them to discover the true nature of Defendants' unlawful kickback scheme. Plaintiffs and Class Members had no basis upon which to investigate the validity of any of Wells Fargo's commissions.

69.    Additionally, Wells Fargo engaged in affirmative acts to conceal the facts and circumstances giving rise to the claims asserted herein. In fact, Wells Fargo's form letters to borrowers regarding force-placed insurance affirmatively misled borrowers about Wells Fargo's relationship with ASIC and misrepresented that the so-called commissions paid to Wells Fargo were for services actually performed or expenses actually incurred by Wells Fargo or its affiliate, Wells Fargo Insurance. As stated above, these "commissions" were in fact unearned kickbacks.

70.    Plaintiffs and Class Members did not have sufficient information to put them on notice of the true nature of Defendants' captive reinsurance arrangement with ASIC. Defendants intentionally designed its force-placed insurance letters to conceal its kickback arrangement, and to mislead borrowers into believing that Defendants' practices are lawful.

71.    Additionally, information regarding Defendants' kickback scheme has not been publicly available. Upon information and belief, "commissions" for force-placed insurance are not often reported by banks, and captive companies do not have to file the detailed annual reports usually required of commercial insurance companies. *See*, Janis Mara, *Industry News, Wells Fargo, Citibank Under Investigation in Alleged Kickback Schemes*, Mar. 7, 2005, http://www.atla.org/indynews/news.cfm?newsID=2571 ("The annual reports and actuarial reports of Vermont's captives are protected by the state's confidentiality laws and cannot be accessed without a court order by anyone other than a regulator.") Thus, even the most sophisticated borrower could not obtain such information even if he wanted to do so, absent filing a lawsuit and obtaining a subpoena.

72.     The Court should excuse the delay of any Class Members whose claims arose outside the relevant statute of limitations because they did not and could not discover Defendants' wrongful conduct absent specialized knowledge or assistance of counsel. As such, it would be inequitable to apply the statutes of limitations so as to preclude any Class Member's claims.

**CLASS ALLEGATIONS**

73.     Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Fed. R. Civ. P. 23. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23(a)(1)-(4) and (b)(3).

74.     The proposed Classes are defined as:

**Force-Placed Class:**

All persons in the United States with loans owned by Fannie Mae or serviced by Wells Fargo who, within the applicable statute of limitations through March 4 2012, were charged for a force-placed flood insurance policy procured through Defendants (the "Force-Placed Class").

**Excess Insurance Class:**

All persons with loans owned by Fannie Mae or serviced by Wells Fargo who, within the applicable statute of limitations through March 4, 2012, were required to purchase or maintain, or on whose behalf Wells Fargo purchased "lender placed" or "force-placed" flood insurance coverage on their property in excess of their total outstanding loan balance (the "Excess Insurance Class").

**California Subclass: (For Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*.):**

All individuals in the state of California with a loan owned by Fannie Mae or serviced by Wells Fargo who, within the applicable statute of limitations through March 4, 2012 were charged for a force-placed flood insurance policy procured through Defendants within the applicable statute of limitations through March 4, 2012. (the "California Sub-Class").

75.     Plaintiffs reserve the right to modify or amend the definition of the proposed Classes before the Court determines whether certification is appropriate.

76.     Excluded from the Classes are Wells Fargo, Fannie Mae, and Assurant, their respective parents, subsidiaries, affiliates, officers, employees and directors, as well as any entity in which they have controlling interests, and counsel for Plaintiffs.

77.     The members of the Classes are so numerous that joinder is impractical. The Classes are believed to consist of thousands of members, whose identities are within the exclusive knowledge of and can only be ascertained by resort to the records of Wells Fargo, Assurant, and Fannie Mae.

78.     There are questions of law and fact common to Plaintiffs and the Classes that predominate over questions affecting individual Class members. These common questions include:

a.     Whether Defendants breached the mortgage contract with borrowers by charging borrowers a high premium "cost" for force-placed insurance when, in reality, a significant portion of this "cost" was actually returned, transferred, or paid to Wells or an affiliate of Wells;

b.     Whether Defendants breached the implied covenant of good faith and fair dealing by charging their residential borrowers amounts for force-placed insurance procured from Assurant or its subsidiaries, a portion of which was returned, transferred or paid to Wells or an affiliate;

c.     Whether Defendants were unjustly enriched by charging their residential borrowers amounts for force-placed insurance procured from Assurant or its subsidiaries, a portion of which was returned, transferred or paid to Wells or an affiliate;

d.     Whether Defendants converted funds owned by borrowers by withdrawing such funds from borrowers' escrow accounts and requiring borrowers to pay to replenish their escrow accounts in order to pay the premiums for force-placed insurance procured from Assurant or its subsidiaries, a portion of which was returned,

1            transferred or paid to Wells or an affiliate;

2     e.       Whether Defendants acted unfairly by entering into an exclusive buying arrangement

3            with Assurant and its subsidiaries in order to receive kickbacks of a portion of

4            insurance premiums paid to Assurant's subsidiaries for force-placed insurance

5            policies;

6     f.       Whether Defendants' kickbacks are unlawful fee splits prohibited by RESPA; and

7     g.       Whether Defendants should be enjoined from continuing to receive kickbacks from

8            Assurant and its subsidiaries, and withdrawing the amounts of these kickbacks from

9            borrowers' escrow accounts.

10     79.     Plaintiffs' claims are typical of the claims of other members of the Classes. Plaintiffs,

11 like all Class members, were charged for force-placed insurance procured without seeking

12 competitive bids on the open market by Wells Fargo from Assurant and its subsidiaries to insure

13 property secured by a residential mortgage originated, owned or serviced by Wells. Plaintiffs, like

14 all Class members, sustained damages based on the same actions of Wells and have no interest

15 antagonistic to the interests of any members of the Classes.

16     80.     Plaintiffs are committed to the vigorous prosecution of this action and have retained

17 competent counsel experienced in the prosecution of complex litigation and consumer class actions.

18 Plaintiffs and their counsel will fairly and adequately protect the interests of the Classes.

19     81.     A class action is superior to other available methods for the fair and efficient

20 adjudication of this controversy. Since the amount of each Class member's claim is small relative to

21 the complexity of the litigation, and due to the financial resources of Defendants, Class members

22 cannot realistically afford to seek legal redress individually for the claims alleged herein. Therefore,

23 absent a class action, members of the Classes have no realistic likelihood of recovering their

24 damages, and Wells Fargo's wrongful practices alleged herein will continue unabated.

25     82.     Even if members of the Classes could afford to pursue individual litigation,

26 individualized litigation would significantly increase the delay and expense to all parties and to the

27 Court. Individualized litigation would also create the potential for inconsistent or contradictory

rulings. In contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court. Thus, a class action will allow redress for many persons whose claims would otherwise be too small to litigate individually. There will be no difficulty in the management of this action as a class action.

83.     Defendants have acted or failed to act in a manner generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole.

**CAUSES OF ACTION**

**COUNT I**

**BREACH OF CONTRACT, INCLUDING THE IMPLIED COVENANT OF**

**GOOD FAITH AND FAIR DEALING**

*AGAINST FANNIE MAE AND WELLS FARGO*

84.     Plaintiffs restate and reallege the preceding paragraphs of this Complaint as though set out here word for word.

85.     Wells Fargo's actions as mortgage servicer constitute a breach of the express terms' of Plaintiffs' mortgage and breach of the implied covenant of good faith and fair dealing.

86.     Plaintiffs initially borrowed their mortgage funds from Amerisave Corporation. Their mortgage was eventually sold to Fannie Mae. Foreclosure documents filed by Wells Fargo state that Wells Fargo is the "note holder" whereas Fannie Mae is the "note owner." Other documents that Wells Fargo sent to Plaintiffs indicate that it is Plaintiffs' mortgage servicer.

87.     Plaintiffs bring their claim for breach of contract against Fannie Mae, who owns their note and is responsible for all actions of its agent, Wells Fargo. To the extent Plaintiffs have any contract with Wells Fargo, Plaintiffs bring their breach of contract and breach of the covenant of good faith and fair dealing claims against Wells Fargo as well.

88.     Section 3 of Plaintiffs' mortgage governs how a mortgage lender should apply funds

for items paid out of escrow, such as flood insurance premiums. Paragraph 3 states that the "Lender shall not charge Borrower for holding and applying Funds" to escrowed items. Wells Fargo's kickback scheme violates this provision by charging borrowers a fee, which it calls a "commission," for doing nothing more than paying ASIC force-placed insurance premiums.

89.     Section 5 of Plaintiffs' mortgage governs the parties' rights and obligations concerning all forms of homeowners' insurance. Paragraph 5 requires Plaintiffs to obtain flood insurance "in the amounts . . . and for the periods that Lender requires." However, it goes on to state that, if Plaintiffs do not maintain the amount of flood insurance the lender requires, "Lender may obtain insurance coverage, at Lender's option and Borrower's expense," and "such coverage shall cover Lender . . . ." The mortgage deed of trust allows the lender to ask Plaintiffs to obtain insurance in excess of the principal balance of the mortgage, but it does not allow the lender to force-place insurance in excess of the principal balance of the mortgage.

90.     Section 5 also requires the borrower to acknowledge "that the cost of the [force-placed] Insurance coverage . . . might significantly exceed the cost of insurance that Borrower could have obtained." Wells Fargo's scheme to intentionally inflate the "cost" of this insurance through its exclusive purchasing arrangement with ASIC violates this provision. Moreover, Wells Fargo's kickbacks cannot reasonably be construed as part of the "cost" of force-placed insurance. Charging Plaintiffs' for Wells Fargo's kickbacks violates this provision of Plaintiffs' mortgage. Section 5 does not contain the word "commission" or any other explicit or implicit authorization for the payment of any remuneration to Wells or its affiliates for the purchase of force-placed insurance.

91.     Section 9 of Plaintiffs' mortgage governs the Lender's rights when the borrower fails to abide by any covenant contained in the mortgage, including the requirement to maintain adequate insurance. It states that if the borrower does not maintain adequate insurance "Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the property and rights under this Security Instrument . . . ." Wells Fargo's decision to force-place insurance on Plaintiffs' property far above the principal balance of Plaintiffs' mortgage is not "reasonable or appropriate to protect Lender's interest in the property and rights under this Security Instrument." Wells Fargo's

decision to force-place insurance with a company that guaranteed it kickbacks is not "reasonable or appropriate to protect Lender's interest in the property and rights under this Security Instrument." These actions violated Plaintiffs' mortgage.

92.     On information and belief, Wells Fargo's insurance requirements also violated the Notice of Special Flood Hazards signed with Plaintiffs' mortgage. The Notice of Special Flood Hazards executed by Plaintiffs is in the possession of Wells Fargo or Fannie Mae, and its terms are a part of the contract formed by the parties at time of closing.

93.     Wells Fargo's excessive insurance requirements, force-placing flood insurance above and beyond the principal balance of Plaintiffs' mortgage, and collusive kickback arrangement with Assurant violated the express terms of Plaintiffs' mortgage and disclosures included with Plaintiffs' mortgage. Fannie Mae is responsible for the actions of its agent, Wells Fargo. Wells Fargo's actions were known or should have been known to Fannie Mae, which failed to intervene, either consciously or with reckless disregard to Plaintiffs' rights.

94.     Fannie Mae, acting through its servicing agent Wells Fargo, breached the express terms of the mortgage contract on May 30, 2006, April 21, 2008, and May 29, 2008, by (1) requiring Plaintiffs to pay charges for force-placed insurance when a part of these charges were returned to Wells Fargo or its affiliate, (2) assessing charges to Plaintiffs' mortgage debt for force-placed insurance that exceeded the "costs" of the insurance policy, (3) charging Plaintiffs fees for payment of items paid through Plaintiffs' escrow account, and (4) threatening to force-place and force-placing insurance on Plaintiffs' property in excess of their mortgage principal balance and charging Plaintiffs for this insurance.

95.     The implied covenant of good faith and fair dealing is part of every contract. While the implied covenant cannot override an express contractual term, it attaches to the performance of a specific contractual provision. The duty to act in good faith limits one party's ability to act in a manner that contravenes the reasonable and justifiable expectations of the other party. When a contract is silent as to the permissibility of certain conduct related to the performance of an express term of a contract, the covenant is used as a "gap-filling" tool.

96.     Section 5 of Plaintiffs' mortgage and Class members' mortgages gives Fannie Mae, by and through its servicing agent Wells Fargo, substantial discretion in the selection of the insurance company and rate for force-placed insurance policies if the borrower allows their insurance to lapse. Fannie Mae is permitted by the contract to force-place insurance with the company of its choice. The "gap" that the covenant of good faith and fair dealing fills is the manner in which Fannie Mae, by and through its servicing agent Wells Fargo, may go about implementing this express term. Specifically, whether Wells Fargo may permissibly set up an exclusive buying arrangement with its chosen insurer where the insurer kicks back a portion of the cost of coverage to Wells Fargo is governed by Wells Fargo's obligation of good faith and fair dealing.

97.     Wells Fargo exercised its discretion capriciously, in bad faith, and in contravention of the parties' reasonable expectations, violating the covenant of good faith and fair dealing in at least the following respects:

(a) Charging a "cost" to Plaintiffs and Class members for force-placed insurance that includes a kickback paid to Wells or its affiliates;

(b) Charging Plaintiffs and Class members for commissions when the insurance is prearranged and no commission is due;

(c) Collecting a percentage of whatever premiums are charged to Plaintiffs and the Classes and not passing that percentage on to the borrower, thereby creating the incentive to seek the highest-priced premiums possible;

(d) Failing to seek competitive bids on the open market and instead contracting to create "back room" deals whereby the insurance policies are continually purchased through the same companies without seeking a competitive price; and

(e) Increasing borrowers' flood insurance requirements to enable Wells Fargo to receive kickbacks.

98.     Plaintiffs and the Classes have sustained damages as a result of Wells Fargo's breach of contract and breach of the implied covenant of good faith and fair dealing, represented by the amount of the hidden profit or financial benefit earned by Wells or its affiliate on force-placed

1  insurance procured through Assurant and its subsidiaries, and excess insurance premiums Class

2  members paid for insurance in excess of their principal loan balance.

3      99.    Plaintiffs and the Class are entitled to compensation equal to the amount of their

4  damages. Plaintiffs and the Class are entitled to an injunction prohibiting Fannie Mae from

5  continuing to allow its servicing agent to charge them for kickbacks and force them to obtain

6  insurance in excess of their mortgage balances.

7                                    **COUNT II**

8                              **UNJUST ENRICHMENT**

9                        *AGAINST WELLS FARGO AND ASSURANT*

10     100.    Plaintiffs restate and reallege the preceding paragraphs of this Complaint as though

11  set out here word for word

12     101.    As discussed above, Plaintiffs never borrowed money from Wells Fargo, and Wells

13  Fargo represented to Plaintiffs that it was the servicer—not owner—of their mortgage, and that

14  Fannie Mae owns Plaintiffs' mortgage contract. If Plaintiffs have no contract with Wells Fargo,

15  their causes of action against Wells Fargo must sound in equity and tort. Further, Wells Fargo's

16  kickback scheme is not referenced directly or indirectly in Plaintiffs' mortgage and, therefore, may

17  not be governed by Plaintiffs' mortgage.

18     102.    Plaintiffs' unjust enrichment claims against Wells Fargo arise from Wells Fargo's

19  illegal practice of earning a hidden profit or other financial benefit by collecting money from

20  residential borrowers for the exorbitant insurance premiums for force-placed flood insurance

21  policies procured through Assurant and its subsidiaries where a portion of the above-market rate

22  premiums were returned to Wells and its affiliates. This secret kickback arrangement between Wells

23  Fargo and Assurant monetarily benefited Wells and its affiliates at the direct expense of the

24  Plaintiffs.

25     103.    Plaintiffs' unjust enrichment claims against Assurant arise from Assurant's

26  agreement to pay kickbacks to Wells Fargo in order to induce Wells Fargo to place all force-placed

27  flood insurance with ASIC.

PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT, CASE NO. CV-12-01376 EMC

104.    Wells Fargo enjoyed and accepted monetary or other financial benefits from Assurant and its subsidiaries by accepting kickbacks paid to Wells Fargo or its affiliates out of the exorbitant above-market rates being charged to the Plaintiffs under this secret kickback arrangement.

105.    Assurant enjoyed and accepted monetary and financial benefits from Class Members by accepting inflated and anti-competitive insurance premiums for force-placed insurance policies purchased on behalf of Wells Fargo's borrowers.

106.    Wells Fargo, its affiliates, Assurant, and its subsidiaries were unjustly enriched, in an amount to be proven at trial, by receiving from Plaintiffs and Class members a benefit in the form of overcharges for force-placed insurance policies that are excessive and unreasonable as a result of Wells Fargo's kickback scheme and exclusive arrangement with Assurant and its subsidiaries. It would be inequitable to allow Wells, its affiliates, Assurant, and its subsidiaries to retain these benefits at the expense of Plaintiffs and the Force-Placed Class.

107.    Wells Fargo should compensate Plaintiffs and the Force-Placed Class in an amount equal to all payments collected from Plaintiffs and the Force-Placed Class that represent the hidden profits or other financial benefits received by Wells or its affiliate. Assurant should compensate the Plaintiffs and the Force-Placed Class in an amount equal to all premiums for force-placed flood insurance collected from Plaintiffs and the Force-Placed Class resulting from its collusion with Wells Fargo.

108.    Wells Fargo, its affiliates, Assurant, and its subsidiaries received and are holding funds belonging to Plaintiffs and the Force-Placed Class, which in equity and good conscience they should not be permitted to keep.

109.    Plaintiffs discovered the illegal kickback arrangement that facilitated Wells Fargo's and Assurant's unjust enrichment in 2011. As discussed above, they could not have discovered this scheme prior to this date.

# COUNT III

## CONVERSION

### *AGAINST WELLS FARGO*

110.    Plaintiffs restate and reallege the preceding paragraphs of this Complaint as though set out here word for word.

111.    As discussed above, Plaintiffs never borrowed money from Wells Fargo, and Wells Fargo represented to Plaintiffs that it was the servicer—not owner—of their mortgage, and that Fannie Mae owns Plaintiffs' mortgage contract. If Plaintiffs have no contract with Wells Fargo, their causes of action against Wells Fargo must sound in equity and tort. Further, Wells Fargo's kickback scheme is not referenced directly or indirectly in Plaintiffs' mortgage and, therefore, may not be governed by Plaintiffs' mortgage.

112.    Plaintiffs bring their conversion claims against Wells Fargo in its individual capacity for taking a portion of Plaintiffs' force-placed flood insurance premiums.

113.    Wells Fargo improperly exercises control of the property of Plaintiffs and Class members by imposing improper kickbacks and charges on Plaintiffs' and Class members' escrow accounts and collecting those kickbacks. For example, Wells Fargo required Plaintiffs to increase their mortgage payments to pay for ASIC's insurance premiums and Wells Fargo's kickbacks and retained these readily identifiable funds. This exercise of control is contrary to the rights of Plaintiffs and members of the proposed Force-Placed Class.

114.    The acts of Wells Fargo constitute the tort of conversion.

115.    Plaintiffs and members of the proposed Force-Placed Class are entitled to the immediate possession of fees improperly collected by Wells Fargo, and are entitled to a release of all escrow charges for the improper fees.

116.    Wells Fargo wrongfully converted specific and readily identifiable funds.

117.    As a direct and proximate result of Wells Fargo's acts of conversion, Plaintiffs and members of the proposed Force-Placed Class have suffered and continue to suffer damages.

## COUNT IV

## BREACH OF FIDUCIARY DUTY

### *AGAINST FANNIE MAE AND WELLS FARGO*

118.    Plaintiffs restate and reallege the preceding paragraphs of this Complaint as though set out here word for word.

119.    As servicing agent for Fannie Mae, Wells Fargo holds funds in escrow on behalf of borrowers whose mortgages it services. These funds are to be used for the purpose of paying insurance premiums when due, and any excess funds are to be returned to Plaintiffs and members of the Force-Placed Class under the terms of the mortgage agreements.

120.    Since the time that Fannie Mae acquired ownership of Plaintiffs' note and mortgage and Wells Fargo was hired as its servicing agent, Wells Fargo has managed borrowers' monies for insurance premiums on a monthly basis and held them in escrow.

121.    A fiduciary relationship exists between Plaintiffs and Fannie Mae, by and through its servicing agent Wells Fargo, because Fannie Mae, by and through its servicing agent Wells Fargo, received a greater economic benefit than from a typical escrow transaction. *See Capital Bank v. MVB, Inc*., 644 So. 515, 519 (Fla. 3d DCA 1994). Specifically, the debtor-creditor relationship transformed into a fiduciary relationship when Fannie Mae, by and through its servicing agent Wells Fargo, took it upon itself to manage borrowers' escrow accounts and withdraw money from borrowers' escrow accounts to pay force-placed flood insurance premiums. Fannie Mae violated its fiduciary duty when Wells Fargo began receiving unlawful kickbacks or fees under the kickback scheme orchestrated by Wells Fargo, which is clearly a greater economic benefit than what was contemplated under the mortgage.

122.    Fannie Mae, by and through its agent Wells Fargo, breached its fiduciary duty to Plaintiffs and other members of the Proposed Force-Placed Class by (1) not acting in their best interest when it profiting from force-placed flood insurance policies that were purchased using escrow funds it held for the benefit of Plaintiffs and Class members at the expense of Plaintiffs and Class members, and (2) not disclosing the kickback scheme to Plaintiffs and Class Members.

123.   These actions were undertaken by Fannie Mae by and through its servicing agent Wells Fargo in bad faith for their own benefit and were not intended to benefit Plaintiffs or other Proposed Class members.

124.   As a direct result of Fannie Mae's actions, by and through its servicing agent Wells Fargo, and subversion of Plaintiffs' interest to Defendants' own interests in reaping extravagant and outrageous fees, Plaintiffs and the Proposed Force-Placed Class have suffered injury in the form of unnecessary and excessive escrow charges and a loss of funds from their escrow accounts.

125.   Plaintiffs and the Proposed Force-Placed Class are entitled to damages for Defendants' breach of their fiduciary obligations and misappropriation of escrow funds. In addition, Plaintiffs and the Class are entitled to punitive damages because Fannie Mae, by and through its servicing agent Wells Fargo, acted in bad faith in deliberate or reckless disregard of their rights and its obligation to hold their escrow funds in trust.

### COUNT V

### VIOLATIONS OF THE TRUTH IN LENDING ACT (15 U.S.C. § 1601 *et seq.*)

*AGAINST FANNIE MAE AND WELLS FARGO*

126.   Plaintiffs restate and reallege the preceding paragraphs of this Complaint as though set out here word for word.

127.   Plaintiffs' mortgages were consumer credit plans secured by their principal dwellings, and were subject to the disclosure requirements of the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*, and all related regulations, commentary, and interpretive guidance promulgated by the Federal Reserve Board.

128.   Fannie Mae is a "creditor" as defined by the Truth in Lending Act (TILA) because it owned Plaintiffs' note and mortgage and changed the terms of that mortgage so as to create a new mortgage obligation, of which Fannie Mae was the creditor. When Fannie Mae, through its agent Wells Fargo, added force-placed insurance charges to Plaintiffs' mortgage balance and charged them interest on these charges, it created a new loan subject to the requirements of TILA. Alternatively, Fannie Mae is the "assignee" of Plaintiffs' note and mortgage as defined 15 U.S.C. §

1641. If Wells Fargo holds or has any contractual interest in Plaintiffs' mortgage it can be individually liable as a creditor under 15 U.S.C. § 1641.

129.    The inaccuracy on the face of Plaintiffs' TILA disclosures are apparent on the face of the disclosures because:

(1)    the inaccuracy arose out of Fannie Mae, by and through its servicing agent Wells Fargo, unilaterally changing the terms of Plaintiffs' loan;

(2)    anti-coercion disclosures included with Plaintiffs' mortgage explicitly stated that the lender was prohibited from conditioning its extension of credit on the borrowers purchasing any insurance product from the lender or its affiliates;

(3)    the force-placed insurance disclosure included with Plaintiffs' mortgage specifically stated that force-placed insurance would only be obtained in the amount "required" by the lender "to protect its interest in the property[,]" and;

(4)    the Notice to Borrower of Special Flood Hazard Area included with Plaintiffs' mortgage states that the borrower must purchase flood insurance at least equal to the lesser of $250,000 or the borrower's loan amount.

130.    Fannie Mae was required to accurately and fully disclose the terms of the legal obligations between the parties. 12 C.F.R. § 226.17(c).

131.    Fannie Mae, by and through its servicing agent Wells Fargo, violated 12 C.F.R. § 226.17(c) by (i) failing to clearly, fully, and accurately disclose its flood insurance requirements in its mortgages; and (ii) failing at all times to disclose the amount and nature of the "commission" Wells Fargo's affiliates would receive for the purchase of flood insurance.

132.    Specifically, when Fannie Mae, by and through is servicing agent Wells Fargo, added the force-placed premium charge to the outstanding principal amount of Plaintiffs' loan, a new debt obligation was created, requiring a new set of disclosures showing the amount of the flood insurance premiums (i.e. finance charges) and all components thereof, including kickbacks. However, neither Fannie Mae nor Wells Fargo provided Plaintiffs with a new set of disclosures.

133.    Plaintiffs' TILA claim is timely because Fannie Mae, through Wells Fargo, added

force-placed insurance charges to Plaintiffs' mortgage balance repeatedly through 2011. The last time this occurred was on November 13, 2011, when Fannie Mae, through Wells Fargo, filed a complaint to foreclose on Plaintiffs' mortgage that included force-placed insurance charges as part of the debt to be recovered through foreclosure.

134.    To the extent any TILA violations are construed to relate back to the time of loan origination, Plaintiffs' claims are subject to equitable tolling as discussed *supra*.

135.    Plaintiffs and members of the Classes have been injured and have suffered a monetary loss arising from Fannie Mae's violations of the TILA through the acts of its servicing agent Wells Fargo.

136.    As a result of Fannie Mae's TILA violations through its servicing agent Wells Fargo, Plaintiffs and members of the Classes are entitled to recover actual damages and a penalty of $500,000.00 or 1% of Defendants' net worth, as provided by 15 U.S.C. § 1640(a)(1)-(2).

137.    Plaintiffs and members of the Classes are also entitled to recovery of attorneys' fees and costs to be paid by Defendants, as provided by 15 U.S.C. § 1640(a)(3).

### COUNT VI

### VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL"), CALIFORNIA BUSINESS & PROFESSIONAL CODE § 17200, *et seq.*

#### *AGAINST ALL DEFENDANTS*

138.    Plaintiffs restate and reallege the preceding paragraphs of this Complaint as though set out here word for word.

139.    California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL") prohibits any "unlawful" business act or practice.  Defendants have violated section 17200's prohibition against engaging in unlawful acts or practices by violating statutes and common law rules prohibiting Defendants' conduct as described herein, including:

    a.    Breach of contract, including breach of the implied covenant of good faith and fair dealing;

    b.    Unjust Enrichment;

1          c.       Conversion;

2          d.       Breach of fiduciary duty;

3          e.       Violations of the Truth in Lending Act, 15 U.S.C., § 1601 *et seq*.; and

4          f.       Violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et*

5                   *seq*.

6          Plaintiffs reserve the right to allege other violations of law that constitute other unlawful

7   business acts or practices.

8          140.     California Business and Professions Code section 17200 also prohibits any "unfair"

9   business act or practice.  As detailed in the preceding paragraphs, Defendants engaged in unfair

10  business acts or practices by, among other things, demanding and force-placing flood insurance not

11  required by law, or in amounts greater than required by law or necessary to secure the sums

12  borrowed; failing to clearly, conspicuously, and adequately disclose, in standard loan and mortgage

13  documents, the amount of flood insurance required; and engaging in other unfair business practices,

14  such as receiving or paying kickbacks for force-placed flood insurance.

15         141.     These business practices are also "unfair" because they are contrary to the principle

16  that "lenders should avoid creating situations where a building is over-insured," 74 Fed. Reg.

17  35,914, 35918 (July 21, 2009); consumers should receive "meaningful disclosure of credit terms,"

18  15 U.S.C. § 1601(a); and other clearly articulated principles of law.

19         142.     The utility, if any, of Defendants' business practices is substantially outweighed by

20  the harm caused by Defendants' conduct.

21         143.     The members of the Class have been injured and have suffered a monetary loss as a

22  result of Defendants' violations of the UCL.

23         144.     Defendants' violations of the UCL warrant the imposition of attorneys' fees and

24  costs to be paid by Defendants, as provided by Code of Civil Procedure § 1021.5 and other

25  applicable law.

26

27

PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT, CASE NO. CV-12-01376 EMC

**COUNT VII**

**VIOLATIONS OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT ("RESPA"),**

**12 U.S.C. § 2601, *et seq.***

*AGAINST ALL DEFENDANTS*

145.    Plaintiffs restate and reallege the preceding paragraphs of this Complaint as though set out here word for word.

146.    Plaintiffs' mortgage is a "federally related mortgage" as that term is defined in RESPA, 12 U.S.C. § 2602. More specifically, Plaintiffs mortgage is secured by a lien on their real property, which is designed principally for occupancy by one family, and Plaintiffs' mortgage was, at origination, intended to be sold, and was sold, to Federal National Mortgage Association.

147.    Defendants' purchase of force-placed insurance on Plaintiffs' and Class Members' behalf is a settlement service. When Defendants add charges for force-placed insurance to Plaintiffs' and Class Members' mortgage balances, it creates a new loan obligation. Payment of premiums for the purchase of force-placed insurance is a settlement service for this new loan obligation.

148.    Defendants added force-placed premiums to Plaintiffs' mortgage balance initially when they withdrew these funds from Plaintiffs' mortgage escrow account, for example, on May 29, 2008. They continued to do so through 2011. Defendants last added premiums for force-placed insurance to Plaintiffs' mortgage balance on November 23, 2011, when they filed a complaint to foreclose on Plaintiffs' property. At this time, they included $7,811.27 as "escrow advances." Plaintiffs' escrow account was used exclusively to pay for homeowners' insurance, including force-placed insurance premiums, and property taxes. When Defendants included this amount in their total claim for foreclosure, it once again created a new loan subject to RESPA's prohibitions on splitting fees for settlement services.

149.    12 U.S.C. § 2607 prohibits any person from accepting or giving "any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage."

150.    Wells Fargo performed no services, either on its own or through its affiliate Wells

Fargo Insurance, Inc., in connection with the purchase of Plaintiffs' force-placed insurance policies. For example, they did not purchase the force-placed insurance policy, choose the provider for the force-placed insurance policy, authorize the purchase of the force-placed insurance policy, or take any other steps to facilitate the purchase of Plaintiffs' force-placed insurance policy.

151.    Wells Fargo never disclosed a written estimate of the charge or range of charges that Wells Fargo Insurance, Inc. could be paid for force-placed insurance.

152.    Wells Fargo's and ASIC's actions were intentional, as demonstrated by the fact that they negotiated contracts spelling out the terms of their kickback arrangement.

153.    Assurant paid and Wells Fargo or Wells Fargo Insurance accepted a split of Plaintiffs' force-placed insurance premiums. When Wells Fargo Insurance accepted kickbacks for force-placed insurance, the vast majority of these funds were returned to Wells Fargo through a system of inter-company credits and debits that profited Wells Fargo.

154.    12 U.S.C. § 2607(d) provides Plaintiffs with a private cause of action against "any person or persons who violate" RESPA's prohibitions on giving and receiving splits of fees for settlement services. ASIC gave and Wells Fargo received splits of Plaintiffs' force-placed insurance premiums, and 12 U.S.C. § 2607(d) allows Plaintiffs to recover three times the amount of the charge for the settlement service from them. This includes 100% of the charges billed to Plaintiffs' escrow account for force-placed insurance. Fannie Mae is liable for its agent's acceptance of kickbacks.

155.    Plaintiffs and Force-Placed Class Members are entitled to an award of costs, together with a reasonable attorney fees.

## COUNT VIII

### EQUITABLE RELIEF

#### *AGAINST ALL DEFENDANTS*

156.    Plaintiffs restate and reallege the preceding paragraphs of this Complaint as though set out here word for word and request equitable relief from the Court.

157.    Plaintiffs have no adequate remedy at law to address the wrongful conduct engaged in by Defendants. Thus Plaintiffs ask the Court to enjoin the Defendant from the practice of

collecting fees for the force-placement of insurance on the grounds that the fees are neither disclosed nor permitted by Class Members' mortgage contracts. Plaintiffs further ask the Court to enjoin the Defendants from force-placing insurance in excess of their mortgage balance on the grounds that this is disallowed by their mortgage.

158.     Plaintiffs ask the Court to award restitution to return all charges Defendant or their affiliates received in connection with the purchase of force-placed insurance.

159.     Plaintiffs ask the Court to order Defendant to remove from Class Members' escrow accounts all charges that are attributable to kickbacks paid to Defendant or their affiliates for the purchased of force-placed insurance.

## DAMAGES

160.     Defendants should pay damages to Plaintiffs and the Classes in an amount to be determined at trial but, in any event, in excess of five million dollars ($5,000,000). Plaintiffs and members of the proposed Classes are entitled to punitive damages and all additional damages allowed by statute for Defendants' knowing and intentional violation of laws or actions taken in wanton and reckless disregard for the harm caused to Plaintiffs and members of the proposed Classes.

## DEMAND FOR JURY TRIAL

161.     Plaintiffs, on behalf of themselves and all others similarly situated, demand a trial by jury of all matters so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and other members of the Classes, demand judgment against Wells Fargo, Fannie Mae, and Assurant as follows:

(1)     Declaring this action to be a proper class action maintainable pursuant to Rule 23(a) and Rule 23(b) of the Federal Rules of Civil Procedure and declaring Plaintiffs to be the representatives of the Classes;

(2)     Awarding damages sustained by Plaintiffs and the Classes as a result of Fannie Mae's and Wells Fargo's breach of contract, including the implied covenant of good faith

and fair dealing, together with prejudgment interest;

(3)     Finding that Wells Fargo and Assurant have been unjustly enriched, and requiring Wells Fargo and Assurant to refund all unjust benefits to Plaintiffs and the Force-Placed Class, together with prejudgment interest;

(4)     Finding that Wells committed the tort of conversion by withdrawing and retaining borrowers' funds from borrowers' escrow accounts to pay for insurance premiums that included wrongful charges for kickbacks paid to Wells or its affiliates, and requiring Plaintiffs and members of the Force-Placed Class to replenish their escrow accounts after the withdrawal of these wrongful charges;

(5)     Finding that Defendants violated the Real Estate Settlement Procedures Act and the California Unfair Business Practices Act, and awarding Plaintiffs and the Class all remedies allowed under those statutes;

(6)     Finding that Fannie Mae and Wells Fargo violated the Truth in Lending Act, and awarding Plaintiffs and the Class all remedies allowed under those statutes;

(7)     Finding that Fannie Mae is jointly and severally liable with Wells Fargo for the damages sustained by the Classes as a result of its agency relationship with Wells Fargo;

(8)     Awarding Plaintiffs and members of the proposed Classes the maximum amount of damages allowable under applicable law along with pre-judgment interest as allowed by applicable law;

(9)     Granting all relief described above;

(10)     Granting a trial by jury of all issues so triable;

(11)     Awarding Plaintiffs and the Classes costs and disbursements and reasonable allowances for the fees of Plaintiffs' and the Classes' counsel and experts, and reimbursement of expenses; and

(12)     Such other and further relief as the Court deems just and equitable.

Dated: July 23, 2012

Respectfully submitted,

/s/ Sheri Kelly
Sheri L. Kelly, SBN 226993
E-mail: slk@sherikellylaw.com
LAW OFFICE OF SHERI L. KELLY
31 E. Julian St.
San Jose, CA 95112
Telephone: 408/287-7712
Facsimile: 408/583-4249

T. Brent Walker, *pro hac vice application pending*
Russell D. Carter III, *pro hac vice application pending*
CARTER WALKER PLLC
2171 West Main, Suite 200
P.O. Box 628
Cabot, AR 72023
Telephone: 501/605-1346
Facsimile: 501/605-1348
bwalker@carterwalkerlaw.com
dcarter@carterwalkerlaw.com

Steven A. Owings, *pro hac vice application pending*
Alexander P. Owings, *pro hac vice application pending*
OWINGS LAW FIRM
1400 Brookwood Drive
Little Rock, AR 72202
Telephone: 501/661-9999
Facsimile: 501/661-8393
sowings@owingslawfirm.com
apowings@owingslawfirm.com

Jack Wagoner, *pro hac vice application pending*
WAGONER LAW FIRM, P.A.
1320 Brookwood, Suite E
Little Rock, AR 72202
Telephone: 501/663-5225
Facsimile: 501/660-4030
Jack@wagonerlawfirm.com

**Counsel for Plaintiffs**

PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT, CASE NO. CV-12-01376 EMC