1   NANCY L. STAGG CA Bar No. 157034
      nstagg@foley.com
2   BENJAMIN J. MORRIS, CA Bar No. 260148
      bmorris@foley.com
    **FOLEY & LARDNER LLP**
3   ATTORNEYS AT LAW
    402 W. BROADWAY, SUITE 2100
    SAN DIEGO, CA 92101-3542
4   TELEPHONE:    619.685.6454
    FACSIMILE:    619.234.3510

5   THOMAS S. BROWN, CA Bar No. 178620
      tsbrown@foley.com
6   **FOLEY & LARDNER LLP**
    ATTORNEYS AT LAW
    555 CALIFORNIA STREET, SUITE 1700
7   SAN FRANCISCO, CA 94104-1520
    TELEPHONE:    415.434.4484
    FACSIMILE:    415.434.4507
8
    Attorneys for Defendant FEDERAL NATIONAL MORTGAGE ASSOCIATION
9
                    **UNITED STATES DISTRICT COURT**
10
                  **NORTHERN DISTRICT OF CALIFORNIA**
11
                      **SAN FRANCISCO DIVISION**
12

13  STANLEY D. CANNON and PATRICIA R.          Case No:  CV-12-01376 EMC
    CANNON, individually, and for all other
14  persons similarly situated,                **DEFENDANT FEDERAL NATIONAL
                                               MORTGAGE ASSOCIATION'S NOTICE
15               Plaintiff,                     OF MOTION AND MOTION TO DISMISS
                                               FIRST AMENDED CLASS ACTION
16          v.                                 COMPLAINT AND MOTION TO
                                               STRIKE; MEMORANDUM OF POINTS
17  WELLS FARGO BANK, N.A., FEDERAL            AND AUTHORITIES IN SUPPORT
    NATIONAL MORTGAGE ASSOCIATION,             THEREOF
18  and ASSURANT, INC.,

19               Defendants.                   DATE:    NOVEMBER 30, 2012
                                               TIME:    1:30 P.M.
20                                             CTRM:    5
                                               Judge:   Hon. Edward M. Chen
21

22

23

24

25

26

27

28

1                                   TABLE OF CONTENTS

2                                                                                                   Page

3   I.      SUMMARY OF REASONS WHY THE MOTION TO DISMISS AND MOTION

4           TO STRIKE SHOULD BE GRANTED ............................................................................. 1

5   II.     Factual and Procedural Background ........................................................................ 3

6           A.      Plaintiffs' Mortgage ..................................................................................... 3

7           B.      Plaintiffs' Allegations In The Amended Complaint ...................................... 5

8           C.      Flood Insurance Is Required By Federal Regulations, Which Set A

9           Minimum Coverage Requirement ............................................................................. 5

10          D.      LPI Is Obtained For Plaintiffs' Property ...................................................... 6

11          E.      Procedural History ....................................................................................... 7

12  III.    Plaintiffs' claims against Fannie Mae should be dismissed pursuant to FED. R.

13          CIV. P. 12(b)(6) for failing to state a claim upon which relief can be granted ................. 7

14          A.      Applicable Legal Standards .......................................................................... 7

15          B.      Fannie Mae Is Not Liable For Wells Fargo's Conduct ................................. 9

16                  (1)   *Wells Fargo Is Not Fannie Mae's Agent* ............................................. 9

17                  (2)   *Under The Merrill Doctrine, Fannie Mae Is Not Liable For The*

18                  *Unauthorized Acts Of Its Agents And Independent Contractors, Compelling*

19                  *That All Of Plaintiffs' Claims Against Fannie Mae Be Dismissed*............. 10

20                          a) Fannie Mae Is A Federal Instrumentality ...................................... 11

21                          b) Federal Instrumentalities Are Immune From Liability For The

22                          Unauthorized Action Of Their Agents............................................ 12

23                          c) To The Extent Any Action By Wells Fargo Was Contrary To Law,

24                          It Was Not Expressly Authorized By Fannie Mae ......................... 13

25          C.      Plaintiffs' Claims Are Barred By The National Bank Act And The Filed

26          Rate Doctrine ..................................................................................................... 14

27                  (1)   *Plaintiffs' Claims Against Wells Fargo, For Which Plaintiffs Attempt*

28                  *To Hold Fannie Mae Liable, Are Preempted By The National Bank Act*... 14

i

1            *(2)   The Filed Rate Doctrine Precludes Liability* ...................................... 15

2     D.     Plaintiffs Fail To State A Claim Against Fannie Mae Upon Which Relief

3     Can Be Granted ...................................................................................................... 15

4            *(1)   Plaintiffs' Breach of Contract And Breach Of The Implied Covenant*

5            *of Good Faith And Fair Dealing Claims Fail* ............................................. 15

6            *(2)   Plaintiffs Cannot Maintain A Claim For Breach Of Fiduciary Duty*

7            *Against Fannie Mae* ...................................................................................... 17

8            *(3)   Plaintiffs Fail To State A RESPA Claim Because Fannie Mae Is Not*

9            *Subject To 12 U.S.C. § 2607 And Has Not Received A Split Of Any Charge*

10            *to Plaintiffs* .................................................................................................. 18

11            *(4)   Plaintiffs' TILA Claim Fails Because TILA Is Not Applicable To*

12            *Fannie Mae Under These Facts, The Claim Is Time Barred, And No TILA*

13            *Violation Occurred* ...................................................................................... 21

14               a) Plaintiffs Have No TILA Claim Against Fannie Mae ...................... 21

15               b) Plaintiffs' TILA Claim Is Time Barred ............................................. 22

16               c) No TILA Violation Occurred ........................................................... 23

17            *(5)   Plaintiffs Have Not Stated A Valid Claim For Violation Of Cal. Bus.*

18            *& Prof. Code 17200 et seq. Against Fannie Mae* ...................................... 23

19            *(6)   Plaintiffs Cannot Maintain A Claim For Equitable Relief* ................ 24

20     E.     The Jury Demand Should Be Stricken Pursuant to Fed. R. Civ. P. 12(f) ... 25

21   IV.     CONCLUSION ....................................................................................................... 25

22

23

24

25

26

27

28

ii

4824-7727-7201.3

1

## TABLE OF AUTHORITIES

2

Page

3

**FEDERAL CASES**

4
*Allyn v. W. United Life Assur. Co.,*
   347 F. Supp. 2d 1246 (M.D. Fla. 2004)...............................................................................25

5
*AmerisourceBergen Drug Corp. v. Izz & Sons, Inc.,*
6    No. 11-cv-23895, 2012 U.S. Dist. LEXIS 121865 (S.D. Fla. Aug. 28, 2012) .........................15

7
*Ashcroft v. Iqbal,*
   556 U.S. 662, 129 S.Ct. 1937 (2009).....................................................................................8-9
8

9
*Assoc. Gen. Contractors of Cal. v. Ca. State Council of Carpenters,*
   459 U.S. 519, 103 S. Ct. 897 (1983)..........................................................................................8

10
*Associated Gen. Contractors v. Metro. Water Dist.,*
11    159 F.3d 1178 (9th Cir. 1998) .....................................................................................................8

12
*Balistreri v. Pacifica Police Dept.,*
   901 F.2d 696 (9th Cir. 1988) .......................................................................................................8
13

14
*Bell Atl. Co. v. Twombly,*
   550 U.S. 544, 127 S.Ct. 1955 (2007)..........................................................................................8

15
*Bloom v. Martin,*
16    77 F.3d 318 (9th Cir. 1996) ........................................................................................................20

17
*Burger King Corp. v. Ashland Equities, Inc.,*
   217 F. Supp. 2d 1266 (S.D. Fla. 2002) .....................................................................................17
18

19
*Carroll v. City of Hercules,*
   No. C-11-3378 EMC, 2012 U.S. Dist. LEXIS 47187 (N.D. Cal. Apr. 3, 2012) .........................7

20
*Cervantes v. Countrywide Home Loans, Inc.,*
21    656 F.3d 1034 (9th Cir. 2011) ...................................................................................................22

22
*Chevron U.S.A. v. NRDC,*
   467 U.S. 837 (1984)....................................................................................................................19
23

24
*Clegg v. Cult Awareness Network,*
   18 F.3d 752 (9th Cir. 1994) ..........................................................................................................9

25
*Co. v. Unigestion Int'l, Ltd.,*
26    903 F. Supp. 479 (S.D.N.Y. 1995) ...........................................................................................11

27
*Davis v. HSBC Bank,*No. 10-56488, 2012 U.S. App. LEXIS 18503, (9th Cir. Cal. Aug.
   31, 2012) .....................................................................................................................................23

28

iii

## TABLE OF AUTHORITIES

Page

*Deerman v. Fed. Home Loan Mortgage Corp.*,
   955 F. Supp. 1393 (N.D. Ala. 1997), *aff'd,* 140 F.3d 1043 (11th Cir. 1998).................... 12-13

*Dupuis v. Fed. Home Loan Mortgage Corp.*,
   879 F. Supp. 139 (D. Me. 1995) ............................................................................13

*Federal Crop Ins. Corp. v. Merrill*,
   332 U.S. 380 (1947)....................................................................................... *Passim*

*Federal National Mortgage Association v. Lefkowitz*
   390 F. Supp. 1364, 1368 (S.D.N.Y. 1975).............................................................11

*Flores v. Wells Fargo Bank, N.A.*,
   No. C11-6619, 2012 WL 2427227 (N.D. Cal. June 26, 2012) ................................24

*Gens v. Wachovia Mortg. Corp.*,
   No. C10-1073, 2011 WL 1791601 (N.D. Cal. May 10, 2011) ................................19

*Hinton v. Fed. Nat Mortgage Ass'n*,
   945 F. Supp. 1052 (S.D. Tex. 1996) .......................................................... 10-11, 13

*Holt v. First Franklin Fin. Corp.*,
   No. C10-5929, 2011 WL 4595195 (N.D. Cal. Sept. 30, 2011) ...............................21

*In re Fannie Mae 2008 Secs. Litig.*,
   No. 08-7831, 2009 WL 4067259 (S.D.N.Y. Nov. 24, 2009)............................. 10-11

*Kee v. Fifth Third Bank*,
   No. 06-0602, 2009 U.S. District LEXIS 21502 (D. Utah Mar. 18, 2009) ...............19

*King v. California*,
   784 F.2d 910 (9th Cir. 1986) ..................................................................................8

*Lanz v. Resolution Trust Corp.*,
   764 F. Supp. 176 (S.D. Fla. 1991) .........................................................................17

*Levitt v. Yelp!, Inc.*,
   No. C-10-1321 EMC, 2011 U.S. Dist. LEXIS 124082 (N.D. Cal. Oct. 26, 2011)....................8

*McDonald v. Checks-N-Advance, Inc. (In re Ferrell)*,
   358 B.R. 777 (B.A.P. 9th Cir. 2006).......................................................................21

*McDonald v. Coldwell Banker*,
   543 F.3d 498 (9th Cir. 2008) .................................................................................23

*McNeary-Calloway v. JP Morgan Chase Bank, N.A.*,
   No. C11-3058, 2012 WL 1029502 (N.D. Cal. Mar. 26, 2012)................................19

iv

# TABLE OF AUTHORITIES

Page

*Mendrala v. Crown Mortgage Co.*,
  955 F.2d 1132 (7th Cir. 1992) ...................................................................................11, 13

*Monumental Life Ins. Co. v. Hayes-Jenkins*,
  403 F.3d 304 (5th Cir. 2005) .................................................................................................18

*Morales v. Attorneys' Title Ins. Fund, Inc.*,
  983 F. Supp. 1418 (S.D. Fla. 1997) .....................................................................................15

*Mount Sinai Medical Center of Greater Miami, Inc. v. Heidrick & Struggles, Inc.*,
  188 Fed. Appx. 966 (11th Cir. 2006)......................................................................................16

*MRW, Inc. v. Big-O Tires, LLC*,
  No. 08-1732, 2008 U.S. Dist. LEXIS 10192 (E.D. Cal. Nov. 25, 2008)................................22

*Neu v. Terminix Int'l, Inc.*,
  No. C07-6472, 2008 U.S. Dist. LEXIS 32844 (N.D. Cal. Apr. 8, 2008) ...............................24

*Pacific Capital Bank, N.A. v. Connecticut*,
  542 F.3d 341 (2d Cir. 2008)............................................................................................15, 18

*Paslowski v. Standard Mortgage Corp.*,
  129 F. Supp. 2d 793 (W.D. Pa. 2000)............................................................................ 12-13

*Paulsen v. CNF, Inc.*,
  559 F.3d 1061 (9th Cir. 2009) ................................................................................................9

*Pierson v. Orlando Regional Healthcare Sys., Inc.*,
  619 F. Supp. 2d 1260 (M.D. Fla. 2009)..................................................................................25

*Riviere v. Banner Chevrolet, Inc.*,
  184 F.3d 457 (5th Cir. 1999) .................................................................................................21

*Rust v. Johnson*,
  597 F.2d 174 (9th Cir. 1979) ..........................................................................................11, 13

*Sembler Family P'ship # 41 v. Brinker Fla., Inc.*,
  660 F. Supp. 2d 1307 (M.D. Fla. 2009)..................................................................................17

*Shroyer v. New Cingular Wireless Servs., Inc.*,
  622 F.3d 1035 (9th Cir. 2010) ...............................................................................................24

*Siradas v. Chase Lincoln First Bank, NA.*,
  No. 98 Civ. 4028 1999 WL 787658, at *8 (S.D.N.Y. Sept. 30, 1999) .....................................13

*Snow v. First Am. Title Ins. Co.*,
  332 F.3d 356 (5th Cir. 2003) .................................................................................................21

1

# TABLE OF AUTHORITIES

2

Page

3

*SPGGC, LLC v. Ayotte,*
   488 F.3d 525 (1st Cir. 2007)...............................................................................................15

4

*Tiara Condominium Ass'n, Inc. v. Marsh & McLennan Companies,*
   607 F.3d 742 (11th Cir. 2010) ........................................................................................ 16-17

5

*Uniforce Temporary Personnel, Inc. v. Nat'l Council on Compensation Ins., Inc.,*
   892 F. Supp. 1503 (S.D. Fla. 1995), *aff'd,* 78 F.3d 1296 (11th Cir. 1996)..............................15

6

7

*Washington v. Nat'l City Mortg. Co.,*
   No. C10-5042, 2011 WL 1842836 (N.D. Cal. May 16, 2011) .................................................21

8

9

**STATE CASES**

10

*Capital Bank v. MVB, Inc.,*
   644 So. 2d 515 (Fla.3d Dist. Ct. App.. 1994). ...............................................................................

11

12

*First Am. Title Ins. Co. v. Superior Court,*
   145 Cal. App. 4th 1564 (2007) .............................................................................................24

13

*Friedman v. N.Y. Life Ins. Co.,*
   985 So. 2d 56 (Fla. 4th Dist. Ct. App. 2008) ........................................................................16

14

*Gillet v. Watchtower Bible & Tract Soc'y of Pa., Inc.,*
   913 So. 2d 618 (Fla. Dist. Ct. App. 3d Dist. 2005).....................................................................9

15

16

*Herrod v. First Republic Mortgage Corp., et al.,*
   No. 01C-2907, slip op. (Kanawha County Cir. Ct. W. Va. June 23, 2004).......................12, 13

17

18

*Kasky v. Nike, Inc.,*
   27 Cal.4th 939 (Cal. 2002)....................................................................................................23

19

20

*Meruelo v. Mark Andrew of Palm Beaches, Ltd.,*
   12 So. 3d 247, 250 (Fla. Dist. Ct. App. 4th Dist. 2009) ...........................................................16

21

22

*Mobil Oil Corp. v. Bransford,*
   648 So. 2d 119 (Fla. 1995).....................................................................................................9

23

*Norwest Mortg., Inc. v. Superior Court,*
   72 Cal. App. 4th 214 (1999) ..................................................................................................24

24

25

*Patten v. Winderman,*
   965 So. 2d 1222 (Fla. Dist. Ct. App. 4th Dist. 2007) ...............................................................17

26

27

*Shapell Industries Inc. v. Superior Court,*
   132 Cal. App. 4th 1101 (2005) ..............................................................................................24

28

4824-7727-7201.3

# TABLE OF AUTHORITIES

Page

*White v. Mellon Mortg. Co.,*
   995 S.W.2d 795 (Tex.App.-Tyler 1999, no pet.) ....................................................18

**FEDERAL STATUTES**

12 U.S.C. § 21 *et seq.* .............................................................................................14

12 U.S.C. § 1716 .....................................................................................................11

12 U.S.C. § 1716 *et seq.* .........................................................................................11

12 U.S.C. § 1719(a)(2) .......................................................................................19, 22

12 U.S.C. §2601, et seq. ........................................................................................2-3

12 U.S.C. §2602(3) ..................................................................................................19

12 U.S.C. §2605 .......................................................................................................19

12 U.S.C. §2605(i)(2)(B) .........................................................................................19

12 U.S.C. § 2607 .................................................................................................18, 21

12 U.S.C. § 2607(a) and (b) .................................................................................19-20

12 U.S.C. § 2614 ......................................................................................................21

15 U.S.C. § 1601, et seq. .......................................................................................1, 3

15 U.S.C. § 1602(f) ..................................................................................................21

15 U.S.C. § 1640(a) .................................................................................................21

15 U.S.C. § 1640(e) .................................................................................................22

42 U.S.C. § 4012a(b)(1) ............................................................................................6

42 U.S.C. § 4012a(f) ..................................................................................................5

**STATE STATUTES**

Cal. Bus. & Prof. Code § 17200 et seq. .............................................................2-3, 23

4824-7727-7201.3

## TABLE OF AUTHORITIES

Page

**RULES**

Fed. R. Civ. P. 5(b)(3)................................................................................................................26

Fed. R. Civ. P. 8(a)(2)................................................................................................................25

Fed. R. Civ. P. 12(B)(6)...............................................................................................................7

Fed. R. Civ. P. 12(f)...................................................................................................................25

**REGULATIONS**

12 C.F.R. §7.40002(a)................................................................................................................15

12 C.F.R. § 34.4.........................................................................................................................15

12 C.F.R. § 34.4(a).....................................................................................................................15

12 C.F.R. § 226.2(a)(13)............................................................................................................22

12 C.F.R. § 226.17(c).................................................................................................................23

24 C.F.R. § 3500.2(b) ..........................................................................................................19-20

4824-7727-7201.3

1

### NOTICE OF MOTION AND MOTION

2

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

3     PLEASE TAKE NOTICE that at 1:30 p.m. on November 30, 2012, in Courtroom 5 of the

4 United States District Court for the Northern District of California, located at 450 Golden Gate

5 Avenue, San Francisco, California, 94102, or as soon thereafter as the matter can be heard by the

6 Honorable Edward M. Chen, defendant Federal National Mortgage Association ("Fannie Mae")

7 will, and hereby does, move to dismiss Counts I, IV, V, VI, VII, and VIII of the First Amended

8 Class Action Complaint in this action for failure to state a claim upon which relief can be granted

9 under Federal Rule of Civil Procedure 12(b)(6) against Fannie Mae and to dismiss or strike

10 Plaintiffs' request for a jury trial under Federal Rule of Civil Procedure 12(b)(6) and 12(f).

11     This motion is based on this Notice of Motion and Motion, the accompanying

12 Memorandum of Points and Authorities and Request for Judicial Notice, the pleadings,

13 documents, records and other material on file in this matter, the arguments of counsel at the time

14 this motion is heard, and such other further material as the Court may allow.

15

### MEMORANDUM OF POINTS AND AUTHORITIES

16
17

**I.     SUMMARY OF REASONS WHY THE MOTION TO DISMISS AND MOTION TO STRIKE SHOULD BE GRANTED**

18     Plaintiffs Stanley D. Cannon and Patricia R. Cannon ("Plaintiffs") bring this putative

19 class action alleging Defendant Wells Fargo Bank N.A. ("Wells Fargo") improperly force-placed

20 flood insurance (i.e. lender-placed insurance or "LPI") on Plaintiffs' property with higher policy

21 limits than their security instruments or federal law required—and that Wells Fargo derived an

22 improper financial benefit – a kickback – from Defendant insurer Assurant, Inc ("Assurant")

23 when charging Plaintiffs the cost of the LPI. First Amended Class Action Complaint ("Amended

24 Complaint" or "Amd. Compl."), at ¶ 8. In addition to naming Wells Fargo as a defendant, in

25 their Amended Complaint Plaintiffs added Assurant and Fannie Mae as defendants.

26     Plaintiffs' Amended Complaint asserts six causes of action against Fannie Mae: breach of

27 contract (Count I); breach of fiduciary duty (Count IV); violation of the federal Truth In Lending

28 Act ("TILA"), 15 U.S.C. § 1601, et seq. (Count V); violation of California's Unfair Competition

1

1  Law ("UCL"), Cal. Business & Professions Code §17200, et seq. (Count VI); violation of the
2  federal Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §2601, et seq. (Count VII)
3  and "equitable relief" (Count VIII). Each of Plaintiffs' claims against Fannie Mae should be
4  dismissed with prejudice and a judgment of dismissal awarded to Fannie Mae.

5      First, Plaintiffs' claims fail as to Fannie Mae because Plaintiffs fail to plead any facts
6  alleging Fannie Mae itself engaged in any wrongful or illegal conduct, or had any direct
7  involvement with or knowledge of the alleged acts of Plaintiffs' mortgage servicer, Wells Fargo,
8  or insurer Assurant. Rather, Plaintiffs concede Fannie Mae's liability is vicarious, based "by and
9  through" the alleged acts of Fannie Mae's "agent" Wells Fargo. See Amd. Compl., at ¶¶ 26,
10 122, 128, 131-133. However, as a matter of law, Wells Fargo is not Fannie Mae's agent and
11 therefore Fannie Mae cannot be held vicariously liable for Wells Fargo's alleged acts.

12     Second, even accepting Plaintiffs' agency allegations as true, under the *Merrill* Doctrine,
13 a federal instrumentality such as Fannie Mae cannot be held liable for the unauthorized actions
14 of its agents and independent contractors that it has not expressly authorized.

15     Third, Plaintiffs' claims are entirely preempted under two different preemption doctrines.
16 The National Bank Act preempts Plaintiffs' state law claims because the relief sought would
17 impose restrictions on Wells Fargo's federally-granted powers related to requiring and obtaining
18 insurance, terms of credit, escrow accounts, and disclosure and implementation of fees. The filed
19 rate doctrine also preempts Plaintiffs' claims: Florida's Office of Insurance Regulation ("OIR")
20 regulates the insurance rates upon which Plaintiffs base their claims.

21     Fourth, in addition to being barred by the *Merrill* doctrine and preempted, each of
22 Plaintiffs' claims also fail to state facts sufficient to entitle them to relief against Fannie Mae.
23 There is no breach of contract or implied covenant stated because the alleged actions underlying
24 Plaintiffs' claims are specifically allowed by the terms of the mortgage. Wells Fargo is obligated
25 under federal law to purchase flood insurance for Plaintiffs' property when Plaintiffs fail or
26 refuse to do so. Plaintiffs agreed to this process in their mortgage and admit in their Amended
27 Complaint that this is "standard and appropriate." Amd. Compl., at ¶ 2. Plaintiffs' security
28 instrument also requires them to maintain flood insurance "in the amounts and for periods that

2

4824-7727-7201.3

1 the Lender requires" and does not limit the amount that the lender may require to the loan

2 balance, allowing the lender to require coverage equal to the replacement cost of the home.

3 Plaintiffs also strain to convert the federally mandated insurance floor-—flood insurance *at least*

4 equal to the loan balance-—into a federally mandated ceiling—flood insurance of no more than

5 the loan balance. That interpretation is not supported by the applicable law.

6      Fifth, as a matter of law and based on the facts alleged, Fannie Mae does not have any

7 fiduciary duty to Plaintiffs.

8      Sixth, Fannie Mae cannot have violated the Real Estate Settlement Procedures Act, 12

9 U.S.C. §§ 2601 *et seq.* ("RESPA") or the Truth In Lending Act, 15 U.S.C. §§ 1601 *et seq.*

10 ("TILA") because Fannie Mae does not originate or service loans, post-origination LPI is not a

11 "settlement service" under RESPA, and Fannie Mae is not a "creditor" subject to TILA

12 requirements. In any event, Plaintiffs' TILA and RESPA claims are time-barred.

13      Finally, without a TILA or RESPA violation, or other "unlawful" or "unfair" acts by

14 Fannie Mae in the state of California, Plaintiffs have failed to sufficiently plead a violation of

15 California's Unfair Competition Law ("UCL"), Cal. Bus.& Prof. Code §§ 17200 *et seq.* and are

16 not entitled to equitable relief.

17      Fannie Mae also moves to strike Plaintiffs' jury demand because Plaintiffs expressly

18 waived all rights to a jury trial in executing their mortgage documents. *See* Ex. A to Amd.

19 Compl. ["Mortgage"], at §25.

20      In short, Plaintiffs' claims against Fannie Mae fail as a matter of law for the numerous

21 reasons stated in this Motion and should be dismissed in their entirety without leave to amend

22 and judgment entered in favor of Fannie Mae. If leave to amend is granted for any reason and as

23 to any claim, the jury demand should be stricken.

24 **II.**     **FACTUAL AND PROCEDURAL BACKGROUND**

25     **A.**     **Plaintiffs' Mortgage**

26      On September 9, 2005, Plaintiffs obtained a loan from Amerisave Mortgage Corporation

27 ("Amerisave"), the original lender, in the amount of $128,000 for the purchase of a Florida

28 property; the loan was originally serviced by Ohio Saving Bank. Amd. Compl., at ¶¶ 27 & 32.

At closing, Plaintiffs obtained flood insurance sufficient for Amerisave to close on the loan. *Id.* at ¶ 32. Plaintiffs' mortgage was later purchased by Fannie Mae on the secondary market and servicing responsibilities were transferred to Wells Fargo Home Mortgage on or about February 1, 2005. *Id.* at ¶¶ 25, 27 & 33. Plaintiffs have not alleged that Fannie Mae had any direct involvement with the origination of their loan, the servicing of their loan, or communications regarding and placement of LPI. *See generally,* Amd. Compl. Rather, Plaintiffs' allegations against Fannie Mae in each cause of action are based on the alleged conduct of the loan servicer, Wells Fargo. *See* Amd. Compl. at ¶¶ 6, 9, 26, 87, 93, 94, 96, 121, 122, 124, 128, 129, 131, 132, 136, & 154.

Section 5 of Plaintiffs' mortgage provides that if Plaintiffs fail to maintain insurance coverage on the property in the amount required by the lender, the lender may acquire such coverage and charge the borrower for the cost of the coverage and other related amounts.

> Property Insurance . . .This insurance shall be maintained in the amounts . . . and for the periods that Lender requires. What Lender requires pursuant to the preceding sentence can change during the term of the Loan. . . .
>
> If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

Section 14 of the mortgage also dictated that the lender could charge fees not expressly authorized by the mortgage to the extent not prohibited by the mortgage or applicable law.

> Lender may charge borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security

4

> Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law. (emphasis added).

*Id.* at Ex. A, p. §§ 5 & 14 (emphasis added).

## B. Plaintiffs' Allegations In The Amended Complaint

Plaintiffs' Amended Complaint advances two main theories: (1) Defendants[1] forced Plaintiffs to "purchase and/or maintain flood insurance in excess of the amount required by federal law, in amounts greater than the note owner's secured interest in the property, and contrary to the amount agreed upon in the relevant loan and mortgage documents;" and (2) "Defendants" profited from an unearned kickback when "Defendants derive an improper financial benefit by charging residential borrowers for the 'cost' of procuring [LPI] from ASIC when a portion of such 'cost' is returned, transferred or paid to Wells Fargo or an affiliate" based on preset insurance arrangements. Amd. Compl., at ¶¶ 5 & 8. Plaintiffs do not allege that any portion of the fee or commission is remitted to Fannie Mae. *Id.* at ¶¶ 8-9.

## C. Flood Insurance Is Required By Federal Regulations, Which Set A Minimum Coverage Requirement

Plaintiffs' home was located in a Special Flood Hazard Area. Am. Compl., at ¶31. Plaintiffs contend the maximum amount of flood insurance is limited to the "overall value of the property securing the loan minus the value of the land on which the property is located." *Id.* at ¶¶ 31 & 35. However, under the National Flood Insurance Act ("NFIA"), a federally regulated lending institution that extends credit for a property located in a special flood hazard area without requiring the purchase of mandatory flood insurance is subject to civil penalties, as is a lender that fails to provide notice of insufficient coverage or to purchase insurance when the borrower does not. 42 U.S.C. § 4012a(f). NFIA requires that "the building . . . and any personal

---

[1] Although Plaintiffs conclusorily group plead as to "Defendants," the allegations are directed at actions by Wells Fargo, not Fannie Mae. *See, e.g.,* Amd. Compl., at ¶ 3 ("exploitative and self-dealing arrangement Wells Fargo engages in . . ."); ¶ 6 ("Wells Fargo charges borrowers' mortgage escrow accounts"); ¶ 7 ("Wells Fargo requires all borrowers . . ."; "Wells Fargo force-placed Plaintiffs . . .").

1    property securing such loan is covered for the term of the loan by flood insurance in an amount

2    **at least equal to** [a] the outstanding principal balance of the loan; or [b] the maximum limit of

3    coverage made available under the Act with respect to a particular type of property, **whichever is**

4    **less.**" 42 U.S.C. § 4012a(b)(1) (emphasis added). Thus, the regulation establishes a **minimum**

5    amount of flood insurance required, **not a maximum**, and does not prohibit setting Plaintiffs'

6    flood insurance coverage at FEMA's recommended limits, per the discretion allowed in the

7    mortgage.[2] Coverage in excess of the outstanding principal balance is therefore "at least equal

8    to" what NFIA requires, and so satisfies the statutory requirement.

9            **D.**     **LPI Is Obtained For Plaintiffs' Property**

10       Fannie Mae incorporates by reference and joins in the Statement of Facts regarding the

11    LPI process in Wells Fargo's concurrently filed Motion to Dismiss and has only restated the key

12    facts and facts specific to Fannie Mae's involvement here.

13       In April 2006, Wells Fargo sent Plaintiffs a letter indicating that Plaintiffs' current flood

14    insurance was less than the coverage required by Wells Fargo and that the coverage level should

15    be equal to the replacement cost for the structure/improvements. Amd. Compl., at ¶ 37. The

16    letter requested Plaintiffs obtain the necessary coverage and provide proof of coverage to Wells

17    Fargo within 45 days. Wells Fargo's Request for Judicial Notice filed September 14, 2012

18    ("Wells Fargo's RJN"), Ex. A (April 6, 2005 letter). When Plaintiffs did not provided proof of

19    coverage within 45 days, Wells Fargo secured temporary LPI in the amount of $79,200 for the

20    property and sent Plaintiffs notice that Wells Fargo had procured LPI. The notice explained that

21    the LPI could be canceled and Plaintiffs would only be charged for the days the policy was in

22    place, if Plaintiffs obtained their own policy. The notice urged Plaintiffs to do so because it was

23    likely that they could obtain coverage directly at a lower cost. The notice further provided that if

24

25    [2] FEMA, which is responsible for implementing the federal government's National Flood
Insurance Program ("NFIP") (which was created by NFIA), has recommended that properties be

26    insured to their full replacement value as "[a] sound flood insurance risk management approach"
under which "the lender and borrower are both better protected." *See* Federal Emergency

27    Management Agency, National Flood Insurance Program: Mandatory Purchase of Flood
Insurance Guidelines at p. 27-28 (September 2007), *available at*

28    http://hazardmitigation.calema.ca.gov/docs/10040_NFIP.pdf

4824-7727-7201.3

1 Plaintiffs did not obtain coverage within 30 days, a one-year policy would be obtained. The

2 notice also advised that the premium for the LPI would be would added to Plaintiffs' escrow

3 account. Amd. Compl., at ¶ 38; Wells Fargo's RJN, Ex. B (May 30, 2006 letter).

4     A similar process occurred in 2008, via letters from Wells Fargo to Plaintiffs on February

5 28, 2008, April 21, 2008, and May 29, 2008, which resulted in additional LPI of $10,200 being

6 placed on Plaintiffs' property. Amd. Compl., at ¶¶ 39-40; Wells Fargo's RJN, Ex. C (April 21,

7 2008 letter).

8     Plaintiffs do not allege that Fannie Mae sent any correspondence to Plaintiffs regarding

9 LPI, made any determination of the amount of LPI required on Plaintiffs' property, made any

10 determination of the cost or source of the LPI, assessed any charges or fees to Plaintiffs

11 regarding LPI, received any payments from either Wells Fargo or Assurant as a result of the LPI

12 process, or in anyway directed or authorized Wells Fargo to take any specific action relating to

13 the LPI on Plaintiffs' property. *See generally,* Amd. Compl.

14     **E.**     **Procedural History**

15     Plaintiffs filed their original complaint on March 19, 2012. Fannie Mae was not named

16 in the original complaint. [Dkt. No. 1] Wells Fargo moved to dismiss the original complaint on

17 July 2, 2012. [Dkt. No. 10]. In response, Plaintiffs filed the Amended Complaint on July 23,

18 2012, [Dkt. No. 21], naming Fannie Mae as a defendant and seeking to hold Fannie Mae

19 vicariously liable for the actions of Wells Fargo. In addition to the original counts for breach of

20 contract and the implied covenant of good faith and fair dealing, unjust enrichment, conversion,

21 and equitable relief, the Amended Complaint added claims for breach of fiduciary duty,

22 violations of TILA and RESPA, and violations of California's UCL.

23 **III.**    **PLAINTIFFS' CLAIMS AGAINST FANNIE MAE SHOULD BE DISMISSED
       PURSUANT TO FED. R. CIV. P. I2(B)(6) FOR FAILING TO STATE A CLAIM**

24        **UPON WHICH RELIEF CAN BE GRANTED**

25     **A.**     **Applicable Legal Standards**

26     A motion to dismiss tests the legal sufficiency of the claims alleged in the complaint.

27 *Carroll v. City of Hercules,* No. C-11-3378 EMC, 2012 U.S. Dist. LEXIS 47187, at *2 (N.D.

28 Cal. Apr. 3, 2012). A claim is properly dismissed for lack of a cognizable legal theory, absence

1 of sufficient facts alleged under a cognizable legal theory, or for seeking remedies to which a

2 plaintiff is not entitled as a matter of law. *Levitt v. Yelp!, Inc.,* No. C-10-1321 EMC, 2011 U.S.

3 Dist. LEXIS 124082, at *14 (N.D. Cal. Oct. 26, 2011); *Balistreri v. Pacifica Police Dept.,* 901

4 F.2d 696, 699 (9th Cir. 1988); *King v. California,* 784 F.2d 910, 913 (9th Cir. 1986).

5       The Federal Rules of Civil Procedure require that a complaint include "enough facts to

6 state a claim to relief that is plausible on its face." *Bell Atl. Co. v. Twombly,* 550 U.S. 544, 570,

7 127 S.Ct. 1955, 1974 (2007). To be plausible, a complaint must contain factual allegations

8 sufficient to "raise a right to relief above the speculative level." *Id.* at 1965. A plaintiff must

9 plead sufficient facts "to provide the 'grounds' of his 'entitle[ment] to relief,' [which] requires

10 more than labels and conclusions, and [for which] a formulaic recitation of the elements of a

11 cause of action will not do." *Id.* at 1964-65 (citation omitted). Thus, a complaint cannot simply

12 "le[ave] open the possibility that a plaintiff might later establish some 'set of undisclosed facts'

13 to support recovery." *Id.* at 1968 (citation omitted). Rather, the facts set forth in the complaint

14 must be sufficient to "nudge the [ ] claims across the line from conceivable to plausible." *Id.* at

15 1974. "A claim has facial plausibility when the plaintiff pleads factual content that allows the

16 court to draw reasonable inferences that the defendant is liable for the misconduct alleged."

17 *Ashcroft* v. *Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009). Furthermore, courts will not

18 assume that a plaintiff can prove facts beyond those alleged in the complaint. *See Assoc. Gen.*

19 *Contractors of Cal. v. Ca. State Council of Carpenters*, 459 U.S. 519, 526, 103 S. Ct. 897

20 (1983).

21       Although facts properly alleged must be construed in favor of the plaintiff, "conclusory

22 allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss."

23 *Associated Gen. Contractors* v. *Metro. Water Dist.,* 159 F.3d 1178, 1181 (9th Cir. 1998) (citation

24 omitted). As the Supreme Court said, "the tenet that a court must accept as true all of the

25 allegations of a complaint is inapplicable to legal conclusions. Threadbare recitals of the

26 elements of a cause of action, supported by mere conclusory allegations, do not suffice." *Iqbal,*

27 129 S.Ct. 1937, 1949. "[T]he court is not required to accept legal conclusions cast in the form of

28 factual allegations if those conclusions cannot reasonably be drawn from the facts alleged."

4824-7727-7201.3

1  *Clegg* v. *Cult Awareness Network,* 18 F.3d 752, 754-55 (9th Cir. 1994). Finally, courts are not

2  required to accept as true "allegations contradicted by documents referred to in the complaint."

3  *Paulsen* v. *CNF, Inc.,* 559 F.3d 1061, 1071 (9th Cir. 2009) (citation omitted).

## B.  Fannie Mae Is Not Liable For Wells Fargo's Conduct

### (1)  *Wells Fargo Is Not Fannie Mae's Agent*

6  As a threshold matter, Fannie Mae is not liable for the alleged acts or omissions of Wells

7  Fargo because Wells Fargo is not Fannie Mae's legal agent under either Florida agency law or

8  the express terms of the loan servicer agreement between Wells Fargo and Fannie Mae.[3]

9  Plaintiffs plead no facts alleging any relationship between Fannie Mae and Assurant *See* Amd.

10 Compl., at ¶¶ 20-26 & 53.

11 Under Florida law, agency requires the following essential elements: "(1)

12 acknowledgement by the principal that the agent will act for him, (2) the agent's acceptance of

13 the undertaking, and (3) control by the principal over the actions of the agent." *Gillet v.*

14 *Watchtower Bible & Tract Soc'y of Pa., Inc.*, 913 So. 2d 618, 620 (Fla. Dist. Ct. App. 3d Dist.

15 2005) (citing *Goldschmidt v. Holman*, 571 So. 2d 422, 424 n.5 (Fla. 1990)).  An apparent agency

16 exists only if each of three elements is present: "(a) a representation by the purported principal;

17 (b) a reliance on that representation by a third party; and (c) a change in position by the third

18 party in reliance on the representation." *See Mobil Oil Corp. v. Bransford*, 648 So. 2d 119, 121

19 (Fla. 1995).  In the absence of any one of these elements, an agency relationship will not be

20 found. *Id.*

21 Here, Plaintiffs allege only the ultimate legal conclusion that Wells Fargo is Fannie

22 Mae's agent, without pleading the specific elements required under *Iqbal* or Florida law to

23 establish either an express or apparent agency relationship.  The mere possibility of such is not

24 enough. *See Iqbal*, 129 S.Ct. at 1947-1950.  Plaintiffs do not allege that Fannie Mae had any

25 direct involvement with the LPI process and do not allege that Fannie Mae directed or authorized

27 [3] Per its terms, the mortgage is governed by federal law and the law of the state in which the
28 property is located; here, Florida.  Amd. Compl., Ex. A, ¶ 16.

4824-7727-7201.3

1  any of Wells Fargo's allegedly unlawful conduct. Plaintiffs simply present bald allegations that

2  Fannie Mae is vicariously liable for Wells Fargo's actions. *See* Amd. Compl., at ¶¶ 20-26.

3       Nor can Plaintiffs amend to state such claims. The publicly-available applicable

4  Servicing Guide issued by Fannie Mae specifically states that loan servicers are independent

5  contractors and not agents of Fannie Mae. *See* Fannie Mae's Single Family 2006 and 2011

6  Servicing Guides (collectively "Servicing Guide"), Exhibit A to Fannie Mae's Request for

7  Judicial Notice ("Fannie Mae's RJN").[4] Wells Fargo is not Fannie Mae's agent and the claims

8  predicated against Fannie Mae on such basis must be dismissed.

9
10
11
     *(2)    Under The Merrill Doctrine, Fannie Mae Is Not Liable For The Unauthorized Acts Of Its Agents And Independent Contractors, Compelling That All Of Plaintiffs' Claims Against Fannie Mae Be Dismissed*

12       Even if the Court declines to hold that Wells Fargo is not Fannie Mae's agent, the claims

13  against Fannie Mae must still be dismissed. Under the *Merrill* doctrine, a federal instrumentality

14  cannot be held liable for the actions of its agents and independent contractors that it has not

15  expressly authorized. *Hinton* v. *Fed. Nat Mortgage Ass'n,* 945 F. Supp. 1052, 1060 (S.D. Tex.

16  1996) *(citing Federal Crop Ins. Corp.* v. *Merrill,* 332 U.S. 380, 384 n.1 (1947)), *aff'd,* 137 F.3d

17  1350 (5th Cir. 1998). Fannie Mae is a federal instrumentality. *Id.; In re Fannie Mae 2008 Secs.*

18  *Litig.,* No. 08-7831, 2009 WL 4067259, at *3 (S.D.N.Y. Nov. 24, 2009). All claims against

19  Fannie Mae should therefore be dismissed because Plaintiffs have not alleged that Fannie Mae

20  expressly authorized the acts of Wells Fargo that are the subject of Plaintiffs' Amended

21  Complaint. In particular, Plaintiffs do not allege that Fannie Mae was involved in the decision or

22  process of providing LPI to Plaintiffs. Plaintiffs have not alleged that Fannie Mae received any

23  benefit or alleged kickback from the LPI. Indeed, none of Plaintiffs' claims arise from any

24  affirmative acts of Fannie Mae. Rather, Plaintiffs' allegations against Fannie Mae in each cause

25

26  [4] The relevant portions of Fannie Mae's 2006 and 2011 Servicing Guides relating to Fannie Mae's relationship with it servicers, the servicers' basic duties and responsibilities, flood

27  insurance coverage for first mortgages, and LPI have not materially changed during the 2006-2011 time frame covering the conduct alleged by Plaintiffs as evidence by the section attached to

28  Fannie Mae's RJN as Exhibit A.

1  of action are based on the conduct of the loan servicer, Wells Fargo. *See* Amd. Compl. at ¶¶ 6,

2  9, 26, 87, 93, 94, 96, 121, 122, 124, 128, 129, 131, 132, 136, & 154.[5]

3                    a)      Fannie Mae Is A Federal Instrumentality

4          Fannie Mae is a creation of the federal government. As the three judge panel in *Federal*

5  *National Mortgage Association* v. *Lefkowitz* explained, "[a] glance at the federal legislation

6  involved, 12 U.S.C. § 1716 *et seq.* [Fannie Mae's charter], leaves little doubt that Congress

7  intended [Fannie Mae] to be recognized as a federal instrumentality." 390 F. Supp. 1364, 1368

8  (S.D.N.Y. 1975). "Fannie Mae is a governmental instrumentality because of its fundamental

9  government-like attributes." *In re Fannie Mae 2008 Secs. Litig.,* 2009 WL 4067259, at *3.

10  Fannie Mae's charter provides that its principal purpose is "to establish secondary market

11  facilities for residential mortgages." 12 U.S.C. § 1716. The charter also provides that Fannie Mae

12  is controlled by the Secretary of the Treasury with respect to certain financial transactions, has

13  Congressional "immunity from state taxation," and "performs a significant governmental

14  function in its secondary mortgage market operations." *Lefkowitz,* 390 F. Supp. at 1368

15  (statutory citations omitted); *accord Kidder Peabody & Co.* v. *Unigestion Int'l, Ltd., 903* F.

16  Supp. 479, 495-96 (S.D.N.Y. 1995). Fannie Mae, as a "government-sponsored" enterprise, "is

17  subject to the general regulatory power of a government agency;" is "exempted . . . from having

18  to qualify to do business in any state"; is "cloaked . . . with immunity from state taxation"; and

19  "performs a significant governmental function in its secondary mortgage market operations."

20  *Lefkowitz,* 390 F. Supp. at 1368; *accord Hinton,* 945 F. Supp. at 1060 (Fannie Mae is federal

21  instrumentality for *Merrill* purposes); *In re Fannie Mae 2008 Secs. Litig.,* 2009 WL 4067259, at

22  *3 (Fannie Mae is federal instrumentality for purposes of exemption from 1933 Securities Act);

23  *Rust* v. *Johnson,* 597 F.2d 174, 177 (9th Cir. 1979) (Fannie Mae is a federal instrumentality for

24

25  [5] Despite stating in Paragraph 9 of the Amended Complaint that "Fannie Mae is directly liable to

26  Plaintiffs for its own wrongful conduct," the Amended Complaint lacks any specific allegations
of wrongful acts performed by Fannie Mae. Further, the *Merrill* doctrine requires more than a

27  failure to take some action that might have prevented unauthorized conduct as alleged in
Paragraph 93 of the Amended Complaint. *Mendrala* v. *Crown Mortgage Co.,* 955 F.2d 1132,

28  1142 (7th Cir. 1992).

1  tax purposes); *see also Deerman* v. *Fed. Home Loan Mortgage Corp.,* 955 F. Supp. 1393, 1400

2  (N.D. Ala. 1997) (Freddie Mac is a federal instrumentality for *Merrill* purposes), *aff'd,* 140 F.3d

3  1043 (11th Cir. 1998); *Paslowski* v. *Standard Mortgage Corp.,* 129 F. Supp. 2d 793, 799-801

4  (W.D. Pa. 2000) (same).[6]

5          b)      Federal Instrumentalities Are Immune From Liability For The
                   Unauthorized Action Of Their Agents

6

7          The controlling law on the issue of immunity for federal instrumentalities was set forth

8  by the Supreme Court in *Federal Crop Ins. Corp.* v. *Merrill,* 332 U.S. 380 (1947). The plaintiffs

9  in *Merrill* applied for insurance under the Federal Crop Insurance Act to cover their wheat

10 farming operations.  Agents of the Federal Crop Insurance Corporation ("FCIC") erroneously

11 informed the plaintiffs that their entire wheat crop was insurable, when in fact federal regulations

12 prohibited the FCIC from insuring the "reseeded" portion of the crop. When the crop was later

13 destroyed by drought, the FCIC refused to provide full compensation and the plaintiffs sued. The

14 Court held that the FCIC's status as a federal instrumentality precluded recovery by the plaintiff:

15 "[T]he rules of law whereby private insurance companies are rendered liable for the acts of their

16 agents are not bodily applicable to a Government agency like the [FCIC], unless Congress has so

17 provided." *Id.* at 383 n.1. The Court reasoned that Congress had chosen to pursue important

18 government objectives through the FCIC and to that end had delegated to the FCIC certain

19 powers, including the power to set the terms and conditions for government crop insurance. The

20 Court held that "[t]he 'terms and conditions' defined by the [FCIC], under authority of Congress,

21 for creating liability on the part of the Government preclude recovery for the loss of the reseeded

22 wheat no matter with what good reason respondents thought they had obtained insurance from

23 the Government." *Id.* at 385.

24         In the ensuing decades since the Supreme Court's ruling in *Merrill,* courts have held that

25 Fannie Mae has no liability for the actions taken by its loan servicers because of Fannie Mae's

26

27 [6] Courts treat Fannie Mae and Freddie Mac alike under *Merrill* because the two entities have
   similar congressionally mandated structures. *See, e.g., Herrod,* v. *First Republic Mortgage*
28 *Corp., et al.,* No. 01C-2907, slip op. at 8 (Kanawha County Cir. Ct. W. Va. June 23, 2004).

12

1  status as a federal instrumentality. *See, e.g., Hinton, 945* F. Supp. at 1060; *Herrod* v. *First*

2  *Republic Mortgage Corp., et al.,* No. 01C-2907, slip op. at 8-10 (Kanawha County Cir. Ct. W.

3  Va. June 23, 2004) (explaining *Merrill,* granting summary judgment in favor of Fannie Mae, and

4  dismissing complaint against Fannie Mae in its entirety); *Deerman,* 955 F. Supp. at 1401

5  (Freddie Mac); *Paslowski,* 129 F. Supp. 2d at 799 (Freddie Mac).

6              c)      To The Extent Any Action By Wells Fargo Was Contrary To Law,
                       It Was Not Expressly Authorized By Fannie Mae
7

8              Even assuming arguendo that Wells Fargo is Fannie Mae's agent––which it is not,

9  as discussed above––-Plaintiffs' claims fail. Fannie Mae's unique status as a federal

10  instrumentality precludes liability for the acts of Wells Fargo as the servicer of Plaintiffs'

11  mortgage, if the actions of Wells Fargo were not authorized by Fannie Mae. *Hinton* v. *Fed. Nat*

12  *'l Mortgage Ass'n,* 945 F. Supp. at 1060 ("as a federal instrumentality, [Fannie Mae] cannot be

13  held liable for the acts . . . that is has not expressly authorized"); *see also Deerman,* 955 F. Supp.

14  at 1400 (dismissing claim against Freddie Mac for actions of its servicer under *Merrill);*

15  *Paslowski,* 129 F. Supp. 2d at 804-05 (same); *Mendrala,* 955 F.2d at 1140-41 (applying the

16  *Merrill* doctrine to protect Freddie Mac from the unauthorized acts of its loan servicers); *Siradas*

17  *v. Chase Lincoln First Bank, NA.,* No. 98 Civ. 4028, 1999 WL 787658, at *8 (S.D.N.Y. Sept. 30,

18  1999); *Dupuis v. Fed. Home Loan Mortgage Corp.,* 879 F. Supp. 139, 145 (D. Me. 1995); *Rust,*

19  597 F.2d at 178. Actions are unauthorized where, for example, a servicing guide specifically

20  prohibits an action yet the servicer takes that action. *See, e.g., Mendrala,* 955 F.2d at 1139.  But

21  actions can also be unauthorized where those with specific authority act outside the scope of that

22  authority. *See Paslowski,* 129 F. Supp. 2d at 800 ("[I]t is well-settled that 'only those with

23  specific authority can bind the government contractually; even those persons may do so only to

24  the extent that their authority permits.'" (citation omitted)).  The *Merrill* doctrine requires more

25  than a failure to take some action that might have prevented unauthorized conduct. *Mendrala,*

26  955 F.2d at 1142.

27              Fannie Mae's Servicing Guide does requires servicers to provide LPI if the borrower fails

28  to do so; however, it gives Wells Fargo discretion in the performance of their duties. Moreover,

13

1  Fannie Mae's Servicing Guide specifically states that its LPI guidelines should be applied

2  "subject to the provisions of and in compliance with applicable law and the mortgage

3  documents." *See* Fannie Mae's RJN, Ex. A. Plaintiffs do not allege that Fannie Mae authorized

4  the alleged misconduct by Wells Fargo when it provided LPI to Plaintiffs. Indeed, if Wells

5  Fargo's actions were contrary to the law, they were expressly unauthorized by Fannie Mae's

6  Servicing Guide, which requires its servicers to comply with applicable law. Moreover, the

7  allegations of the Amended Complaint state that Wells Fargo and Assurant initiated this process

8  based on their coverage monitoring program. *See* Amd. Compl. at ¶¶ 21, 23, & 55. In fact,

9  Plaintiffs have not alleged that Fannie Mae gave Wells Fargo any instructions at all regarding

10  LPI, let alone express authorization to undertake the alleged actions.

11  As the gravamen of Plaintiffs' claims relate to the LPI process, a process in which Fannie

12  Mae had no direct involvement and for which Fannie Mae did not direct or authorize any of

13  Wells Fargo's allegedly unlawful conduct, all of Plaintiffs' claims against Fannie Mae must be

14  dismissed without leave to amend because amendment would be futile as to Fannie Mae in light

15  of the *Merrill* doctrine.

16      **C.**    **Plaintiffs' Claims Are Barred By The National Bank Act And The Filed Rate Doctrine**

17

18      *(1)*    *Plaintiffs' Claims Against Wells Fargo, For Which Plaintiffs Attempt To Hold Fannie Mae Liable, Are Preempted By The National Bank Act*

19  Fannie Mae incorporates by reference as if fully set forth herein and joins in Wells

20  Fargo's and Assurant's arguments in their concurrently filed Motions to Dismiss the Amended

21  Complaint that Plaintiffs' claims must be dismissed because they are preempted by the federal

22  National Bank Act ("NBA"). 12 U.S.C. § 21 *et seq*. Again, none of the unlawful conduct set

23  forth in the Amended Complaint is alleged to have been performed directly by or at the direction

24  of Fannie Mae. To the extent the Court finds that the claims against Wells Fargo, a national

25  bank, are preempted by the NBA, the Court should similarly find that the preemption extends to

26  Fannie Mae; there is no direct liability alleged against Fannie Mae.

27  The activities at issue are essential to Wells Fargo's ability to carry out its federal

28  banking activities, including the servicing of mortgage loans and the insuring of those loans'

1   collateral. For preemption purposes, it is the banking activity being regulated rather than the

2   actor being regulated that matters. *See* 12 C.F.R. § 34.4; *SPGGC, LLC v. Ayotte*, 488 F.3d 525,

3   532 (1st Cir. 2007); *Pacific Capital Bank, N.A. v. Connecticut*, 542 F.3d 341, 353 (2d Cir. 2008).

4   Plaintiffs' claims focus on the pricing of LPI, the fees received by Wells Fargo in connection

5   with LPI, and the imposition of LPI itself. These claims directly conflict with the NBA laws and

6   regulations that prohibit states from imposing requirements on Wells Fargo's ability to "require

7   or obtain private mortgage insurance," 12 C.F.R. § 34.4(a), impose and charge fees, 12 C.F.R.

8   §7.40002(a), and to disclose information in connection with its lending activities, 12 C.F.R. §

9   34.4(a). Plaintiffs claims are therefore entirely preempted by the NBA and should be dismissed.

10           *(2)*     ***The Filed Rate Doctrine Precludes Liability***

11         Fannie Mae incorporates by reference and joins in Wells Fargo's and Assurant's

12   arguments in their concurrently filed Motion to Dismiss the Amended Complaint to the extent

13   that Plaintiffs' count for breach of contract is based on the imposition of supposedly "excessive"

14   and "unreasonable" premiums—despite the contract informing Plaintiffs that LPI would cost

15   more than coverage obtained directly by borrowers. The premiums charged are based upon a

16   rate filed, and approved by, Florida's Office of Insurance Regulation, the agency appointed to

17   regulate premium rates. Each claim against Assurant, and any liability that might flow to Wells

18   Fargo and to Fannie Mae, is thus barred by Florida's filed rate doctrine, which provides that a

19   filed rate is *per se* reasonable and unassailable in judicial proceedings. *See Morales v. Attorneys'*

20   *Title Ins. Fund, Inc.*, 983 F. Supp. 1418, 1429-30 (S.D. Fla. 1997); *Uniforce Temporary*

21   *Personnel, Inc. v. Nat'l Council on Compensation Ins., Inc.*, 892 F. Supp. 1503, 1512 (S.D. Fla.

22   1995), *aff'd*, 78 F.3d 1296 (11th Cir. 1996).

23       **D.**     **Plaintiffs Fail To State A Claim Against Fannie Mae Upon Which Relief Can**

24         **Be Granted**

25         *(1)*   ***Plaintiffs' Breach of Contract And Breach Of The Implied Covenant of Good Faith And Fair Dealing Claims Fail***

26         To state a claim for breach of contract under Florida law, a plaintiff must allege a valid

27   contract, a material breach, and resulting damages. *AmerisourceBergen Drug Corp. v. Izz &*

28   *Sons, Inc.*, No. 11-cv-23895, 2012 U.S. Dist. LEXIS 121865, at *10 (S.D. Fla. Aug. 28, 2012);

1    *Friedman v. N.Y. Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th DCA 2008). "The implied covenant of

2    good faith and fair dealing applies to every contract." *Meruelo v. Mark Andrew of Palm Beaches,*

3    *Ltd.*, 12 So. 3d 247, 250 (Fla. 4th DCA 2009). "The **implied covenant** of good faith and fair

4    dealing does not, however, vary the express terms of a **contract, . . .**but, rather, attaches to the

5    performance of specific contractual obligations." *Mount Sinai Medical Center of Greater Miami,*

6    *Inc. v. Heidrick & Struggles, Inc.*, 188 Fed. Appx. 966, 970 (11th Cir. 2006) (citations and

7    quotations omitted). "Under Florida law, a party breaches this implied covenant by a failure or

8    refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad

9    judgment or negligence; but, rather by a conscious and deliberate act, which unfairly frustrates

10   the agreed common purpose and disappoints the reasonable expectations of the other party."

11   *Tiara Condominium Ass'n, Inc. v. Marsh & McLennan Companies*, 607 F.3d 742, 747 (11th Cir.

12   2010) (internal marks omitted). As with the rest of the Amended Complaint, Plaintiffs claims

13   against Fannie Mae for breach of contract and the implied covenant of fair dealing are based

14   solely on Wells Fargo's actions, but are brought against Fannie Mae because Fannie Mae

15   allegedly "owns their note and is responsible for all actions of its agent, Wells Fargo." Amd.

16   Compl, at ¶ 87; *see also id.*, at ¶ 93-94, 98. Accordingly, Fannie Mae incorporates by reference

17   and joins in Wells Fargo's Motion to Dismiss arguments regarding Plaintiffs' failure to state a

18   claim for breach of contract and breach of the implied covenant of good faith and fair dealing at

19   IV.B.1 and 2. If there is no liability against Wells Fargo, Fannie Mae cannot be held vicariously

20   liable for the same alleged acts. Moreover, as discussed above, Plaintiffs' breach of contract

21   claim against Fannie Mae, based solely on the alleged actions of Wells Fargo, is barred by the

22   *Merrill* doctrine.

23      Plaintiffs do not allege Fannie Mae breached the mortgage contract by its own actions or

24   directly caused damage to Plaintiffs. *See* Amd. Compl., at ¶¶ 94, 98 ("Fannie Mae, acting

25   through its servicing agent Wells Fargo, breached the express terms of the mortgage contract . . .

26   ." "Plaintiffs and the Classes have suffered damages as a result of Wells Fargo's breach of

27   contract and breach of the implied covenant of good faith and fair dealing. . . ."). Nor can

28   Plaintiff state a breach of contract for "failure to intervene." *See* Amd. Compl., at ¶ 93 ("Wells

16

1   Fargo's actions were known or should have been known to Fannie Mae which failed to intervene

2   . . ."). Plaintiffs fail to allege any express contract term that would require Fannie Mae to

3   perform as alleged by Plaintiffs (to intervene), nor do they allege any "conscious and deliberate

4   act" required under Florida law to survive dismissal of the implied covenant claim. *Tiara*

5   *Condominium Ass'n, Inc.,* 607 F.3d at 747. Plaintiffs' contention that Fannie Mae breached the

6   contract because Wells Fargo "exercised its discretion capriciously" to also fails as a matter of

7   law. Amd. Compl., at ¶ 97. "With the implied covenant, one party cannot capriciously exercise

8   discretion accorded it under a contract so as to thwart the contracting parties' reasonable

9   expectations. Yet, the limit placed on a party's discretion is not great. *Sembler Family P'ship #*

10  *41 v. Brinker Fla., Inc.,* 660 F. Supp. 2d 1307, 1313 (M.D. Fla. 2009) (internal citations

11  omitted); *see also Burger King Corp. v. Ashland Equities, Inc.*, 217 F. Supp. 2d 1266, 1278 (S.D.

12  Fla. 2002) (noting that "[u]nder Florida law, the limit placed on a party's discretion is not great"

13  and that "a party's decision will not violate the implied covenant of good faith and fair dealing

14  unless no reasonable party would have made the same discretionary decision") (citations and

15  quotations omitted). Plaintiffs admit the plain language of Section 5 of the mortgage permitted

16  the servicing agent to select the force-placed insurer and the rate. Amd. Compl. at ¶ 96. As a

17  result, the breach of contract count must be dismissed as against Fannie Mae.

18          ### (2)   *Plaintiffs Cannot Maintain A Claim For Breach Of Fiduciary Duty Against Fannie Mae*

19

20          The elements of a claim for breach of fiduciary duty are: "the existence of a fiduciary

21  duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages."

22  *Patten v. Winderman*, 965 So. 2d 1222, 1224 (Fla. Dist. Ct. App. 4th Dist. 2007). Plaintiffs'

23  count for breach of fiduciary duty suffers from several fatal flaws. First, it fails to allege facts

24  giving rise to a fiduciary duty on Fannie Mae's part—Fannie Mae did not directly hold or

25  operate Plaintiffs' escrow account. Second, in Florida, generally the relationship between a bank

26  and its borrower is that of creditor to debtor, in which parties engage in arms-length transactions,

27  and the bank owes no fiduciary responsibilities. *Lanz v. Resolution Trust Corp.,* 764 F. Supp.

28  176 (S.D. Fla. 1991). Third, the Amended Complaint alleges only that Wells Fargo held

17

1  escrowed funds for the purpose of paying insurance premiums; Fannie Mae did not hold funds or
2  administer Plaintiffs' escrow account. Amd. Compl., at ¶ 119.  That is insufficient as a matter of
3  law to create a fiduciary relationship.  "[W]hen the escrow agreement simply provides for the
4  payment of funds by the mortgagor into an account for the mortgagee's use to meet tax,
5  insurance, and other obligations—as appears to be the case here—no fiduciary relationship is
6  created." *See Monumental Life Ins. Co. v. Hayes-Jenkins*, 403 F.3d 304, 318-10 & n. 27 (5th Cir.
7  2005); *White v. Mellon Mortg. Co.*, 995 S.W.2d 795, 801 (Tex.App.-Tyler 1999, no pet.) (*citing
8  Wesson v. Jefferson Sav. & Loan Ass'n*, 641 S.W.2d 903, 905 n. 2 (Tex.1982)).      Plaintiffs
9  assert that a fiduciary relationship existed between Plaintiffs and Fannie Mae because Fannie
10 Mae, through its servicing agent Wells Fargo, received a "greater economic benefit than from a
11 typical escrow transaction," citing *Capital Bank v. MVB, Inc.,* 644 So. 2d 515, 519 (Fla.3d DCA
12 1994). Amd. Compl., at ¶ 121. Plaintiffs' citation to *Capital Bank* is misleading and completely
13 distinguishable. First, *Capital Bank* does not relate to the operation and maintenance of an
14 escrow account. The words "escrow" or "escrow account," are not mentioned. *See generally,*
15 *Capital Bank,* 644 So. 2d 515. Second, the economic benefit discussed in *Capital Bank* was
16 completely unrelated to functions of an escrow account. The court's imposition of a fiduciary
17 duty in that case was based on the bank's benefit derived from convincing the borrower to
18 purchase the assets of another company  which relieved the bank from a loss on a non-
19 performing loan. *Id.* at 520. Here, Plaintiffs do not allege that Fannie Mae received a greater
20 economic benefit than from a typical escrow transaction.

21       Finally, Plaintiffs fails to allege any breach of duty, assuming Fannie Mae owed one. It
22 was no breach of duty to buy LPI in excess of loan balance, pay for it from escrowed funds, or
23 charge a LPI fee. The escrow account was established for the express purpose of paying
24 insurance premiums. By signing their security instruments, Plaintiffs expressly allowed exactly
25 this conduct. Amd. Compl., Ex. A, at p. 5-6 & 9.  This claim therefore fails as a matter of law.

26          *(3)*     ***Plaintiffs Fail To State A RESPA Claim Because Fannie Mae Is Not
                      Subject To 12 U.S.C. § 2607 And Has Not Received A Split Of Any
27                    Charge to Plaintiffs***

28

FANNIE MAE'S NTC & MTN. TO DISMISS AMD. COMPL. AND MTN. TO STRIKE; MPAS ISO THEREOF
                                                                          CV-12-01376 EMC

24-7727-7201.3

1    RESPA is an anti-kickback statute that is applicable solely to the residential real estate

2  industry. *See* 12 U.S.C. § 2607(a) and (b).

3    Plaintiffs' RESPA claim fails as a matter of law for four reasons. First, RESPA only

4  applies to the duties of loan originators and servicers. *See* 12 U.S.C. §2605. The Amended

5  Complaint admits that Amerisave Mortgage Corporation was the originator, Ohio Savings Bank

6  was the original servicer; and Wells Fargo is the current servicer of Plaintiffs' loan. Amd.

7  Compl., at ¶¶ 21, 27 & 31. Plaintiff does not allege that Fannie Mae either originated or services

8  their loan. Moreover, Fannie Mae is excluded from the definition of "servicer" under RESPA,

9  *see* 12 U.S.C. §2605(i)(2)(B), and Fannie Mae is precluded from originating loans, *see* 12 U.S.C.

10  § 1719(a)(2). Because Fannie Mae was neither the originator nor servicer of Plaintiffs' loan, it

11  cannot be held liable under RESPA. *See Kee v. Fifth Third Bank*, No. 06-0602, 2009 U.S.

12  District LEXIS 21502, at \*33 (D. Utah Mar. 18, 2009) (dismissing RESPA claim against Fannie

13  Mae because RESPA applies to servicer of loan, not owner of note).

14    Second, Plaintiffs' RESPA claim should be dismissed because RESPA, by its terms,

15  applies only to "real estate settlement services." 12 U.S.C. §2607(a)-(b). This district has

16  expressly held that post-origination LPI is not a "settlement service." *See McNeary-Calloway v.*

17  *JP Morgan Chase Bank, N.A.*, No. C11-3058, 2012 WL 1029502, at \*20-21 (N.D. Cal. Mar. 26,

18  2012) (if purchased after loan origination, force-placed insurance is not a "settlement service"

19  under RESPA); *Gens v. Wachovia Mortg. Corp.*, No. C10-1073, 2011 WL 1791601, at \*6 (N.D.

20  Cal. May 10, 2011). RESPA defines a "settlement service" as "any service provided in

21  connection with a real estate settlement . . . ." 12 U.S.C. §2602(3) (emphasis added). The

22  Department of Urban Development ("HUD"), which is charged with implementing RESPA, has

23  promulgated regulations defining "settlement" as "the process of executing legally binding

24  document regarding a lien on property that is subject to a federally related mortgage loan. This

25  process may also be called 'closing' or 'escrow' in different jurisdictions." 24 C.F.R.

26  § 3500.2(b).[7] By its terms, then, RESPA is narrow in scope, applying only to services rendered

27

28  [7] Absent clear and countervailing statutory authority, HUD's regulations are to be accorded
substantial deference under *Chevron U.S.A. v. NRDC*, 467 U.S. 837, 842-43 (1984).

19

1  at or in connection with a loan closing. Accordingly, as numerous cases have concluded, fees or

2  charges assessed for services performed long after a loan's closing do not fall within RESPA's

3  narrow scope. *See, e.g.*, *Bloom v. Martin*, 77 F.3d 318, 321 (9th Cir. 1996) (RESPA "does not

4  focus on post-settlement fees paid by mortgagors after they have purchased their houses").

5  Indeed, as HUD explained in an opinion letter in 1987, RESPA is "directed to practices

6  preceding or accompanying the settlement and not to post-settlement practices, such as

7  [insurance policies which are renewed in subsequent years]." *See* Letter, June 26, 1987,

8  *reprinted in* Paul Barron, Federal Regulation of Real Estate and Mortgage Lending App. 2-84

9  (1992 & Supp. 1993) (emphasis added).

10       Plaintiffs obtained their loan in September 2005 and obtained some flood insurance at

11  that time. Amd. Compl., at ¶¶ 27 & 32. The LPI procured by Wells Fargo at issue here is not a

12  "settlement service" governed by RESPA and was not placed on Plaintiffs' property until May

13  2006. *Id.* at ¶ 38. In fact, as admitted, Plaintiffs' loan was closed by a different lender with a

14  different servicer and did not involve the LPI in question. Plaintiffs' LPI payments are simply

15  not a service provided in connection with "the process of executing legally binding document

16  regarding a lien on property." 24 C.F.R. § 3500.2(b).

17       Third, while not completely clear, the Amended Complaint apparently asserts that Wells

18  Fargo violated Section 8 of RESPA, 12 U.S.C. §2607(a)-(b)[8] by accepting a commission or

19  kickback in connection with the LPI and/or by accepting a split of the LPI premium. Amd.

20  Compl., at ¶ 153. This claim also fails as to Fannie Mae because Plaintiffs have not alleged, and

21  cannot allege, that Fannie Mae received any payment, commission or kickback, or any other

22

23

---

24  [8] Section 2607(a) provides that "no person shall give and no person shall accept any fee,
kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that

25  business incident to or a part of a real estate settlement service involving a federally related
mortgage loan shall be referred to any person."

26

27  Section 2607(b) provides that "no person shall give and no person shall accept any portion, split,
or percentage of any charge made or received for the rendering of a real estate settlement service

28  in connection with a transaction involving a federally related mortgage loan other than for
services actually performed."

20

FANNIE MAE'S NTC & MTN. TO DISMISS AMD. COMPL. AND MTN. TO STRIKE; MPAS ISO THEREOF
CV-12-01376 EMC

1 | benefit, in association with the LPI transaction. Absent receiving a fee, kickback, or split, Fannie

2 | Mae cannot have violated RESPA.

3 | Finally, the RESPA claim alternatively fails because this action was not commenced

4 | within "1 year in the case of a violation of section 2607 or 2608 of this title from the date of the

5 | occurrence of the violation." 12 U.S.C. § 2614. The phrase "the date of the occurrence of the

6 | violation" refers to the date of the loan closing. *Snow v. First Am. Title Ins. Co.*, 332 F.3d 356,

7 | 359 (5th Cir. 2003); *Holt v. First Franklin Fin. Corp.*, No. C10-5929, 2011 WL 4595195, at *3

8 | (N.D. Cal. Sept. 30, 2011); *Washington v. Nat'l City Mortg. Co.*, No. C10-5042, 2011 WL

9 | 1842836, at *7 (N.D. Cal. May 16, 2011). Here, that date is September 9, 2005. Amd. Compl. ¶

10 | 27. This suit was filed on March 19, 2012, and thus is time-barred on the Amended Complaint's

11 | face

12 | For all of the above reason, Plaintiffs' RESPA claim against Fannie Mae fails as a matter

13 | of law and must be dismissed.

14 |                     *(4)    Plaintiffs' TILA Claim Fails Because TILA Is Not Applicable To*

15 |                             *Fannie Mae Under These Facts, The Claim Is Time Barred, And No*
   |                             *TILA Violation Occurred*

16 | The federal Truth In Lending Act ("TILA") and its implementing regulations require

17 | creditors to make certain disclosures to protect consumers regarding charges and interest rates

18 | prior to entering into certain transactions. *McDonald v. Checks-N-Advance, Inc. (In re Ferrell)*,

19 | 358 B.R. 777, 783, 789 (B.A.P. 9th Cir. 2006).

20 |                     a)      Plaintiffs Have No TILA Claim Against Fannie Mae

21 | Only a "creditor" may be held liable for a TILA violation. *See Riviere v. Banner*

22 | *Chevrolet, Inc.*, 184 F.3d 457, 460-61 (5th Cir. 1999); 15 U.S.C. § 1640(a). Despite Plaintiffs'

23 | contentions in Paragraph 128 of the Amended Complaint, Fannie Mae is not a "creditor" within

24 | the terms of TILA.[9] Fannie Mae: (1) does not regularly extend credit directly to consumers, but

25 |

26 | [9] 15 U.S.C. § 1602(f) defines "creditor" as "only . . . a person who both (1) regularly extends,

27 | whether in connection with loans, sales or property or services, or otherwise, consumer credit
   | which is payable by agreement in more than four installments or for which the payment of a

28 | finance charge is or may be required, and (2) is the person to whom the debt arising from the
   | consumer credit transaction is initially payable on the face of the evidence of indebtedness."

1   rather solely purchases loan in the secondary market, *see e.g.,* Amd. Compl., at ¶ 25; and (2) is

2   not the person to whom Plaintiffs' "credit transaction is initially payable on the face of the

3   evidence of indebtedness," as evidenced by Plaintiffs' mortgage.  The evidence of indebtedness

4   – Plaintiffs' promissory note -- was initially payable to Amerisave Mortgage Corporation. *See*

5   Amd. Compl., at Ex. A, p. 1-2; *see also MRW, Inc. v. Big-O Tires, LLC*, No. 08-1732, 2008 U.S.

6   Dist. LEXIS 10192, at *11 (E.D. Cal. Nov. 25, 2008) (observing that on consideration of a

7   motion to dismiss, the court need not "accept as true unreasonable inferences or conclusory legal

8   allegations cast in the form of factual allegations.")  Moreover, Fannie Mae is barred from

9   originating loans. 12 U.S.C. § 1719(a)(2).  Fannie Mae was therefore not the "creditor" making

10  Plaintiffs' loan and is not subject to liability under TILA. Plaintiffs' TILA claim with respect to

11  Fannie Mae must be dismissed as a matter of law.

12              b)    Plaintiffs' TILA Claim Is Time Barred

13          Plaintiffs' TILA claim is governed by a one-year statute of limitations period because it

14  seeks only compensation for monetary loss. *See* Amd. Compl., at ¶¶ 128 & 135; 15 U.S.C.

15  § 1640(e).  That limitations period runs from the date of the consummation of the loan at which

16  time TILA requires lenders to make full disclosures.  A loan is "consummated" for TILA

17  purposes when "a consumer becomes contractually obligated on a credit transaction." 12 C.F.R.

18  § 226.2(a)(13).  Plaintiffs became contractually obligated in this case when they signed their

19  mortgage and promissory note on September 9, 2005. *See* Amd. Compl., at ¶ 27, Ex. A, p. 1-2.

20  Plaintiffs' limitations period for a TILA claim expired in September 2006 and Plaintiffs did not

21  file this suit until March 19, 2012, well after the limitations period expired.  Plaintiffs' TILA

22  claim against Fannie Mae is time barred.[10]

23

---

24  [10] Plaintiffs attempt to circumvent this time bar by arguing that every instance of placement of
25  LPI created a new loan obligation requiring new TILA disclosures or that equitable tolling
    should apply. Amd. Compl., at ¶¶ 66-72 &132. These allegations fail because Plaintiffs'
26  security instruments expressly authorized both the LPI charges and Wells Fargo's adding them to
    the loan principal there was no change in loan terms, no new financing, and no new disclosure
27  requirements after the loan was originally funded. Plaintiffs' allegations do not properly invoke
    delayed discovery or equitable tolling, alleging only conclusions, not facts. *See Cervantes v.*
28  *Countrywide Home Loans, Inc.,* 656 F.3d 1034, 1045-46 (9th Cir. 2011).

FANNIE MAE'S NTC & MTN. TO DISMISS AMD. COMPL. AND MTN. TO STRIKE; MPAS ISO THEREOF
                                                                      CV-12-01376 EMC

4824-7727-7201.3

1

c) No TILA Violation Occurred

2     Plaintiffs' TILA claim alleges a violation of 12 C.F.R. § 226.17(c) by failing to fully

3 disclose flood insurance requirements in the mortgage, failing to disclose the amount and nature

4 of the "commission" Wells Fargo's affiliates would receive for the LPI purchase, and failing to

5 provide disclosures when a "new debt" was created. Amd. Compl., at ¶¶ 131-132. Plaintiffs are

6 wrong for the reasons discussed above. The mortgage expressly allowed the lender to set the

7 amount of insurance coverage required, and neither the mortgage nor federal law limits the LPI

8 to the amount needed to secure the loan balance. Further, the mortgage expressly allowed the

9 lender to charge the borrower fees related to the LPI and to protect the lender's interest in the

10 property. *See* Amd. Compl., Ex. A, ¶¶ 5, 9, & 14. The mortgage disclosed that insurance

11 requirements can change during the term of the loan and allowed LPI premiums to be added to

12 loan principal. *Id.* at ¶ 5. On this basis there was no failure to disclosure and no TILA violation

13 and the claim must be dismissed.

14
15
      *(5)     Plaintiffs Have Not Stated A Valid Claim For Violation Of Cal. Bus. &
              Prof. Code 17200 et seq. Against Fannie Mae*

16     The purpose of California's Unfair Competition Law ("UCL") is "to protect both

17 consumers and competitors by promoting fair competition in commercial markets for goods and

18 services." *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 949 (Cal. 2002). Plaintiffs' UCL claim also fails

19 for at least two reasons and must be dismissed. First, to be "unlawful" under the UCL, the

20 defendant "must violate another 'borrowed' law. Section 17200 borrows violations of other laws

21 and treats them as unlawful practices that the unfair competition law makes independently

22 actionable. Virtually any state, federal or local law can serve as the predicate for an action under

23 section 17200." *Davis v. HSBC Bank*, No. 10-56488, 2012 U.S. App. LEXIS 18503, at *34 (9th

24 Cir. Cal. Aug. 31, 2012) (internal quotations and citations omitted). An unfair business practice

25 under the UCL is "one that either offends an established public policy or is immoral, unethical,

26 oppressive, unscrupulous, or substantially injurious to consumers." *McDonald v. Coldwell*

27 *Banker*, 543 F.3d 498, 506 (9th Cir. 2008). However, as discussed above in detail, Fannie Mae

28 has not engaged in any "unlawful" or "unfair" conduct that falls within the ambit of Section

23

1   17200. *See Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010);

2   *Flores v. Wells Fargo Bank, N.A.*, No. C11-6619, 2012 WL 2427227, at *8 (N.D. Cal. June 26,

3   2012). All of Plaintiffs' claims against Fannie Mae for breach of contract and the implied

4   covenant of good faith and fair dealing, breach of fiduciary duty, and violations of RESPA and

5   TILA fail as a matter of law. Further, Wells Fargo is not Fannie Mae's agent and under the

6   *Merrill* doctrine, Fannie Mae is not liable for the unauthorized conduct of Wells Fargo if an

7   agency relationship exists. Thus, there is no predicate "unlawful" or "unfair" act by Fannie Mae

8   upon which a UCL claim can be based.

9       Second, the UCL claim must be dismissed because the injury alleged did not occur in

10  California. Plaintiffs did not allege that Fannie Mae engaged in conduct in California that

11  affected the Cannons in Florida, the state where the property subject to the LPI is located. The

12  UCL is presumed *not* to have extraterritorial application; that presumption is not rebutted here.

13  *See Norwest Mortg., Inc. v. Superior Court*, 72 Cal. App. 4th 214, 222 (1999). The alleged

14  California Subclass to which the UCL claim applies encompasses "[a]ll individuals in the state of

15  California with a loan owned by Fannie Mae or serviced by Wells Fargo . . . ." Amd. Compl., at

16  ¶ 74. The Cannons, as Florida residents who do not allege any injury from conduct of Fannie

17  Mae occurring in California, are not members of this subclass, lack standing, and are improper

18  representatives to maintain a class action claim for violation of Cal. Bus. & Prof. Code §§ 17200

19  *et seq. First Am. Title Ins. Co. v. Superior Court,* 145 Cal. App. 4th 1564, 1573 (2007) ("The

20  named plaintiff in a class action must be a member of the class he purports to represent."); *see*

21  *also Shapell Industries Inc. v. Superior Court*, 132 Cal. App. 4th 1101, 1111 (2005) ("an

22  individual or entity may bring an unfair business practices class action only if he is a member of

23  the class injured by the practice.").

24          *(6)   Plaintiffs Cannot Maintain A Claim For Equitable Relief*

25      Plaintiffs seek both an injunction and restitution in a separate count for "equitable relief."

26  Amd. Compl., at ¶¶ 157-159. As an initial matter, equitable relief—an injunction or

27  restitution—is a remedy, not a claim. There is no independent cause of action for "equitable

28  relief;" this claim should be dismissed without leave to amend. *Neu v. Terminix Int'l, Inc.*, No.

24

1  C07-6472, 2008 U.S. Dist. LEXIS 32844, at *9-10 (N.D. Cal. Apr. 8, 2008). Further, a claim for

2  injunction is fundamentally not a "claim showing that the pleader is entitled to relief." Fed. R.

3  Civ. P. 8(a)(2); *see e.g., Pierson v. Orlando Regional Healthcare Sys., Inc.*, 619 F. Supp. 2d

4  1260, 1288 (M.D. Fla. 2009) ("an injunction is not a cause of action but a remedy") (citations

5  omitted). Moreover, Plaintiffs have not shown, and cannot show as a matter of law, that they are

6  entitled to either form of relief as against Fannie Mae. There is no basis to enjoin the LPI

7  practice, as it is expressly allowed in the security instruments and there is no basis to repay any

8  fees that Wells Fargo received in conjunction with placement of LPI because fees for LPI are

9  also expressly allowed. Amd. Compl., Ex. A, ¶¶ 5, 9, & 14.

10  **E.   The Jury Demand Should Be Stricken Pursuant to Fed. R. Civ. P. 12(f)**

11  Pursuant to Section 25 of Plaintiffs' Mortgage, Plaintiffs waived their right to a trial by

12  jury in any action arising out of the mortgage. Their waiver was made knowingly and

13  voluntarily and is conspicuous; therefore, their demand for a jury trial should be stricken

14  pursuant to Federal Rule of Civil Procedure 12(f) and Florida law. *Allyn v. W. United Life Assur.*

15  *Co.*, 347 F. Supp. 2d 1246, 1251-52, 1256 (M.D. Fla. 2004).

16  **IV.   CONCLUSION**

17  For the reasons stated above, Plaintiffs' Amended Complaint and each cause of action

18  contained within should be dismissed for failure to state a claim against Fannie Mae on which

19  relief may be granted and judgment should be entered in favor Fannie Mae. Should any claims

20  survive or leave to amend be granted, Plaintiffs' jury demand should be stricken.

21
22  Dated: September 14, 2012             **FOLEY & LARDNER LLP**
                                          NANCY L. STAGG
23
24
25                                        By: */s/ Nancy L. Stagg*
                                          Attorney for Defendant FANNIE MAE
26
27
28
                                    25
FANNIE MAE'S NTC & MTN. TO DISMISS AMD. COMPL. AND MTN. TO STRIKE; MPAS ISO THEREOF
                                                                    CV-12-01376 EMC

4824-7727-7201.3

1

## CERTIFICATE OF SERVICE

2       The undersigned hereby certifies that a true and correct copy of the above and foregoing

3   document has been served on September 14, 2012 to all counsel of record who are deemed to

4   have consented to electronic service via the Court's CM/ECF system per Fed. R. Civ. P. 5(b)(3).

5   Counsel of record listed below will be served by electronic mail, facsimile, United States mail,

6   and/or overnight delivery.

7

8   Dated:  September 14, 2012

Foley & Lardner LLP
NANCY L. STAGG

9

10

By: /s/ *Nancy L. Stagg*
Attorneys for Defendant FANNIE MAE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

26

4824-7727-7201.3