Sheri L. Kelly, SBN 226993
E-mail: slk@sherikellylaw.com
LAW OFFICE OF SHERI L. KELLY
31 E. Julian St.
San Jose, CA  95112
Telephone:  408/287-7712
Facsimile:  408/583-4249

**Attorney for Plaintiffs**
*Additional Counsel Listed on Signature Page*

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| STANLEY D. CANNON and PATRICIA R. CANNON, individually, and for other persons similarly situated,<br><br>              Plaintiffs,<br><br>vs.<br><br>WELLS FARGO BANK, N.A., FEDERAL NATIONAL MORTGAGE ASSOCIATION, and ASSURANT, INC.<br><br>              Defendants. | Case No. CV-12-01376  EMC<br><br>**PLAINTIFF'S AMENDED OPPOSITION TO WELLS FARGO BANK, N.A.'S MOTION (a) TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT AND (b) TO DISMISS OR STRIKE PLAINTIFFS' JURY DEMAND**<br><br>Date: November 30, 2012<br>Time: 1:30 P.M.<br>Crtrm: 5<br>Judge: Hon. Edward M. Chen<br><br>Action Filed: March 19, 2012<br>Trial Date: None Set |

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................ 1

II.   LEGAL ARGUMENT ....................................................................................... 2

    A.   Preliminary Legal Issues ...................................................................... 2

        1.   Legal Standard  ............................................................................ 2

        2.   Applicable Law ............................................................................ 3

    B.   Wells Fargo, Acting as Servicer for Fannie Mae, Breached Plaintiffs' Mortgage ................................................................................................. 4

        1.   Wells Fargo Breached the Express Terms of Plaintiffs' Mortgage ...... 5

        2.   Wells Fargo Breached the Implied Covenant of Good Faith and Fair Dealing ................................................................................. 8

    C.   Wells Fargo was Unjustly Enriched at Plaintiffs' Expense............................. 11

    D.   Wells Fargo Converted Plaintiffs' Property ..................................... 12

    E.   Wells Fargo Breached Its Fiduciary Duty to Plaintiffs ................................. 14

    F.   Wells Fargo Violated TILA ................................................................ 15

    G.   Wells Fargo Violated the California Unfair Competition Law ..................... 19

    H.   Wells Fargo Violated RESPA ............................................................ 21

    I.   Plaintiffs are Entitled to Equitable Relief ........................................ 22

    J.   The Filed Rate Doctrine Is Inapplicable to Plaintiffs' Claims ..................... 22

    K.   The National Bank Act Has No Preemptive Effect on Plaintiffs' State Law Claims............................................................................................. 24

    L.   The Jury Waiver is Unenforceable .................................................... 26

III.  CONCLUSION................................................................................................... 27

# TABLE OF AUTHORITIES

**United States Supreme Court**

*Beach v. Ocwen Fed. Bank,*
 523 U.S. 410 (1998)...................................................................................................................15

*Bell Atl. Corp. v. Twombly,*
 550 U.S. 544 (2007).....................................................................................................................2

*Conley v. Gibson,*
 355 U.S. 41 (1957).......................................................................................................................2

*Davis v. Elmira Sav. Bank,*
 161 U.S. 275 (1896)...................................................................................................................24

*Phillips Petroleum Co. v. Shutts,*
 472 U.S. 797 (1985).....................................................................................................................3

*Watters v. Wachovia Bank,*
 550 U.S. 1 (2007).......................................................................................................................24

**United States Courts of Appeals**

*Bragg v. Bill Heard Chevrolet, Inc.,*
 374 F.3d 1060 (11th Cir. 2004)............................................................................................16, 19

*Centurion Air Cargo v. UPS Co.,*
 420 F.3d 1146 (11th Cir. 2005)...................................................................................................8

*Cooper v. Meridian Yachts, Ltd.,*
 575 F. 3d 1151 (11th Cir. 2009)...................................................................................................3

*In re Smith,*
 866 F.2d 576 (3d Cir. 1989).....................................................................................................9, 10

*Kolbe v. Bank of America,*
 2012 WL 4240298 (1st Cir. Sep. 21, 2012) ............................................................................2, 10

*Lass v. Bank of America,*
 2012 WL 4240504 (1st Cir. Sep. 21, 2012) ........................................................................passim

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.,*
 96 F.3d 1151 (9th Cir. 1996)......................................................................................................11

*Parks Sch. of Bus. v. Symington,*
 51 F.3d 1480 (9th Cir. 1994).......................................................................................................2

*Pension Trust Fund for Operating Eng'rs v. Fed. Ins. Co.,*
 307 F.3d 944 (9th Cir. 2002)......................................................................................................14

*Rossman v. Fleet Bank, N.A.,*
 280 F.3d 384 (3d Cir. 2002).......................................................................................................18

*Snow v. First Am. Title Ins., Co.,*
 332 F.3d 356 (5th Cir. 2003)......................................................................................................22

ii

*Taffet v. Southern Co.*,
  967 F.2d 1483 (11th Cir. 1992) ........................................................................................... 23

*Wegoland Ltd. v. NYNEX Corp.*,
  27 F.3d 17 (2d Cir. 1994) .................................................................................................... 23

*Williams v. Certain Underwriters at Lloyd's of London*,
  398 F. App'x 44 (5th Cir. 2010) ........................................................................................... 7

**United States District Courts**

*Abels v. JPMorgan Chase Bank, N.A.*,
  678 F. Supp. 2d 1273 (S.D. Fla. 2009) .......................................................................... passim

*Action Nissan, Inc. v. Hyundai Motor Am.*,
  617 F. Supp. 2d 1177 (M.D. Fla. 2008) ............................................................................... 5

*Allyn v. W. United Life Assur. Co.*,
  347 F. Supp. 2d 1246 (M.D. Fla. 2004) ............................................................................. 26

*Alvarado Orthopedic Research, L.P. v. Linvatec Corp.*,
  2011 WL 3703192 (S.D. Cal. Aug. 23, 2011) ................................................................... 13

*Arnett v. Bank of America, N.A.*,
  2012 WL 2848425 (D. Or. Jul 11, 2012) ............................................................................ 2

*Bermudez v. First Am. Bank Champion, N.A.*,
  860 F. Supp. 580 (N.D. Ill. 1994) ...................................................................................... 17

*Buckeye Ventures, Inc. v. Trafalgar Capital Specialized Investment Fund Luxembourg*,
  2009 WL 2477470 (S.D. Fla. Aug. 11, 2009) ................................................................... 27

*Cibran v. BP Prods. of N. Am., Inc.*,
  375 F. Supp. 2d 1355 (S.D. Fla. 2005) ................................................................................ 8

*Davis v. Chase Bank U.S.A., N.A.*,
  650 F. Supp. 2d 1073 (C.D. Cal. 2009) ............................................................................. 24

*Fla. Dept. Ins. v. Debenture Guar.*,
  921 F. Supp. 750 (M.D. Fla. 1996) .................................................................................... 13

*Gooden v. Suntrust Mortgage*,
  2012 WL 996513 (E.D. Cal. Mar. 23, 2012) ........................................................... 2, 16, 17, 18

*Gordon v. Chase Home Fin., LLC*,
  2012 WL 750608 (M.D. Fla. Mar. 7, 2012) ................................................................... 2, 14

*Green v. FedEx Nat'l, LTL, Inc.*,
  2011 WL 6813458 (M.D. Fla. Dec. 28. 2011) ..................................................................... 8

*Gross v. Symantec Corp.*,
  2012 WL 3116158 (N.D. Cal. July 31, 2012) ...................................................................... 4

*Gulati v. Countrywide Home Loans, Inc.*,
  2006 WL 6300891 (M.D. Fla. Feb. 17, 2006) ................................................................... 26

*PLAINTIFFS' AMENDED OPPOSITION TO WELLS FARGO'S MOTION (A) TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT AND (B) TO DISMISS OR STRIKE PLAINTIFFS' JURY DEMAND, CASE NO. CV-12-01376 EMC*

*Hofstetter v. JPMorgan Chase Bank, N.A.*,
   751 F. Supp. 2d 1116 (N.D. Cal. 2010) ....................................................................... passim

*In re Bank of New York Mellon Corp. False Claims Act Foreign Exch. Litig.*,
   851 F. Supp. 2d 1190 (N.D. Cal. 2012) .......................................................................... 14

*In re Countrywide Fin. Corp. Mortg. Marketing and Sales Practices Litig.*,
   2011 WL 4809881 (S.D. Cal. Oct. 11, 2011) .................................................................. 4

*Jefferson v. Chase Home Fin.*,
   2008 WL 1883484 (N.D. Cal. Apr. 29, 2008) ................................................................ 24

*Jensen v. Quality Loan Serv. Corp.*,
   702 F. Supp. 2d 1183 (E.D. Cal. 2010) .................................................................... 21, 22

*Kilgore v. KeyBank, N.A.*,
   712 F. Supp. 2d 939 (N.D. Cal. 2010) ........................................................................... 20

*Kunzelmann v. Wells Fargo Bank, N.A.*,
   2012 WL 2003337 (S.D. Fla. June 4, 2012) ...................................................... 2, 23, 24, 25

*Lass v. Bank of America*,
   2011 WL 3567280 (D. Mass. 2011) ................................................................................ 6

*McNeary-Calloway v. JPMorgan Chase Bank, N.A.*,
   2012 WL 1029502 (N.D. Cal. Mar. 26, 2012) ......................................................... passim

*Morris v. Wells Fargo Bank, N.A.*,
   2012 WL 392805 (W.D. Pa. Sep. 7, 2012) ............................................................. passim

*Parkinson v. Hyundai Motor Am.*,
   258 F.R.D. 580 (C.D. Cal. 2008) .................................................................................... 4

*Pinel v. Aurora Loan Servs., LLC*,
   814 F. Supp. 2d 930 (N.D. Cal. 2011) .......................................................................... 12

*Rawlings v. Dovenmuehle Mortg., Inc.*,
   64 F. Supp. 2d 1156 (M.D. Ala. 1999) .......................................................................... 21

*Sajfr v. BBG Commc'ns, Inc.*,
   2012 WL 398991 (S.D. Cal. Jan.10, 2012) ..................................................................... 4

*Shein v. Canon U.S.A., Inc.*,
   2009 WL 1774287 (C.D. Cal. June 22, 2009) ............................................................... 14

*Shibata v. Lim*,
   133 F. Supp. 2d 1311 (M.D. Fla. 2000) .......................................................................... 8

*Skansgaard v. Bank of America, N.A*,
   2011 WL 9169945 (W.D. Wash. Oct. 13, 2011) ............................................................ 2

*Temple Univ. Hosp., Inc. v. Group Health, Inc.*,
   2006 WL 146426 (E.D. Pa. Jan. 12, 2006) ..................................................................... 9

*Travis v. Boulevard Bank, N.A.,*
  880 F. Supp. 1226 (N.D. Ill. 1995) ................................................................. 17, 18, 19

*Vician v. Wells Fargo Home Mortg.,*
  2006 WL 694740 (N.D. Ind. Mar. 16, 2006) ................................................................. 15

*Walls v. JPMorgan Chase Bank, N.A.*
  2012 WL 309660 (W.D. Ky. July 30, 2012) ................................................................. 2

*Williams v. Wells Fargo.,*
  2011 WL 4901346 (S.D. Fla. Oct 14, 2011) ................................................................. passim

*Wulf v. Bank of Am.,*
  798 F. Supp. 2d 586 (W.D. Pa. 2011) ................................................................. passim

**California State Cases**

*Barquis v. Merchants Collection Ass'n,*
  7 Cal. 3d 94 (1972) ................................................................. 19, 20

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*
  20 Cal.4th 163 (1999) ................................................................. 19

*Clothesrigger, Inc. v. GTE Corp.,*
  191 Cal. App. 3d 605 (1987) ................................................................. 3

*Hirsch v. Bank of Am.,*
  107 Cal. App. 4th 708 (2003) ................................................................. 11

*Kasky v. Nike,*
  27 Cal. 4th 939 (2002) ................................................................. 19

*Knox v. Dean,*
  205 Cal. App. 4th 417 (2012) ................................................................. 14

*Kovich v. Paseo Del Mar Homeowners' Ass'n,*
  41 Cal. App. 4th 863 (1996) ................................................................. 14

*Mendoza v. Continental Sales Co.,*
  140 Cal. App. 4th 1395 (2006) ................................................................. 12

*Peterson v. Cellco P'ship,*
  164 Cal. App. 4th 1583 (2008) ................................................................. 11

*Rubin v. Green,*
  4 Cal. 4th 1187 (1993) ................................................................. 19

*Vai v. Bank of Am.,*
  56 Cal.2d 329 (1961) ................................................................. 14

*Wershba v. Apple Comp., Inc.,*
  91 Cal. App. 4th 224 (2001) ................................................................. 4

**Florida State Cases**

*Capital Bank v. MVB, Inc.,*
  644 So.2d 515 (Fla. 3d Dist. Ct. App. 1994) ................................................................. 14

*Cox v. CSX Intermodal, Inc.,*

v

732 So.2d 1092 (Fla. 1st Dist. Ct. App. 1999) ...................................................................8

*Gracey v. Eaker,*
837 So.2d 348 (Fla. 2002) ..............................................................................................14

*Hillman Const. Corp. v. Wainer,*
636 So.2d 576 (Fla. 4th Dist. App. 1994) ......................................................................11

*J.J. Gumberg Co. v. Janis Servs., Inc.,*
847 So.2d 1048 (Fla. 4th Dist. Ct. App. 2003) ...............................................................5

*Jenne v. Church & Tower, Inc.,*
814 So.2d 522 (Fla. 4th Dist. Ct. App. 2002) .................................................................6

*Senfeld v. Bank of Nova Scotia Trust Co.,*
450 So.2d 1157 (Fla. 3d Dist. App. 1984) ....................................................................13

*Winter Garden Citrus Growers' Ass'n v. Willits,*
151 So. 509 (Fla. 1934)...................................................................................................5

**Other State Cases**
*Am. Bankers Ins. Co. of Fla. v. Alexander,*
818 So.2d 1073 (Miss. 2001) .........................................................................................15

*Lowery v. Guar. Bank and Trust Co.,*
592 So.2d 79 (Miss. 1991) .............................................................................................14

**Federal Statutes**
12 U.S.C. § 25b.........................................................................................................24, 25

12 U.S.C. § 2601.............................................................................................................21

12 U.S.C. § 2607.............................................................................................................21

15 U.S.C. § 1601.......................................................................................................15, 19

15 U.S.C. § 1639.............................................................................................................16

15 U.S.C. § 1639b...........................................................................................................16

42 U.S.C. § 4012a.............................................................................................................8

**California Statutes**
Cal. Bus. & Prof. Code § 17200 ....................................................................................19

**Rules and Regulations**
12 C.F.R. § 226.17 ..........................................................................................................16

12 C.F.R. § 226.18 ..........................................................................................................17

12 C.F.R. § 226.4 ......................................................................................................17, 18

12 C.F.R. § 34.4 ..............................................................................................................25

12 C.F.R. § 7.4002 ..........................................................................................................25

24 C.F.R. § 3500.2 .............................................................................................................................22

Fed. R. Civ. P. 8 ..........................................................................................................................2, 12

Restatement, Restitution, § 1 ..........................................................................................................11

*PLAINTIFFS' AMENDED OPPOSITION TO WELLS FARGO'S MOTION (A) TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT AND (B) TO DISMISS OR STRIKE PLAINTIFFS' JURY DEMAND, CASE NO. CV-12-01376 EMC*

## I.   __INTRODUCTION__

Wells Fargo Bank, N.A. is Plaintiffs' mortgage servicer. It entered into a collusive arrangement with Assurant, Inc. and its subsidiaries to reap substantial profits at the expense of consumers. Under this agreement, Wells Fargo Bank, N.A. ("Wells Fargo") agreed to purchase every force-placed insurance policy for every mortgage it serviced from Assurant, Inc. ("Assurant") and its subsidiaries. FAC ¶¶ 3, 48. In exchange, Assurant agreed to pay a "commission" to Wells Fargo despite the fact that Wells Fargo did nothing to earn this commission. FAC ¶ 3. Wells Fargo then required borrowers to maintain "replacement cost value" flood insurance coverage regardless of the borrower's loan balance. FAC ¶ 7. If a borrower refused to purchase the demanded insurance, Wells Fargo force-placed insurance on their property. FAC ¶ 7. Wells Fargo's excessive insurance requirements increased the quantity of force-placed policies and the number, and amount of, commissions it received. FAC ¶ 52. These actions breached Plaintiffs' and class members mortgage contracts and the covenant of good faith and fair dealing, violated federal statutes, and trampled Plaintiffs' rights under California's common law and equitable principles.

Wells Fargo Bank's motion to dismiss rehashes numerous arguments that it and other loan servicers have raised and lost in cases with very similar facts. *Abels v. JPMorgan Chaase Bank, N.A.*, 678 F. Supp. 2d 1273 (S.D. Fla. 2009), was the first court to address these issues, and the court rejected similar defenses. Since then, the vast majority of federal district courts addressing claims involving the same facts alleged here have upheld such claims. Wells Fargo relies heavily on two Massachusetts District Court decisions that dismissed similar claims. However, the First Circuit Court of Appeals recently vacated both of these decisions and reinstated all claims in the first appellate decisions addressing claims about mortgage servicers' collusive schemes with force-placed insurers. *Lass v. Bank of America*, 2012 WL 4240504 (1st Cir. Sep. 21, 2012); *Kolbe v. Bank of*

1

*America*, 2012 WL 4240298 (1st Cir. Sep. 21, 2012).

Two years ago, Judge Alsup of this District denied a motion to dismiss similar claims in *Hofstetter v. JPMorgan Chase Bank, N.A.*, 751 F. Supp. 2d 1116 (N.D. Cal. 2010). Judge Spero, also from this District, refused to dismiss similar claims in *McNeary-Calloway v. JPMorgan Chase Bank, N.A.*, 2012 WL 1029502 (N.D. Cal. Mar. 26, 2012). Judge Mendez of the Eastern District of California ruled likewise. *Gooden v. Suntrust Mortgage*, 2012 WL 996513 (E.D. Cal. Mar. 23, 2012). Courts across the country have followed suit.[1] In *Williams v. Wells Fargo.*, 2011 WL 4901346 (S.D. Fla. Oct 14, 2011), the Court certified a class based on similar claims after denying Wells Fargo's motion to dismiss. This Court should follow the overwhelming trend of federal courts in this District and throughout the country and deny Wells Fargo's Motion to Dismiss in its entirety. If the Court grants the motion in whole or in part, Plaintiffs request leave to amend their Complaint.

## II.   <u>LEGAL ARGUMENT</u>

### A.   <u>Preliminary Legal Issues</u>

#### 1.   **Legal Standard**

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957). "Generally, a plaintiffs' burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that '[a] pleading which sets for a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief.'" *McNeary-Calloway*, *supra*, at *15 (citing Fed. R. Civ. P. 8(a)). This standard "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The

---

[1] *See, e.g.*, *Gordon v. Chase Home Fin., LLC, et al.*, 2012 WL 750608 (M.D. Fla. Mar. 7, 2012); *Wulf v. Bank of Am.*, 798 F. Supp. 2d 586 (W.D. Pa. 2011); *Walls v. JPMorgan Chase Bank, N.A., et al.*, 2012 WL 309660 (W.D. Ky. July 30, 2012); *Morris v. Wells Fargo Bank, N.A.*, 2012 WL 392805 (W.D. Pa. Sep. 7, 2012); *Kunzelman v. Wells Fargo Bank, N.A.*, 2012 WL 2003337 (S.D. Fla. June 4, 2012); *Skansgaard v. Bank of America, N.A., et al.*, 2011 WL 9169945 (W.D. Wash. Oct. 13, 2011); *Arnett v. Bank of America, N.A., et al.*, 2012 WL 2848425 (D. Or. Jul 11, 2012).

Court must view the complaint in the light most favorable to the Plaintiff. *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1994). The plaintiff must merely plead sufficient facts to "nudge [the] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### 2.    Applicable Law

Plaintiffs' mortgage contains a forum selection clause stating that "[t]his Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located." Mortgage ¶ 16. For this reason, Plaintiffs' breach of contract and the implied covenant of good faith and fair dealing claims are subject to Florida law. Plaintiffs' other state-law claims—unjust enrichment, conversion, and breach of fiduciary duty—are not subject to the forum selection clause in their mortgage. Thus, Plaintiffs raise these claims under the laws of California.

The choice of law clause in Plaintiffs' mortgage does not apply to Plaintiffs' common law tort and equitable claims. The choice-of-law provision in Plaintiffs' mortgage specifically applies only to "[t]his Security Instrument." Mortgage ¶ 16. "A choice of law provision that relates only to the agreement will not encompass related tort claims." *Cooper v. Meridian Yachts, Ltd.*, 575 F. 3d 1151, 1162 (11th Cir. 2009). As such, the choice-of-law provision applies only to Plaintiffs' contract based claims. Plaintiffs may bring their state law claims under California law.

California "may constitutionally exercise jurisdiction over the claims of nonresident plaintiffs in a nationwide class action case" as long as California has "significant contact or aggregation of contacts to the claims asserted by each member of the plaintiff class . . . to ensure that the choice of forum law is not arbitrary or unfair." *Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605, 612–613 (1987)(quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821–22 (1985)). "[A] California court may properly apply California laws to non-California members of a nationwide class where the defendant is a California corporation and some or all of the challenged conduct emanates from

California." *Wershba v. Apple Comp., Inc.*, 91 Cal. App. 4th 224, 243 (2001). Non-residents are barred from bringing suit under California law only where the alleged misconduct "simply has no connection to California." *Gross v. Symantec Corp.*, 2012 WL 3116158, *6 (N.D. Cal. July 31, 2012)(quoting *Sajfr v. BBG Commc'ns, Inc.*, 2012 WL 398991, at *4 (S.D. Cal. Jan.10, 2012).

Wells Fargo maintains its principal office in San Francisco, California. FAC ¶¶ 14, 17. It is reasonable to infer that each act predicating Plaintiffs' claims originated in California. As such, Defendants' business practices are subject to the laws of the State of California. Additionally, Plaintiffs have raised national and state law class action allegations, including claims on behalf of California residents. *See*, *e.g.*, FAC ¶ 74. In *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580 (C.D. Cal. 2008), the Court allowed a nonresident plaintiff to bring California UCL claims because the "defendant's relevant operations, including its headquarters . . . are located in California." *Id.* Additionally, "many of the alleged wrongful acts emanated from the defendant's . . . offices in . . . California." *Id.* at 598; *see also*, *In re Countrywide Fin. Corp. Mortg. Marketing and Sales Practices Litig.*, 2011 WL 4809881, at *3 (S.D. Cal. Oct. 11, 2011)(denying summary judgment because defendants failed to show that "*all* of the conduct at issue in this case occurred outside California.")(emphasis added). The *In re Countrwide* court noted that "Defendants focus on conduct specific to the [plaintiffs'] loan, but do not address Plaintiffs' broader allegations concerning Defendants' alleged scheme." This case is very similar. Defendants do not aver that their collusive dealing arrangements and decisions regarding required insurance amounts occurred outside the state of California, but instead argue that Florida law should apply. Wells Fargo's argument ignores the fact that a substantial amount of the wrongful conduct alleged occurred in California and a substantial number of class members reside and, and were injured in, California.

**B.     Wells Fargo, Acting as Servicer for Fannie Mae, Breached Plaintiffs' Mortgage**

### 1.      Wells Fargo Breached the Express Terms of Plaintiffs' Mortgage

Wells Fargo's actions pursuant to Section 5 of Plaintiffs' mortgage constitute a breach of the mortgage contract.[2] Plaintiffs' mortgage provides that "Borrower shall keep the improvements now existing or hereafter erected on the property insured against loss by . . . floods . . . in the amounts . . . and for the periods that Lender requires." Mortgage ¶ 5. The mortgage also states that "[i]f Borrower fails to maintain . . . coverage . . . Lender may obtain insurance coverage, at Lender's option and Borrower's expense" and that "such coverage shall cover Lender." The mortgage warns that "the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained." *Id.*   Wells Fargo breached Plaintiffs' mortgage when it (1) charged Plaintiffs for high-cost force-placed insurance in amounts greater than that necessary to "cover" Wells Fargo or Fannie Mae's interests; (2) charged Plaintiffs for the "cost" of force-placed insurance when a portion of this "cost" was returned to Wells Fargo as a kickback; and (3) charged Plaintiffs for backdated force-placed insurance. FAC ¶¶ 89–93.

To state a claim for breach of contract, the plaintiff must allege: "(1) a valid contract; (2) a material breach; and (3) damages." *J.J. Gumberg Co. v. Janis Servs., Inc.,* 847 So.2d 1048, 1049 (Fla. 4th Dist. Ct. App. 2003).[3] "As long established by the Florida Supreme Court, 'What will constitute a breach of contract is a matter of law to be determined by the court. Whether or not that has occurred which would constitute a breach of contract is a matter of fact to be determined by a jury.'" *Action Nissan, Inc. v. Hyundai Motor Am.,* 617 F. Supp. 2d 1177, 1195 (M.D. Fla. 2008)(quoting *Winter Garden Citrus Growers' Ass'n v. Willits,* 151 So. 509, 511 (1934)). In determining what constitutes a breach, "[t]he language used in a contract is the best evidence of the intent and meaning of the

---

[2] Plaintiffs believe that their contract is actually with Fannie Mae. However, to the extent that Plaintiffs and Wells Fargo have a contractual relationship, Plaintiffs allege that Wells Fargo breached the mortgage contract. FAC ¶¶ 86–87.

[3] Plaintiffs' breach of contract and the implied covenant of good faith and fair dealing claims are subject to the forum selection clause in their mortgage and thus arise under Florida law.

parties." *Jenne v. Church & Tower, Inc.*, 814 So.2d 522, 524 (Fla. 4th Dist. Ct. App. 2002).

Wells Fargo incorrectly argues that the mortgage contract unambiguously grants it unfettered discretion to change flood insurance requirements at its every whim. *See* Mot. to Dismiss 9. Wells Fargo's argument relies on the District of Massachusetts decision in *Lass v. Bank of America*, 2011 WL 3567280 (D. Mass. 2011), which has been vacated. *Lass* involved claims against Bank of America arising out of the same Fannie Mae mortgage contract language at issue here. The United States Court of Appeals for the First Circuit reversed the District Court decision and reinstated all claims, including breach of contract and the covenant of good faith and fair dealing, unjust enrichment, and breach of fiduciary duty. *Lass*, 2012 WL 4240504. Construing identical Fannie Mae mortgage language, the Court held that the mortgage did not unambiguously give the bank discretion to change flood insurance requirements especially when considering the flood insurance notification that accompanied the mortgage at closing. *Id.* at *4.

Plaintiffs' mortgage does not authorize Wells Fargo to charge borrowers excessive costs for force-placed insurance that include kickbacks returned to Wells Fargo. Plaintiffs' mortgage states that "the cost of [force-placed insurance] . . . might significantly exceed the cost of insurance that the borrower could have obtained." Mortgage ¶ 5. However, a portion of the "cost" that Wells Fargo charged for force-placed insurance was returned to Wells Fargo or its affiliates pursuant to secret agreements. FAC ¶ 90. Kickbacks are not "costs." Plaintiffs' mortgage contains no reference to commissions paid to Wells Fargo or its affiliates. "Nothing in the contract necessarily authorizes charges regardless of amount and regardless of whether Defendants receive a portion of the premiums." *McNeary-Calloway*, *supra*, at *23.[4] This is especially true when the force-placed insurance scheme is prearranged and the bank does nothing to earn the so-called "commissions."

---

[4] *McNeary-Calloway* is a case alleging similar claims based on force-placed hazard insurance. The contract language at issue is the nearly identical to the language in the Cannon's mortgage.

Although Plaintiffs' mortgage requires flood insurance "in the amounts . . . and for the periods that Lender requires," the mortgage does not give Wells Fargo unlimited discretion. Plaintiffs' mortgage states that any force-placed flood insurance "shall cover Lender" and that "Lender may do and pay for whatever is *reasonable and appropriate* to protect Lender's interest in the Property." Mortgage ¶¶ 5, 9. "A force-placed policy allows the lender to protect its exposure on a property." *Williams v. Certain Underwriters at Lloyd's of London*, 398 F. App'x 44, 45 (5th Cir. 2010). Insurance equal to the outstanding loan balance is the amount necessary to "cover Lender" and "to protect the Lender's interest in the property." Anything more is unreasonable and inappropriate.

Plaintiffs received a "Notice of Special Flood Hazard" (NSFH) at closing, which specified that "[a]t a minimum, flood insurance purchased must cover the lesser of: 1. The outstanding principal balance of the loan; or 2. The maximum amount of coverage allowed for the type of property under the NFIP." *See* NSFH.[5] The NSFH also states two separate times that "[t]he flood insurance must be maintained for the life of the loan." Construing language identical to that in Plaintiffs' NSFH, the United States First Circuit Court of Appeals in *Lass* held that:

> Paragraph 5 of the mortgage gives the Lender discretion to fix the amount of flood insurance, and the Notification was an essential part of the transaction because it represented the exercise of that discretion at the outset of the mortgage period. In effect, the Notification completed the contract between the parties by specifying that . . . Lass was obliged to obtain the amount of flood insurance required by federal law, and no more.

*Lass*, *supra*, at *4.[6] "[T]he Notification does not identify the specified amount as merely a mandatory minimum, and it says nothing about the lender's discretion to change the insurance amount at any point." *Id.* at *5. The First Circuit rejected the argument that replacement value coverage is

---

[5] Wells Fargo requested the Court take judicial notice of this document as Plaintiffs discussed its contents in the FAC. *See* Doc. No. 58, Exhibit I. Plaintiffs did not object to this Request and thus refer to the document here. *See* Doc. No. 65.

[6] The Lass plaintiff's situation is similar to the Cannons' in this case. The mortgage was originated by a different bank, and then the defendant bank subsequently acquired the mortgage and changed the plaintiff's flood insurance requirements to an amount exceeding outstanding loan balance, when loan balance coverage was sufficient before.

authorized because various federal agencies *recommend* such coverage, stating that that "the NFIA appears to have incorporated the view that it also would be reasonable for mortgagees to require only an amount 'equal to the outstanding principal balance of the loan.'" *Id.* at \*5 (citing 42 U.S.C. § 4012a(b)(1); *see also*, *Hofstetter*, 751 F. Supp. 2d at 1127 n.3 ("Simply because an agency recommends that lenders maintain a certain amount of flood insurance coverage does not mean that lenders have *carte blanche* to do so without regard to the terms of their loan agreements with borrowers.") This Court should do the same.

### 2. Wells Fargo Breached the Implied Covenant of Good Faith and Fair Dealing.

The implied covenant is part of every contract and it attaches to the performance of the contract's express terms. *Centurion Air Cargo v. UPS Co.*, 420 F.3d 1146, 1151 (11th Cir. 2005). The purpose of the implied covenant is "to protect the contracting parties' reasonable expectations." *Cox v. CSX Intermodal, Inc.*, 732 So.2d 1092, 1097 (Fla. 1st Dist. Ct. App. 1999). "[W]here the terms of the contract afford a party substantial discretion to promote that party's self-interest, the duty to act in good faith . . . limits that party's ability to act capriciously to contravene the reasonable expectations of the other party." *Id.* at 1098. One party cannot act capriciously in a way that harms the other party. *Cibran v. BP Prods. of N. Am., Inc.*, 375 F. Supp. 2d 1355, 1360 (S.D. Fla. 2005).

Plaintiffs' mortgage gives Wells Fargo discretion to force-place flood insurance to "cover" its own interests. The mortgage does not authorize self-dealing. *See Cox*, 732 So.2d at 1098. Because the contract is silent regarding the bounds of Wells Fargo's discretion, the covenant of good faith and fair dealing is used as a "gap-filling" tool. *See Green v. FedEx Nat'l, LTL, Inc.*, 2011 WL 6813458, at \*5 (M.D. Fla. Dec. 28. 2011). The implied covenant applies when "conduct is undertaken pursuant to a grant of discretion and the scope of that discretion has not been designated." *Id.* (quoting *Shibata v. Lim*, 133 F. Supp. 2d 1311, 1318 (M.D. Fla. 2000)).

Wells Fargo acted capriciously and in bad faith when it exercised its discretion under Plaintiffs' mortgage. Although Section 5 permits Wells Fargo to force-place flood insurance, the mortgage does not permit Wells Fargo to act capriciously, thereby harming Plaintiffs and Class Members. FAC ¶¶ 98–99. Wells Fargo engaged in self-dealing and profiteering, whereby, pursuant to a secret contract with ASIC, it charged borrowers for "costs" that were later returned to Wells Fargo as a kickback. FAC ¶ 96–97. Due to the exclusive contract with ASIC, Wells Fargo performed no services to earn this so-called "commission." FAC ¶ 97. Nowhere does Plaintiffs' mortgage disclose that Wells Fargo will reap a profit by procuring force-placed flood insurance pursuant to its contractual arrangements with ASIC. *See* Mortgage ¶ 5. No reasonable borrower would expect that the "cost" would be up to ten times more expensive due to Wells Fargo's self-dealing.

Wells Fargo further breached the implied covenant of good faith and fair dealing when it required that Plaintiffs and Class Members carry excessive flood insurance. FAC ¶ 96–97. Plaintiffs' mortgage states that force-placed insurance will "cover Lender." Mortgage ¶ 5. Wells Fargo's interest in any particular mortgage is limited to the outstanding loan balance. Thus, flood insurance equal to outstanding loan balance will "cover" Wells Fargo's interests. In fact, the NSFH attached to Plaintiffs' mortgage stated that coverage equal to outstanding loan balance is sufficient under the mortgage. *See* NSFH. Wells Fargo acted unreasonably and in contravention of Plaintiffs' reasonable expectations when it force-placed flood insurance in amount far exceeding outstanding loan balance.

Abuse of power to specify terms in a contract is an exercise of bad faith that violates the duty of good faith. *Temple Univ. Hosp., Inc. v. Group Health, Inc.*, 2006 WL 146426, at *5 (E.D. Pa. Jan. 12, 2006). "Undisclosed, inflated charges . . . may be an abuse of power to specify terms." *Id.* "A borrower of money, especially the owner of a residential property mortgaged to a lending institution, may reasonably expect that he or she will receive fair and above-board treatment in their dealings and

that no undue advantage will be taken by the lender." *In re Smith*, 866 F.2d 576, 584 (3d Cir. 1989). "[I]mposing additional and unnecessary costs and expenses" on a borrower is an "unfair" practice that violates the duty of good faith and fair dealing. *Id.* at 584–85.

Several courts have recently refused to dismiss breach of implied covenant of good faith and fair dealing claims based on the same issued pled here. *See Williams*, *supra* ("Plaintiffs' allegations that Wells Fargo Bank . . . acted in bad faith in contravention of Plaintiffs' reasonable expectations under those contracts sufficiently allege a claim for breach of the implied covenant"); *Abels*, 678 F. Supp. 2d 1273 ("the failure to perform a discretionary act in good faith may be a breach of the implied covenant of good faith and fair dealing"); *Hofstetter*, 751 F. Supp. 2d at 1127 (holding that nearly identical mortgage language did not give unlimited discretion to demand more insurance than was necessary to protect the lender's interests). Just this year, Judge Spero of this District, in *McNeary-Calloway*, *supra*, held that "the implied covenant governs Defendants' discretion in force-placing insurance" because the authority to force-place insurance with "unreasonably high premiums in order to facilitate kickbacks" was "not expressly bargained for in the contract." *Id.* at 24–25.

On September 21, 2012, the United States Court of Appeals for the First Circuit addressed claims similar to those pled here and reversed the dismissal of two separate actions related to Bank of America's force-placed insurance scheme. *See Lass*, *supra*; *Kolbe*, *supra*. The *Lass* Court addressed a Fannie Mae mortgage and held that "[e]vidence that the defendant acted to gain an advantage for itself can support a claim for breach of the implied covenant." *Lass*, *supra*, at *6; *see also*, *Kolbe*, *supra*, at *9 ("a decision to demand additional insurance for the purpose of generating business for its affiliated insurance companies, and thereby increase Bank profits, would reflect the improper motive

10

*PLAINTIFFS' AMENDED OPPOSITION TO WELLS FARGO'S MOTION (A) TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT AND (B) TO DISMISS OR STRIKE PLAINTIFFS' JURY DEMAND, CASE NO. CV-12-01376 EMC*

necessary to demonstrate a breach of the covenant of good faith and fair dealing.")[7]

## C.      Wells Fargo Was Unjustly Enriched at Plaintiffs' Expense

Wells Fargo was unjustly enriched when it earned a hidden profit through its force-placed insurance schemes. Wells Fargo and Assurant devised a scheme whereby Assurant charged excessive premiums, and then paid "commissions" to Wells Fargo. FAC ¶ 102. Wells Fargo and its affiliates received a benefit in the form of kickbacks from the excessive and unreasonable insurance premiums. It would be unjust to allow Wells Fargo to retain these hidden profits. FAC ¶ 107.

"The elements of an unjust enrichment claim are the receipt of a benefit and [the] unjust retention of the benefit at the expense of another. *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 (2008). "A person is enriched if he or she receives a benefit at another's expense. The term "benefit" connotes *any* type of advantage." *Hirsch v. Bank of Am.*, 107 Cal. App. 4th 708, 721–22, (2003)(quoting Restatement, Restitution, § 1, cmt. a–b, p. 12.[8] Plaintiffs and class members conferred a benefit on Wells Fargo when they paid for the kickbacks returned to Wells Fargo. FAC ¶ 102. Wells Fargo should be required to return the unearned kickbacks.

Wells Fargo incorrectly argues that Plaintiffs' unjust enrichment claim is barred because an express contract governs the issues in this case. *See* Wells Fargo's Mot. to Dismiss 19. At this juncture, Plaintiffs are unsure whether they even have a contractual relationship with Wells Fargo. FAC ¶ 101.  Plaintiffs agree that a claim for unjust enrichment "does not lie when an enforceable, binding agreement exists defining the rights of the parties." *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.,* 96 F.3d 1151, 1167 (9th Cir. 1996). However, an unjust enrichment claim is only precluded by

---

[7] The *Kolbe* court refers to improper motive as an element of an implied covenant of good faith and fair dealing claim. While improper motive is not required under Florida law, *Kolbe* underscores the fact that the lower threshold under Florida law is easily met.

[8] Florida law is nearly identical to California law for unjust enrichment claims. *See Hillman Const. Corp. v. Wainer*, 636 So.2d 576, 577 (Fla. 4th Dist. App. 1994). Thus, Plaintiffs' unjust enrichment claim is the same under Florida law.

the existence of an express contract if the parties' rights "are squarely set out in the [contract]." *Id.* Plaintiffs "never borrowed any money from Wells Fargo, and Wells Fargo represented to Plaintiffs that it was the servicer—not owner—of their mortgage and that Fannie Mae owns Plaintiffs' mortgage contract." FAC ¶ 101. This allegation clearly raises the issue that no contract may exist that governs Wells Fargo's actions with respect to force-placed insurance.

Even if Plaintiffs have a contract with Wells Fargo, the mortgage did not authorize Wells Fargo to require excessive flood insurance, to receive kickbacks, or to charge borrowers for such kickbacks. FAC ¶ 101. The First Circuit in *Lass*, addressing identical mortgage language, held that the plaintiff could proceed with an unjust enrichment claim even in light of the mortgage contract because "[t]he mortgage . . . does not explicitly address commissions or, more generally, the Bank's entitlement to profit from its force placement of insurance." *Lass*, *supra*, at *8.[9]

Wells Fargo was unjustly enriched by the portion of the force-placed insurance premiums that Assurant returned to Wells Fargo as kickbacks. FAC ¶ 102. Wells Fargo incorrectly argues that "the Cannons do not allege facts showing that any enrichment is 'unjust.'" Mot. to Dismiss 20. "If the mortgage did not permit the Bank to force place insurance in an amount greater than the amount of [the] loan, the Bank's decision to do so—with attendant benefit to itself—would seem to fit any notion of 'unjust.'" *Lass*, *supra*, at *9. This Court should follow *Lass* and the other federal decisions on this issue and hold likewise. *See also*, *Abels*, 678 F. Supp. 2d 1273; *Williams*, *supra*.

## D.     Wells Fargo Converted Plaintiffs' Property

"Conversion is the wrongful exercise of dominion over the property of another." Mendoza v. Continental Sales Co., 140 Cal. App. 4th 1395, 1404–05 (2006). "The elements of a conversion

---

[9] Rule 8(d)(2) expressly allows alternative pleading. *See* Fed. R. Civ. P. 8(d)(2); *Pinel v. Aurora Loan Servs., LLC*, 814 F. Supp. 2d 930, 944 (N.D. Cal. 2011)("[A]t the pleading stage, a plaintiff is entitled to plead inconsistent causes of action."); *Lass*, *supra*, at *8 ("it is accepted practice to pursue both theories at the pleading stage.")

claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Id.* "[T]he act of conversion itself is tortious. Therefore, questions of the defendant's good faith, lack of knowledge, and motive are ordinarily immaterial." *Id.*[10] Wells Fargo committed the tort of conversion when it improperly exercised control of Plaintiffs' and class members' property by imposing improper kickbacks and charges on borrowers' escrow accounts and collecting those kickbacks.

Wells Fargo incorrectly argues that the Cannons "consented to and authorized Wells Fargo's alleged conduct," and thus their conversion claim cannot lie. *See* Mot. to Dismiss 21. First, Plaintiffs and Wells Fargo may well not even have a contractual relationship. FAC ¶ 111. Second, Plaintiffs did not authorize Wells Fargo's "alleged conduct." At the very most, Plaintiffs' mortgage provides that Wells Fargo may open an escrow account and pay insurance costs from this account. Plaintiffs' mortgage never mentions, much less authorizes, Wells Fargo to enter into secret agreements with Assurant, whereby all force-placed insurance policies are purchased from the same company, at anti-competitive prices, so that Wells Fargo can receive a pre-determined kickback. FAC ¶ 111.

The economic loss doctrine does not preclude Plaintiffs' conversion claim here. "Under California law, the economic loss doctrine bars tort claims based on the same facts and damages as breach of contract claims." *Alvarado Orthopedic Research, L.P. v. Linvatec Corp.*, 2011 WL 3703192 (S.D. Cal. Aug. 23, 2011). "The doctrine precludes recovery for 'purely economic loss due to disappointed expectations,' unless the plaintiff 'can demonstrate harm above and beyond a broken contractual promise." *Id.* (internal citations omitted).[11] This argument fails for the same reasons as

---

[10] Florida law regarding conversion is nearly identical. *See Senfeld v. Bank of Nova Scotia Trust Co.*, 450 So.2d 1157, 1160–61 (Fla. 3d Dist. App. 1984).

[11] The economic loss rule would also not apply under Florida law. "[W]here there is a possibility that the Defendant's actions were outside the scope of the agreement, an action in conversion is not barred by the economic loss doctrine." *Fla. Dept. Ins. v. Debenture Guar.*, 921 F. Supp. 750, 756 (M.D. Fla. 1996).

Wells Fargo's other defense. As stated above, Plaintiffs likely do not have a contractual relationship with Wells Fargo. *See* FAC ¶ 111.  Even if Plaintiffs and Wells Fargo have a contractual relationship, claims regarding Wells Fargo's kickback scheme are not governed by the mortgage, and therefore, are not barred by the economic loss doctrine. *See Shein v. Canon U.S.A., Inc.*, 2009 WL 1774287 (C.D. Cal. June 22, 2009)("at this juncture, dismissal is inappropriate, because plaintiffs' allegations may properly be read as alleging a tortious act separate from any breach of contract claim alleged.")

### E.  <u>Wells Fargo Breached Its Fiduciary Duty to Plaintiffs</u>

Wells Fargo breached its fiduciary duty to Plaintiffs when it force-placed flood insurance at exorbitant costs so that it could receive undisclosed kickbacks. "The elements of a cause of action for breach of fiduciary duty are the existence of a fiduciary relationship, its breach, and damage proximately caused by that breach." *Knox v. Dean*, 205 Cal. App. 4th 417, 432 (2012).[12] "The key factor in the existence of a fiduciary relationship lies in control by a person over the property of another." *In re Bank of New York Mellon Corp. False Claims Act Foreign Exch. Litig.*, 851 F. Supp. 2d 1190, 1200 (N.D. Cal. 2012)(quoting *Vai v. Bank of Am.,* 56 Cal.2d 329, 338 (1961)). While a lender-creditor relationship generally does not give rise to a fiduciary duty, a fiduciary duty may exist "when the lender is in a fiduciary position of trust and not simply a mere lender." *Pension Trust Fund for Operating Eng'rs v. Fed. Ins. Co.*, 307 F.3d 944, 954 (9th Cir. 2002)(citing *Kovich v. Paseo Del Mar Homeowners' Ass'n*, 41 Cal. App. 4th 863, 866 (1996).[13] "The determination of what constitutes a confidential or fiduciary relationship is a question of fact." *Lowery v. Guar. Bank and Trust Co.*, 592 So.2d 79, 85 (Miss. 1991).

---

[12] Florida follows this same approach. *See Gracey v. Eaker*, 837 So.2d 348, 353 (Fla. 2002).

[13] Florida Courts have found fiduciary relationships where "the lender 1) takes on extra services for a customer, 2) receives any greater economic benefit than from a typical transaction, or 3) exercises extensive control," and where "the bank knows or has reason to know that the customer is placing his trust and confidence in the bank and is relying on the bank so to counsel and inform him." *Capital Bank v. MVB, Inc.*, 644 So.2d 515, 519 (Fla. 3d Dist. Ct. App. 1994).

A fiduciary relationship may arise in connection with administration of an escrow account used for force-placed insurance. The Middle District of Florida in *Gordon*, *supra*, denied a motion to dismiss an identical claim, holding that the bank "received a greater economic benefit from the typical mortgage transactions in the form of 'kickbacks.'" *Id.* at *5; *see also*, *Vician v. Wells Fargo Home Mortg.*, 2006 WL 694740 (N.D. Ind. Mar. 16, 2006)(Wells Fargo owed a fiduciary duty to its borrower when it charged "excessive force-placed insurance premiums and finance charges to Plaintiffs' escrow account"); *Am. Bankers Ins. Co. of Fla. v. Alexander*, 818 So.2d 1073, 1085 (Miss. 2001)(bank "owed a fiduciary duty . . . to inform the plaintiffs of the nature of the profit sharing scheme between [the bank and its affiliate]" in a force-placed insurance scenario)(overruled on other grounds). This Court should follow these cases.

Dismissal of Plaintiffs' fiduciary duty claim is inappropriate at this stage of litigation. Defendants required that Plaintiffs open an escrow account to ensure that Plaintiffs' property was insured to the extent necessary to "cover Lender," but charged Plaintiffs for force-placed insurance over the amount necessary to do so. FAC 123–24. Wells Fargo owed a fiduciary duty to Plaintiffs here because it took on extra services (providing force-placed insurance), earned a greater economic profit (kickbacks), and knew that Plaintiffs were the substantially weaker party and likely relied on its assessment of flood insurance requirements. Defendants owed—and violated—this fiduciary duty when they engaged in self-dealing and devising a scheme to receive kickbacks for force-placed insurance without disclosing the nature of this scheme. *See Am. Bankers*, 818 So.2d at 1085.[14]

**F.    Wells Fargo Violated TILA**

The fundamental purpose of the Truth in Lending Act (TILA), 15 U.S.C. §§ 1601, *et seq.*, is to provide borrowers with clear and accurate disclosures of loan terms. *Beach v. Ocwen Fed. Bank*,

---

[14] Wells Fargo also argues that the economic loss doctrine bars Plaintiffs' fiduciary duty claim. Again, Plaintiffs are not even sure that a contract governs their relationship with Wells Fargo and Wells Fargo's kickback scheme is not governed by any express contract anyways.

523 U.S. 410, 412 (1998); 12 C.F.R. § 226.17(c). With respect to residential mortgages, TILA aims "to assure that consumers are offered and receive residential mortgage loans on terms . . . that are understandable and not unfair, deceptive, or abusive." 15 U.S.C. § 1639b(a)(2). "As a remedial statute, TILA must be construed liberally in favor of the consumer." *Bragg v. Bill Heard Chevrolet, Inc.*, 374 F.3d 1060, 1065 (11th Cir. 2004). Additionally, "a creditor may not change the terms of the extension of credit if such changes make the disclosures inaccurate, unless new disclosures are provided . . . ." 15 U.S.C. § 1639(a)(2)(A).

Numerous courts have upheld TILA claims based on excessive and improper flood and hazard insurance claims. The first case of this nature was *Hofstetter*, which certified a national TILA class of HELOC borrowers before the parties reached a settlement. 751 F. Supp. 2d 1116. Since *Hofstetter*, numerous other courts have followed suit in both excess insurance and force-placed insurance cases. *See, e.g.*, *Wulf*, 798 F. Supp. 2d 586; *Gooden*, *supra*; *Morris*, *supra*. This Court should do the same.

Wells Fargo violated TILA when it (1) failed to clearly, fully, and accurately disclose its flood insurance requirements in its mortgages; (2) failed to correct the disclosures contained in Plaintiffs' mortgage when the prior disclosures clearly differ from Wells Fargo's requirements; and (3) failed to disclose the nature and amount of the kickback that it would receive for the purchase of force-placed flood insurance. FAC ¶ 126–37. Plaintiffs' mortgage and the attached NSFH require flood insurance equal to the borrower's outstanding loan balance. *See* Mortgage ¶ 5; NSFH. As the First Circuit held in *Lass*, *supra*, the NSFH specified that Plaintiffs were "obliged to obtain the amount of flood insurance required by federal law, and no more." *Id.* at *4. The NSFH is clearly inaccurate in light of Wells Fargo's requirement that borrowers maintain flood insurance equal to replacement cost value. FAC ¶ 129. Wells Fargo never corrected these inaccurate disclosures. FAC ¶ 132.

Lenders must "provide material disclosures to borrowers, including the finance charges

associated with the loan." *Wulf*, 798 F. Supp. 2d 586; *see also*, 12 C.F.R. §§ 226.4, 226.18. "Premiums or other charges for insurance against loss of or damage to property . . . written in connection with a credit transaction" are considered part of the finance charge that must be disclosed. 12 C.F.R. § 226.4(b)(8). Wells Fargo incorrectly argues that "TILA does not require any disclosure regarding insurance that the borrower may or must buy on his own." Mot. to Dismiss 23. "[S]everal courts have concluded that a charge for insurance not authorized by the loan documentation constitutes a finance charge and requires disclosure." *Wulf*, 798 F. Supp. 2d at 598–99 (citing *Hofstetter*, 751 F. Supp. 2d 1116; *Travis v. Boulevard Bank, N.A.*, 880 F. Supp. 1226 (N.D. Ill. 1995); *Bermudez v. First Am. Bank Champion, N.A.*, 860 F. Supp. 580 (N.D. Ill. 1994)). Just last month, the Western District of Pennsylvania followed this line of cases and denied a motion to dismiss similar TILA claims. *Morris*, *supra* at *14.

Although TILA "does not apply to insurance purchased from a third party insurer . . . , TILA does apply to insurance allegedly force placed on Plaintiff's property." *Gooden*, *supra*, at *4. "The law treats force placed insurance coverage that exceeds that required in the loan agreement differently." *Id.* at *5. The Western District of Pennsylvania described the situation as follows:

> In that event, the insurance is no longer exempt from disclosure as part of the finance charge under 12 C.F.R. § 226.4(d)(2)(i) and must be disclosed in accordance with 12 C.F.R. § 226.4(d)(2)(ii). In turn, the finance charge has changed, as has the total amount of indebtedness where the mortgagor is charged for the insurance under the purported terms of the mortgage. New and additional credit is extended with the premium is charged to the mortgagor. It is this change of events that constitutes a "new" transaction under the TILA, *see* 12 C.F.R. § 226.18 . . . , and requires new disclosures to account for the new finance charge . . . , the amount financed . . . , and the new insurance requirements.

*Morris*, *supra*. Allegations that a "Defendant force placed unauthorized . . . insurance on Plaintiff's property, exceeding the amount required by the loan agreement and which required accurate and meaningful disclosures as well as changes to the policy's requirements . . . entitle Plaintiff to relief

under TILA." *Gooden*, *supra* (citing *Hofstetter*, 751 F. Supp. 2d at 1126–27).

Wells Fargo changed the terms of Plaintiffs' loan, thus creating a new loan obligation, when it added force-placed insurance premiums to Plaintiffs' outstanding loan balance. FAC ¶ 132; *see also*, *Morris*, *supra*. "[F]orce-placed coverage that exceeds the coverage required by the NFIA and mortgage agreement 'is an impermissible change of terms in violation of TILA.'" *Gooden*, *supra*, at *7 (internal citation omitted). In *Hofstetter*, the Northern District of California held that the defendant violated TILA by changing the terms of borrowers' loans when it increased its flood insurance requirements several years after consummation of the plaintiffs' loans without providing new disclosures. 751 F. Supp. 2d at 1128; *see also*, *Morris*, *supra* (following *Hofstetter*). "The sound reasoning in *Travis* and its progeny recognize as much and compel the denial of [Wells Fargo's] motion to dismiss plaintiff's TILA count." *Morris*, *supra*. This Court should do the same.

Wells Fargo cannot rely on the original flood notice attached to Plaintiffs' mortgage to satisfy TILA's disclosure requirement. "TILA prohibits not only failures to disclose, but also false or misleading disclosures." *Rossman v. Fleet Bank, N.A.*, 280 F.3d 384, 393 (3d Cir. 2002). In *Hofstetter*, 751 F. Supp. 2d 1116,[15] the Northern District of California, addressing the same mortgage provision at issue here, held that the bank violated TILA by requiring that a borrower maintain flood insurance in excess of outstanding loan balance, because federal law and the mortgage only required loan balance coverage. *Id*. The Eastern District of Pennsylvania held the same in *Wulf*, 798 F. Supp. 2d 586 (citing 12 C.F.R. § 226.4(b)(8)). Both *Hofstetter* and *Wulf* held that TILA required new notices because original notices became misleading due to the banks' new insurance requirements.

Wells Fargo attempts to place blame on Plaintiffs, stating that "[n]o new TILA disclosures are

---

[15] Although *Hofstetter* addressed home equity lines of credit, the distinction is irrelevant. The Eastern District of Pennsylvania in *Wulf*, addressing traditional mortgage loans, held that the court's reasoning applied to all TILA claims. *Wulf*, 798 F.Supp.2d at 599; *see also*, *Gooden*, *supra*, at *4–5; *Morris*, *supra* (disagreeing with the argument that *Hofstetter* is distinguishable because it was based on TILA's provisions governing HELOCs).

18

required when a creditor adds charges to a loan balance as a result of the borrower's default." Mot. to Dismiss 22. The court in *Wulf*, addressing this same argument, held that "it is plausible that the inaccuracy of the original disclosures was caused by Defendants' departure from the mortgage documentation." 798 F. Supp. 2d at 599. The Northern District of Illinois has also rejected this argument, finding that "the post-consummation inaccuracy was 'the result of Defendant's departure from the contract.'" *Travis*, 880 F. Supp. 2d at 1230.

This Court should follow the line of cases addressing this issue and deny Wells Fargo's Motion to Dismiss Plaintiffs' TILA claim. *See*, *e.g.*, *Morris*, *supra*. TILA's underlying purpose is "to assure meaningful disclosure of credit terms," 15 U.S.C. § 1601(a). "As a remedial statute, TILA must be construed liberally in favor of the consumer." *Bragg*, 374 F.3d at 1065.

### G.     Wells Fargo Violated the California Unfair Competition Law

The purpose of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. *Kasky v. Nike,* 27 Cal. 4th 939, 949 (2002). Its main purpose is consumer protection. *Barquis v. Merchants Collection Ass'n*, 7 Cal. 3d 94, 111 (1972). A plaintiff may state a cause of action under the UCL by establishing that a particular business practice is "unlawful" or "unfair." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.* 20 Cal.4th 163, 180 (1999). Wells Fargo's force-placed insurance practices violated the UCL's prohibition of both "unlawful" and "unfair" business acts or practices. This District recently upheld UCL claims alleging identical practices by JPMorgan Chase Bank in *McNeary-Calloway*, *supra*.

Wells Fargo's conduct is unlawful under several federal and state law statutes, as well as common law. FAC ¶ 139. The UCL's "coverage is 'sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law.'" *Rubin v. Green*, 4 Cal.

19

*PLAINTIFFS' AMENDED OPPOSITION TO WELLS FARGO'S MOTION (A) TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT AND (B) TO DISMISS OR STRIKE PLAINTIFFS' JURY DEMAND, CASE NO. CV-12-01376 EMC*

4th 1187, 1200 (1993)(quoting *Barquis*, 7 Cal. 3d at 113). "[T]o maintain a claim under the UCL based on unlawful conduct, a plaintiff must allege facts sufficient to establish violation of some law." *McNeary-Calloway*, *supra*, at *28. As discussed above, Plaintiffs have stated numerous legal theories under which Wells Fargo may be held liable.

Wells Fargo is also liable under the "unfair" prong of the UCL. The Northern District of California has adopted a three-prong test for determining unfairness under the UCL: "(1) a substantial consumer injury; (2) the injury outweighs any countervailing benefits to consumers or competition; and (3) the injury could reasonably been avoided." *Kilgore v. KeyBank, N.A.,* 712 F. Supp. 2d 939, 951–52 (2010). Fannie Mae's force-placed insurance practices, executed through Wells Fargo, caused substantial injury to consumers and consequently provided virtually no benefit to consumers. The Northern District of California, in *McNeary-Calloway*, addressing a nearly identical UCL claim based on identical practices employed by JPMorgan Chase Bank with respect to force-placed hazard insurance, held that the plaintiffs alleged sufficient facts establishing a substantial injury to consumers that outweighed any perceived utility, because

> Plaintiffs allege that Defendants unfairly force-place exorbitantly priced hazard insurance on their property and backdated the policy despite no damage to the property or claims arising out of the property during the backdated period. This practice was disadvantageous to Plaintiffs and unsupported by any apparent reason other than the fact that Defendants stood to benefit financially from the high-priced backdated policy. Moreover, Defendants arrangement with ASIC resulted in financial gains to Defendants at Plaintiffs' expense, and created incentives for Defendants to seek policies with the highest premiums.

*McNeary-Calloway*, *supra*, at *29. Plaintiffs here allege similar claims. FAC ¶¶ 46–62. The utility, if any, of these business practices is substantially outweighed by the harm caused to borrowers by such conduct. *See McNeary-Calloway*, *supra*. This Court should follow the decision rendered in this same District just this year and deny Wells Fargo's Motion to Dismiss Plaintiffs' UCL claim.

Wells Fargo argues only that Plaintiffs cannot avail themselves of the protection of the

California UCL. *See* Mot. to Dismiss 24. This is incorrect for reasons stated above in Section II(a)(2). Wells Fargo maintains its principal office in San Francisco, California. FAC ¶ 14, 17. Additionally, Plaintiffs have raised national and state law class action allegations, including claims on behalf of California residents. *See*, *e.g.*, FAC ¶ 74. As such, these business practices are subject to the laws of the State of California, including the UCL.

### H.   Wells Fargo Violated RESPA

Wells Fargo violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607(a), when it accepted kickbacks from Assurant in connection with force-placed flood insurance. RESPA is a remedial consumer protection statute and as such is to be construed liberally. *Rawlings v. Dovenmuehle Mortg., Inc.,* 64 F. Supp. 2d 1156, 1165 (M.D. Ala. 1999). "The primary ill that § 2607 is designed to remedy is the potential for 'unnecessarily high settlement charges,' caused by kickbacks, fee-splitting, and other practices that suppress price competition for settlement services." *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1195 (E.D. Cal. 2010)(quoting 12 U.S.C. § 2601 (a)). Wells Fargo and Assurant entered into a secret arrangement, whereby all force-placed insurance policies were purchased for all Wells Fargo borrowers from Assurant, and Assurant paid and Wells Fargo received a kickback equal to a set portion of each premium. This is exactly the type of "unnecessarily high settlement charges" and "practices that suppress price competition" that RESPA seeks to prevent.[16]

RESPA § 2607(a)(2) provides that "[n]o person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed." Settlement services include "any service provided in

---

[16] Plaintiffs acknowledge that no court has allowed RESPA claims for post-origination force-placed insurance schemes. However, in light of the purpose of RESPA, Plaintiffs request that this Court allow the RESPA claim to proceed.

connection with a prospective or actual settlement, including . . . [p]rovision of services involving hazard, flood, or other casualty insurance." 24 C.F.R. § 3500.2. Wells Fargo performed no services in connection with the purchase of Plaintiffs' force-placed flood insurance. FAC ¶ 150. Thus, Wells Fargo violated RESPA when it charged Plaintiffs for force-placed insurance and accepted the so-called commissions from Assurant.

Plaintiffs' RESPA claim is timely because "the date of the occurrence of the violation" is less than one year prior to the filing of the Complaint. "[The] ill occurs, if at all, when the plaintiff pays for the [tainted] service." *Jensen*, 702 F. Supp. 2d at 1195 (quoting *Snow v. First Am. Title Ins., Co.*, 332 F.3d 356, 359–60 (5th Cir. 2003))(alterations in original). Wells Fargo added force-placed insurance premiums to Plaintiffs' mortgage balance beginning in May 2008 and continuing until November 2011. On November 23, 2011, concurrently with the filing of a complaint of foreclosure, Defendants included $7,811.27 as "escrow advances." FAC ¶ 148. Thus, the "date of the occurrence of the violation" is within the one year statute of limitations.

## I.       Plaintiffs Are Entitled to Equitable Relief

Plaintiffs' mistakenly listed "Equitable Relief" as a cause of action in their FAC. Plaintiffs are aware, and agree with Defendants, that equitable relief is not a separate cause of action, but is, instead, a remedy. In looking at the substance of Plaintiffs' FAC, it is clear that Plaintiffs include Equitable Relief at the end of their complaint as a form of remedy for the wrongs alleged in the previous sections of the complaint addressing individual causes of action.

## J.       The Filed Rate Doctrine Is Inapplicable to Plaintiffs' Claims

The filed rate doctrine does not apply to Plaintiffs' claims because Plaintiffs' claims challenge Defendants' manipulation of the force-placed insurance market, not the filed premium rates themselves. Florida's regulation of insurance premiums and the filed rate doctrine do not apply to

22

mortgage servicers' exclusive purchase arrangements and kickback agreements with force-placed insurance providers. "[T]he filed rate doctrine recognizes that where a legislature has established a scheme for utility rate-making, the rights of the rate-payer in regard to the rate he pays are defined by that scheme." *Taffet v. Southern Co.*, 967 F.2d 1483, 1490 (11th Cir. 1992). "[A]ny 'filed rate'—that is, one approved by the governing regulatory agency—is per se reasonable and unassailable in judicial proceedings brought by ratepayers." *Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17, 19 (2d Cir. 1994). In *Abels*, 678 F. Supp. 2d 1273, the Southern District of Florida denied the argument that the filed rate doctrine precluded the plaintiff's claims, reasoning that applying the filed rate doctrine to a bank, which is "not subject to the extensive administrative oversight that insurance companies are[,]" would not serve the twin goals of the filed rate doctrine (preserving the insurance regulator's authority to determine premiums' reasonableness and insuring that insurance companies charge only approved rates). *Id.* at 1277. In sum, the court held:

> Plaintiffs are not complaining that they were charged an excessive insurance rate, *they are complaining that the defendant bank acted unlawfully when it chose this particular insurance company and this particular rate*. Indeed, the Supreme Court has emphasized the limited scope of the filed rate doctrine to preclude damage claims only where there are valid filed rates . . . Accordingly, the filed rate doctrine does not bar Plaintiffs' case.

*Id.* (internal citations and quotations omitted and emphasis added).

More recently, the Southern District of Florida has denied two separate filed rate doctrine defenses brought by Wells Fargo under identical facts. In *Kunzelmann*, *supra*, the Court ruled that "Plaintiff's claims are not barred by the filed rate doctrine because he is not challenging the rates filed by Defendants' insurers. Rather, Plaintiff challenges the manner in which Defendants select insurers, the manipulation of the force-placed insurance process, and the impermissible kickbacks that were included in the premiums." *Id.*; *see also*, *Williams*, *supra*, at *11 n.7 ("Plaintiffs are not merely challenging the imposition of the force-placed premiums or the amounts of those premiums.

---

23

Instead, they challenge the manipulation of the force-placed insurance process in general, the payment arrangement between Wells Fargo Bank and the other Defendants, and Wells Fargo's participation in the overall scheme intended to provide illegal kickbacks and commissions . . . [H]ere, Wells Fargo Bank is alleged to have colluded with other entities in bad faith . . . .")

Plaintiffs do not challenge the rates that ASIC filed with the Office of Insurance Regulation. Plaintiffs instead allege that that these "charges" were inflated because Wells Fargo manipulated the force-placed insurance process so that it could receive an unearned kickback from ASIC for each force-placed policy. As in *Abels*, *Kunzelmann*, and *Williams*, Plaintiffs allege that the bank engaged in self-dealing when it chose an insurer that would provide kickbacks to the detriment of borrowers. Such activity is not protected by the filed rate doctrine. *See Abels*, 678 F. Supp. 2d at 1277–78.[17]

**K.     The National Bank Act Has No Preemptive Effect on Plaintiffs' State Law Claims**

Plaintiffs' state law claims are not preempted by the National Bank Act (NBA). The NBA explicitly does not preempt the entire field of banking. 12 U.S.C. § 25b; *T.C. Jefferson v. Chase Home Fin.*, 2008 WL 1883484, at *7 (N.D. Cal. Apr. 29, 2008).[18] "Federally chartered banks are subject to state laws of general application in their daily business to the extent such laws do not conflict with the letter or general purposes of the NBA." *Watters v. Wachovia Bank*, 550 U.S. 1, 11 (2007)(citing *Davis v. Elmira Sav. Bank*, 161 U.S. 275 (1896)). "State consumer financial laws are preempted only if" (1) application of the state law would have a discriminatory effect on national banks compared to the effect on state-chartered banks; (2) state consumer financial law "prevents or

---

[17] Additionally, there is no evidence that Wells Fargo's kickbacks are even part of the insurance premiums that ASIC filed with the Florida OIR. Although some portion of total charges that Wells Fargo forces borrowers to pay surely derives from the filed premium rates, discovery has not revealed whether the kickbacks and other costs that Wells Fargo includes in the charges it requires borrowers to pay are covered by force-placed insurance rates or added on by Wells Fargo at the time it charges the borrowers.

[18] The only cases that Wells Fargo cites for its preemption argument relate to preemption under the Home Owners Loan Act. However, "Courts have cautioned against wholesale application of an OTS/HOLA analysis in the OCC[/NBA] context" because "OTS preemption is more sweeping [than NBA preemption] because OTS occupies the entire field . . . in connection with HOLA." *Davis v. Chase Bank U.S.A., N.A.*, 650 F. Supp. 2d 1073, 1083 (C.D. Cal. 2009).

significantly interferes with the exercise by the national bank of its powers;" or (3) state consumer financial law is preempted by some other provision of federal law. 12 U.S.C. § 25b.

Plaintiffs' claims are not preempted because they raise state laws of general applicability that are not targeted at banking or "real estate lending" activities. Wells Fargo raised identical arguments in *Williams* and *Kunzelmann*. Both courts held that the NBA did not preempt state law claims. *See Williams*, *supra*, at *9 (contract and unjust enrichment laws only incidentally affect the bank's exercise of its powers); *Kunzelmann*, *supra*, at *5 (contract and unjust enrichment claims are "laws of general application that are not directed at national banks or their activity or mandate what national banks can or cannot do" because plaintiff sought only the "recovery of the 'inflated' portions of the premiums, which Wells Fargo charged Plaintiff and the putative class in bad faith.")  Defendant does not even attempt to explain why this Court should reach a different result.

Wells Fargo incorrectly argues that Plaintiffs' claims are preempted by OCC regulations codified at 12 C.F.R. §§ 7.4002 and 34.4. 12 C.F.R. § 7.4002 authorizes national banks to charge "non-interest charges and fees" related to "banking services." ASIC's insurance premiums are not "fees and charges" connected to any banking services. Hence, this regulation has no application here.[19] Wells Fargo also improperly relies on 12 C.F.R. § 34.4, which preempts certain state laws as they relate to real estate loans. However, the preemptive effect is limited to the moment a national bank makes a loan. ("[a] national bank may *make* real estate loans . . . without regard to state law limitations . . . .")(emphasis added). Wells Fargo has not made any loan to Plaintiffs. Thus, it is unclear how this regulation applies here. Further, 12 C.F.R. § 34.4(b) explicitly excludes contract and tort claims from preemption. ("State laws on [contracts and torts] are not inconsistent with the real estate lending powers of national banks to the extent that they only incidentally affect the exercise of

---

[19] Moreover, 12 C.F.R. § 7.4002(b)(2) dictates only "[t]he *establishment* of non-interest charges and fees, their amounts, and the methods of calculating them." (emphasis added). Plaintiffs do not challenge the amount of the insurance premium Wells Fargo charged them.

25

national banks' real estate lending powers.")

Finally, it is entirely unclear whether Wells Fargo's actions involve any "banking activity" or "banking power" that would trigger the NBA. Plaintiffs borrowed the funds secured by their mortgage from Amerisave Mortgage Corporation, which subsequently transferred the loan to Fannie Mae. FAC ¶ 27. Wells Fargo only services the loan on behalf of Fannie Mae. FAC ¶¶ 22, 26, 33. Thus, the NBA likely has no application to this case.

## L.    The Jury Trial Waiver Is Unenforceable

Plaintiffs' mortgage contains a purported waiver of the right to a jury trial. Mortgage ¶ 25. To enforce a jury trial waiver, the plaintiff must knowingly, voluntarily, and intelligently waive his rights. *Allyn v. W. United Life Assur. Co.*, 347 F. Supp. 2d 1246, 1252 (M.D. Fla. 2004). Florida courts consider five factors in determining whether the waiver was knowing and voluntary: (1) the conspicuousness of the provision in the contract; (2) the level of sophistication and experience of the parties entering into the contract; (3) the opportunity to negotiate terms of the contract; (4) the relative bargaining power of each party; and (5) whether the waiving party was represented by counsel. *Id.* The Court must then consider whether, in light of the circumstances, the waiver was "unconscionable, contrary to public policy, or simply unfair." *Id.* (citing *Gulati v. Countrywide Home Loans, Inc.*, 2006 WL 6300891, *1–2 (M.D. Fla. Feb. 17, 2006)).

Any alleged waiver of Plaintiffs' constitutional right to a jury trial is invalid. Plaintiffs did not knowingly and voluntarily waive their constitutional right to a jury trial. The jury waiver provision is located at the end of the mortgage and it is not set apart from the other sections of the contract. Most importantly, Plaintiffs had no opportunity to negotiate the terms of their form mortgage contract. Plaintiffs' mortgage is a standard national Fannie Mae/Freddie Mac mortgage, and the contract terms were presented on a take-it-or-leave it basis.  The circumstances surrounding the purported waiver of

26

an important constitutional right cannot be considered knowing and voluntary.

Even if this Court finds that jury trial waiver valid, the Court should still deny Wells Fargo's Motion to Strike Plaintiffs' Jury Trial Demand as premature as to claims that do not arise out of the mortgage contract. *See Buckeye Ventures, Inc. v. Trafalgar Capital Specialized Investment Fund Luxembourg*, 2009 WL 2477470, *6 (S.D. Fla. Aug. 11, 2009)(denying motion to strike jury trial based on contract waiver because claims outside the contract were not subject to the waiver).

### III.   **CONCLUSION**

For the reasons stated, Wells Fargo Bank, N.A.'s motion to dismiss should be denied. If, however, this Court grants Wells Fargo's motion in whole or in part, Plaintiffs respectfully request leave to amend.

Dated: October 16, 2012       Respectfully submitted,

  /s/ Steve Owings                                          
Steven A. Owings (*Pro Hac Vice*)
Alexander P. Owings (*Pro Hac Vice*)
OWINGS LAW FIRM
1400 Brookwood Drive
Little Rock, AR 72202
Telephone: (501) 661-9999
Facsimile: (501) 661-8393
sowings@owingslawfirm.com
apowings@owingslawfirm.com

Sheri L. Kelly, SBN 226993
E-mail: slk@sherikellylaw.com
LAW OFFICE OF SHERI L. KELLY
31 E. Julian St.
San Jose, CA  95112
Telephone:  408/287-7712
Facsimile:  408/583-4249

Brent Walker (*Pro Hac Vice*)
Russell Davis Carter III (*Pro Hac Vice*)
CARTER WALKER PLLC
2171 West Main, Suite 200
P.O. Box 628

27

Cabot, AR 72023
(501) 605-1346
(501) 605-1348 (facsimile)
bwalker@carterwalkerlaw.com
dcarter@carterwalkerlaw.com


Jack Wagoner, (*Pro Hac Vice*)
WAGONER LAW FIRM, P.A.
1320 Brookwood, Suite E
Little Rock, AR 72202
Telephone: (501) 663-5225
Facsimile: (501) 660-4030
Jack@wagonerlawfirm.com

**Counsel for Plaintiffs**