MICHAEL J. STEINER (State Bar No. 112079)
mjs@severson.com
MARK D. LONERGAN (State Bar No. 143622)
mdl@severson.com
JONAH S. VAN ZANDT (State Bar No. 224348)
jvz@severson.com
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Defendant
WELLS FARGO BANK, N.A.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA — SAN FRANCISCO DIVISION

| | |
|---|---|
| STANLEY D. CANNON and PATRICIA R. CANNON, individually and for all other persons similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant. | Case No. CV12-01376<br><br>**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. PROC. 12(b)(1)**<br><br>Date:  December 3, 2012<br>Time:  1:30 p.m.<br>Crtrm.: 5<br>Judge:  Hon. Edward M. Chen<br><br>Action Filed:   March 19, 2012<br>Trial Date:     None Set |

1  Defendant Wells Fargo Bank, N.A. ("Wells Fargo") respectfully submits this reply brief in
2 support of its motion to dismiss plaintiffs' first amended complaint (the "FAC") pursuant to
3 Federal Rule of Civil Procedure 12(b)(1).

4  As Wells Fargo stated in its opening memorandum, the rate that it charged plaintiffs for
5 force-placed insurance was filed with and approved by the Florida Office of Insurance Regulation
6 (the "OIR"). Plaintiffs do not contest these simple facts, nor could they. Hence, plaintiffs' theory
7 that the rate they paid was too high runs afoul of the filed-rate doctrine and their claims must be
8 dismissed to the extent they are based on this theory.

9  In opposition, plaintiffs argue that the filed rate doctrine does not apply because they do
10 not challenge the rate they paid, per se, but rather Wells Fargo's "manipulation" of the force-
11 placed insurance process. *See* Opp., p. 6. This is an exercise in semantics.

12  Plaintiffs allege that ASIC improperly paid commission to Wells Fargo's insurance agency
13 affiliate and improperly performed services for Wells Fargo that it should have performed for
14 itself. *See* FAC, ¶¶ 3-5, 8(2), 23, 40, 51-58, 97(a)-(c). This is the "manipulation" to which
15 plaintiffs refer.[1] But plaintiffs do not object to these practices in the abstract. They are suing
16 because they assert that the costs of these practices inflated the rate they paid for force-placed
17 insurance. *See* FAC, pp. 33-34; Opp. at 12:14-15.[2]

---

[1] Plaintiffs also allege that the commission ASIC paid to Wells Fargo insurance affiliate was calculated as a percentage of the premium, which plaintiffs contend encouraged Wells Fargo to seek high-priced force-placed insurance. *See id.* ¶¶ 51-53. They complain that Wells Fargo should have, but did not, seek competitive bids. *See* FAC ¶ 97(d). But as Wells Fargo argued in its motion to dismiss, these allegations do not save plaintiffs' claims from the filed rate doctrine. *See* Opening Memo, p. 17, fn. 24. As discussed in the accompanying text, the filed-rate doctrine is based on the premise that a rate filed with, and approved, by a regulatory body is reasonable as a matter of law. It cannot be commercially unreasonable, hence outside the scope of discretion conferred by the Cannons' mortgage, for Wells Fargo to buy LPI at a price that is reasonable as a matter of law. Plaintiffs apparently have no response to this.

[2] In a desperate ploy to avoid dismissal, plaintiffs argue that there is no evidence that the "kickbacks" Assurant paid to Wells Fargo's affiliate were incorporated into the rate that they paid. *See* Opp., p. 24 fn. 17. The issue on this motion is not what the evidence shows, it is what plaintiffs allege. Plaintiffs do not allege that Wells Fargo marked up the rate they paid, nor could they. Plaintiffs weakly suggest that Wells Fargo *may* have levied some additional charge on them at some unspecified time that covered the "kickbacks." *Ibid*. If plaintiff have reason to believe that this happened, they should have alleged this in their complaint. They did not. Speculation is not a substitute for alleging facts.

This theory falls squarely within the filed rate doctrine. "Where the legislature has conferred power upon an administrative agency to determine the reasonableness of a rate, the rate-payer 'can claim no rate as a legal right that is other than the filed rate....'"[3] Florida has conferred upon the OIR the power to review and approve insurance rates. *See* Opening Memo, pp. 13-14. In approving the rate plaintiffs paid, the OIR determined that it was not "excessive" as plaintiffs complaint. *See* Fla. Stat. § 627.062.

If plaintiffs prevailed on their overcharge theory, it would result in them effectively paying a lower rate than that approved by the OIR. Furthermore, calculating damages would require the Court to second-guess the OIR by determining a hypothetical "reasonable" rate that the OIR "should" have approved. This is exactly what the filed-rate doctrine prohibits. *See* Opening Memo, pp. 14-15 citing *Fla. Mun. Power Agency v. Fla. Power & Light Co.*, 64 F.3d 614, 615 (11th Cir. 1995); *Uniforce Temp. Pers., Inc. v. Nat'l Council on Comp. Ins., Inc.*, 892 F.Supp. 1503, 1512 (S.D. Fla. 1995), aff'd, 87 F.3d 1296 (11th Cir. 1996).

In their opposition, plaintiffs do not address any of the authority Wells Fargo cited in its opening memo. Instead, they rely entirely on two decisions by the United States District Court for the Southern District of Florida involving force-placed insurance, *Abels v. JPMorgan Chase Bank*, N.A., 678 F. Supp.2d 1273 (S.D. Fla. 2009); and *Kunzelmann v. Wells Fargo Bank*, N.A., 2012 WL 2003337 (S.D. Fla. 2012).[4] The courts in these cases held that the filed-rate doctrine did not apply because the plaintiffs were not challenging the rate they paid but rather the manner in which the defendants selected the insurer, (*Abels*, 678 F. Supp.2d at 1277), or the "manipulation of the forced-placed insurance process," (*Kunzelmann*, *supra*, 2012 WL 2003337, at *1). Respectfully, the reasoning employed by these courts does not withstand scrutiny.

In *Abels*, the plaintiffs complained that Chase had engaged in "self-dealing" by purchasing

---

[3] *Taffet v. So. Co.*, 967 F.2d 1483, 1494 (11th Cir. 1992) (quoting *Montana-Dakota Utilities Co. v. Nw. Public Serv. Co.*, 341 U.S. 246, 251 (1951)).

[4] Plaintiffs also cite *Williams v. Wells Fargo Bank, N.A.*, No. 11-21233-CIV, 2011 WL 4901346 (S.D.Fla. Oct. 14, 2011). But the court in *Williams* did not address any argument that the plaintiffs' claims were barred by the filed-rate doctrine. Hence, *Williams* is not authority on whether the filed-rate doctrine applies.

their force-placed policy from a Chase affiliate.  *See Abels*, 678 F. Supp.2d at 1276.[5]  In *Kunzelmann* the plaintiffs asserted that the insurer from which Wells Fargo purchased their force-placed policy paid "kickbacks" to Wells Fargo.  *Kunzelmann*, *supra*, 2012 WL 2003337, at *1.  But as is the case here, the plaintiffs in *Abels* and *Kunzelmann* did not challenge these practices in the abstract.  They sued because they contended that these practices inflated the rates they paid.  Those rates were filed with and approved by the OIR, which determined that they were not "excessive."  Hence, the plaintiffs' claims that they were entitled to a better rate than that approved by the OIR were barred by the filed rate doctrine.  *See Taffet v. So. Co.*, 967 F.2d 1483, 1494 (11th Cir. 1992).  In sum, these cases were wrongly decided.

Furthermore, that plaintiffs here paid their insurance premium to Wells Fargo, rather than to Assurant, makes no difference.  The filed-rate doctrine is based on the principal that "any 'filed rate'–that is, one approved by the governing regulatory agency–is per se reasonable and unassailable in judicial proceedings brought by ratepayers."  *Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17, 18 (2d Cir. 1994).  If the rate at issue here was "per se reasonable" when Wells Fargo paid it to Assurant, it was no less reasonable when Wells Fargo sought reimbursement from plaintiffs of the same amount.

That the filed rate doctrine bars plaintiffs from suing in this Court does not mean that they cannot pursue their claims.  It simply means that this is the wrong forum.  The Florida Insurance Code provides a means for plaintiffs to present their dispute directly to the OIR, the body best suited to resolve it.  If an insured believes that a rate is excessive, he may file a complaint with the OIR.  Fla. Stat. § 627.371(1).  If the OIR finds that the rate is excessive, it will direct the insurer to

---

[5]  Plaintiffs assert that the court in *Abels* based its decision on its determination that applying the filed rate doctrine would not serve the "twin goals of the filed rate doctrine (preserving the insurance regulator's authority to determine premiums' reasonableness and insuring that insurance companies charge only approved rates)."  *See* Opp., p. 23 citing *Abels*, 678 F. Supp.2d at 1277.  That is inaccurate.  The court in *Abels* merely noted that the plaintiffs had made this argument.  The court did not endorse this argument or base its opinion on it.  *See Abels*, 678 F. Supp.2d at 1277.  In any event, the argument is clearly wrong, as this case illustrate.  If the Court here were to decide that the rate plaintiffs here paid was "excessive," that determination would clearly undermine the authority of the OIR, which determined otherwise when it approved the rate.  Furthermore, if the Court were to determine that the rate plaintiffs paid was "excessive" it would be, in effect, telling Assurant that it must charge some rate other than what the OIR approved.

1 make a "premium adjustment." Fla. Stat. § 627.371(2). If the insurer fails to do so, "the office is
2 required to proceed to further determine the matter." Fla. Stat. § 627.371(3). The OIR has broad
3 authority to hold hearings, issue cease and desist orders, order corrective action, and initiate
4 lawsuits to enforce the Insurance Code. Fla. Stat. §§ 624.307, 624.310, 626.9561. In sum, the
5 Florida Insurance Code provides a clear remedy for plaintiffs to pursue their claims with the OIR.

6 This Court should refrain from deciding plaintiffs' claims before the OIR has had an
7 opportunity to apply its expertise. A decision by this Court on the legality of the rates plaintiffs
8 paid would both challenge the autonomy of the OIR and raise the possibility that insurers will be
9 subject to different standards in setting insurance rates. Hence, even if plaintiffs' claims are not
10 barred by the filed-rate doctrine, which they are, the Court should invoke the primary jurisdiction
11 doctrine and dismiss or stay this action so that plaintiffs can present their claims to the OIR.

12 Wells Fargo pointed all of this out in its motion to dismiss. Plaintiffs have no answer. Nor
13 have they presented any reason they cannot pursue their complaint with the OIR before litigating it
14 in court. They should be required to do so.

16 DATED: November 5, 2012         SEVERSON & WERSON
                                   A Professional Corporation

19                                 By: ____/s/ Jonah S. Van Zandt____
                                            Jonah S. Van Zandt

21                                 Attorneys for Defendant
                                   WELLS FARGO BANK, N.A.