MICHAEL J. STEINER (State Bar No. 112079)
mjs@severson.com
MARK D. LONERGAN (State Bar No. 143622)
mdl@severson.com
JONAH S. VAN ZANDT (State Bar No. 224348)
jvz@severson.com
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Defendant
WELLS FARGO BANK, N.A.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA — SAN FRANCISCO DIVISION

| | |
|---|---|
| STANLEY D. CANNON and PATRICIA R. CANNON, individually and for all other persons similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant. | Case No. CV12-01376<br><br>**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT AND DISMISS OR STRIKE JURY DEMAND**<br><br>Date: December 3, 2012<br>Time: 1:30 p.m.<br>Crtrm.: 5<br>Judge: Hon. Edward M. Chen<br><br>Action Filed: March 19, 2012<br>Trial Date: None Set |

07685.1150/2436708.2

CV12-01376
Reply Memo. i/s/o Motion To Dismiss 1st Amended Compl.

# TABLE OF CONTENTS

*Page*

I.     APPLICABLE LAW .................................................................................. 1

II.    THE EXCESSIVE COVERAGE THEORY IS NOT VIABLE ................... 3

     A.     The Cannons Cannot State A Breach Of Contract Claim ........................ 3

          1.     The Mortgage Allows A Lender To Require RCV Flood Coverage ........... 3

          2.     The Lender May Place Insurance It May Require ........................ 4

          3.     The Cannons' NSFH Introduces No Ambiguity ........................ 5

     B.     The Cannons' Other Common Law Claims Are Not Viable ................... 7

     C.     The Cannons' Statutory Claims Should Be Dismissed ........................... 9

          1.     The Cannons Allege No TILA Violation ..................................... 9

          2.     The Cannons Cannot State A UCL Claim ................................. 10

          3.     The Cannons Have No RESPA Claim ....................................... 11

III.   THE FILED RATE DOCTRINE BARS THE CANNONS' KICKBACK THEORY ........................................................................... 11

IV.   THE NATIONAL BANK ACT PREEMPTS THE CANNONS' STATE LAW CLAIMS ..................................................................... 11

V.    THE JURY TRIAL WAIVER SHOULD BE ENFORCED ............................. 13

VI.   CONCLUSION ................................................................................. 14

# TABLE OF AUTHORITIES

*Page(s)*

*Cases*

*Autotel v. Nevada Bell Tel. Co.*,
    __ F.3d __, 2012 WL 3799919 (9th Cir. 2012) ........................................................ 5

*Barnett Bank of Marion Cty., N. A. v. Nelson*,
    517 U.S. 25 (1996) .................................................................................................. 12

*Cal. Fed. Bank v. Matreyek*,
    8 Cal.App.4th 125 (1992) ......................................................................................... 8

*Cibran Enters., Inc. v. BP Products N. Am., Inc.*,
    365 F.Supp.2d 1241 (S.D. Fla. 2005) ....................................................................... 8

*Collins v. Countrywide Home Loans, Inc.*,
    680 F.Supp.2d 1287 (M.D. Fla. 2010) .................................................................... 14

*Cooper v. Meridian Yachts, Ltd.*,
    575 F.3d 1151 (11th Cir. 2009) ................................................................................ 2

*Copeland-Turner v. Wells Fargo Bank*,
    800 F.Supp.2d 1132 (D. Or. 2011) ......................................................................... 13

*Correa v. BAC Home Loans Servicing LP*,
    2012 WL 1176701 (M.D. Fla. 2012) ...................................................................... 14

*Degirmenci v. Sapphire-Fort Lauderdale, LLP*,
    693 F.Supp.2d 1325 (S.D. Fla. 2010) ....................................................................... 8

*Ernie Haire Ford, Inc. v. Ford Motor Co.*,
    260 F.3d 1285 (11th Cir.2001) ................................................................................. 8

*Foster v. Liberty Fed. Sav. Bank*,
    1993 WL 541025 (Tenn. App. 1993) ....................................................................... 4

*Frye v. Bank of America, N.A.*,
    2010 WL 3244879 (N.D. W.Va. 2010) .................................................................. 13

*Hauk v. JP Morgan Chase Bank USA*,
    552 F.3d 1114 (9th Cir. 2009) ............................................................................. 9, 10

*In re Cayer*,
    150 B.R. 829 (Bankr. M.D. Fla. 1993) ..................................................................... 4

*In re Nat'l W. Life Ins. Co. Deferred Annuities Litig*,
    467 F.Supp.2d 1071 (S.D. Cal. 2006) .................................................................... 10

*In re Toyota Motor Corp.*,
    785 F.Supp.2d 883 (C.D. Cal. 2011) ...................................................................... 10

*Kunzelmann v. Wells Fargo Bank, N.A.,*
 2012 WL 2003337 (S.D. Fla. 2012) .............................................................. 13, 14

*Lass v. Bank of America, N.A.,*
 __ F.3d __, 2012 WL 4240504 (1st Cir. 2012) ..............................................*passim*

*Lomax v. Bank of America, N.A.,*
 435 B.R. 362 (N.D. W.Va. 2010) ......................................................................... 13

*Madura v. BAC Home Loans Servicing L.P.,*
 851 F.Supp.2d 1291 (M.D. Fla. 2012) ................................................................. 14

*Maldonado v. Morales,*
 556 F.3d 1037 (9th Cir.2009) ................................................................................. 5

*Martinez v. Wells Fargo Bank, N.A.,*
 2007 WL 2213216 (N.D. Cal. 2007) .................................................................... 13

*McDowell v. James Talcott, Inc.,*
 183 So.2d 592-93 (Fla. App. 1966) ....................................................................... 8

*McKenzie v. Wells Fargo Home Mortg., Inc.,*
 No. C-11-04965 (N.D. Cal. Oct. 30, 2012), slip ............................................*passim*

*McNeary-Calloway v. JP Morgan Chase Bank, N.A.,*
 2012 WL 1029502 (N.D. Cal. 2012) .................................................................... 11

*Merrill Lynch & Co.,Inc. v. Allegheny Energy, Inc.,*
 500 F.3d 171 (2d Cir. 2007) ............................................................................ 13, 14

*Nat'l Bank of Melbourne & Trust Co. v. Batchelor,*
 266 So.2d 185 (Fla. App. 1972) ............................................................................. 8

*Nedlloyd Lines B.V. v. Superior Court,*
 3 Cal.4th 459 (1992) ........................................................................................... 1, 2

*Norwest Mortg., Inc. v. Superior Court,*
 72 Cal.App.4th 214 (1999) .................................................................................. 10

*Oglesbee v. IndyMac Fin. Servs., Inc.,*
 675 F.Supp.2d 1155 (S.D. Fla. 2009) ................................................................... 14

*Petherbridge v. Prudential Sav. & Loan Ass'n,*
 79 Cal.App.3d 509 (1978) ...................................................................................... 9

*Phillips Petroleum Co. v. Shutts,*
 472 U.S. 797 (1985) ............................................................................................... 2

*Retlaw Broad. Co. v. NLRB,*
 53 F.3d 1002 (9th Cir.1995) ................................................................................... 5

*Page(s)*

*Rose v. J.P. Morgan Chase, N.A.*,
 2012 WL 3205426 (E.D. Cal. 2012) .................................................................. 9

*Sanford v. Memberworks, Inc.*,
 625 F.3d 550 (9th Cir. 2010) ........................................................................... 11

*Sekesen v. Aegis Funding Corp.*,
 2010 WL 1249443 (S.D. Fla. 2010) ................................................................. 14

*Sepe v. City of Safety Harbor*,
 761 So.2d 1182 (Fla. App. 2000) ....................................................................... 8

*Travis v. Boulevard Bank, N.A.*,
 880 F. Supp. 1226 (N.D. Ill. 1995) ................................................................... 10

*Vila & Son Landscaping Corp. v. Posen Constr., Inc.*,
 __So.3d __, 2012 WL 4093545 (Fla. App. 2012) ............................................ 8

*Virtanen v. O'Connell*,
 140 Cal.App.4th 688 (2006) .............................................................................. 8

*Watters v. Wachovia Bank, N.A.*,
 550 U.S. 1 (2007) ............................................................................................. 12

*Williams v. Wells Fargo Bank, N.A.*,
 2011 WL 4901346 (S.D. Fla. 2011) ................................................................. 13

*Wilson Cypress Co. v. Logan*,
 120 Fla. 124, 162 So. 489 (Fla. 1935) ............................................................... 8

*Wulf v. Bank of Am., N.A.*,
 798 F. Supp. 2d 586 (E.D. Pa. 2011) ............................................................... 10

*Statutes*

United States Code
 Title 12, section 25b .................................................................................. 12, 13
 Title 15, section 1638 ...................................................................................... 10

Pub. L. 111-203, § 1044, 124 Stat. 1376 (July 21, 2010) .................................... 13

Code of Federal Regulations
 Section 7.4002 ................................................................................................. 13
 Section 34.4 ......................................................................................... 12, 13, 15
 Section 226.4 ..................................................................................................... 9
 Section 226.18 .................................................................................................. 10
 Part 226, Supplement I .................................................................................... 10

# TABLE OF AUTHORITIES

*Page(s)*

Federal Rules of Civil Procedure
    Rule 12 ................................................................................................................ 11

*Other Authorities*

Raymond A. Jensen, *Mortgage Standardization:  History of Interaction*
    *of Economics, Consumerism and Governmental Pressure*,
    7 Real Prop., Prob. & Tr. J. 397, 410, 412, 421 (1972) ............................................ 4

Rest. Restitution,
    Section 12 ............................................................................................................. 8

# I.    APPLICABLE LAW

A preliminary issue on this motion is which state's law applies to the Cannons' claims. The pertinent facts are undisputed. The Cannons' mortgage encumbers property located in Florida. FAC ¶ 27 & Ex. A. Section 16 of the mortgage states: "This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located." FAC Ex. A, § 16.

The parties agree that under this provision, Florida law applies to the Cannons' claims for breach of contract and breach of the implied covenant of good faith and fair dealing. *See* Opp., 3:8-9. The parties disagree, however, as to whether Florida law also applies to the Cannons' other state law claims—for unjust enrichment, conversion and breach of fiduciary duty.

Under California law, a choice of law clause, like section 16, applies to tort as well as contract claims. In *Nedlloyd Lines B.V. v. Superior Court,* 3 Cal.4th 459 (1992), the California Supreme Court held that a contract which provided that "[t]his agreement shall be *governed by* and construed in accordance with Hong Kong law" required application of Hong Kong law to a breach of fiduciary duty cause of action. *Id.* at 468-470. "Governed by" is a broad term, the high court said, reflecting the parties' intent that Hong Kong law completely and absolutely control the agreement, which it would not if another jurisdiction's law applied to tort claims arising from the relationship the agreement created. *Id.* at 469.

As the Supreme Court also pointed out, its holding "comports with common sense and commercial reality." *Id.* Rational contracting parties rarely "intend that the laws of multiple jurisdictions would apply to a single controversy having its origin in a single, contract-based relationship." *Id.* Also, a choice of law clause is adopted for the very purpose of avoiding the "protracted litigation battle[s] concerning only the threshold question of what law [is] to be applied to which asserted claims or issues" which would ensue if the chosen jurisdiction's law applies only to some, not all claims arising from the contractual relationship. *Id.* at 470.

The California Supreme Court also recognized, however, that a choice of law clause's scope must be determined in accordance with the chosen jurisdiction's law. *Id.* at 469 n. 7. In *Nedlloyd*, the court applied California law only because the parties did not present Hong Kong law

on the subject.  *Id.*

This Court faces the same circumstance in this case.  Here, the Cannons' mortgage chooses Florida law.  If presented to this Court, Florida law would determine the scope of the mortgage's choice of law clause.  But no Florida law has been presented on this point.  The Cannons cite a single Eleventh Circuit case.  *See* Opp., 3:15-18, citing *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1162 (11th Cir. 2009).  While *Cooper* decided a Florida-filed suit, the Eleventh Circuit cited no Florida case law on the issue.  The earlier Eleventh Circuit decision it did cite did not do so either, but rather relied on a Second Circuit decision.  Despite *Erie*, the Eleventh Circuit apparently applied federal law rather than Florida law to interpret a choice of law clause more narrowly than *Nedlloyd* did.  Even if the Eleventh Circuit *thought* it was applying Florida law, it gave no reason based in Florida law nor any Florida case authority for its conclusion.  Absent any surer indication of how Florida would decide this issue,[1] this Court should follow *Nedlloyd* and apply California law to decide the choice of law clause's scope.

Furthermore, even if the choice of law clause does not apply to their tort claims, as the Cannons contend, it is far from clear that California law would apply instead.  The Cannons propose California law based solely on the fact that Wells Fargo maintains its corporate headquarters in California.  *See* Opp., 4:5-7.  From this, the Cannons' seek to infer that "each act predicating Plaintiffs' claims originated in California," giving California a sufficient state interest to apply its law.  *Id.*; *see Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 818-22 (1985).

The Cannons' inference is illogical and cannot support their effort to apply California law to their Florida mortgage and Wells Fargo's servicing of the loan it secures.  The Cannons do not allege in their complaint that any of the relevant transactions occurred at or emanated from Wells Fargo's San Francisco headquarters—either with respect to the servicing of their mortgage or with respect to Wells Fargo's contracting with Assurant to provide lender-placed flood insurance.  In fact, Wells Fargo's mortgage servicing operations are run primarily from Minnesota or Iowa, not

---

[1]     Wells Fargo has been unable to locate any published Florida state court opinion on this topic.

1  California.  *See* http://biz.yahoo.com/ic/112/112515.html.  Absent contrary allegations or evi-

2  dence,[2] it is more logical to assume that all the pertinent transactions occurred entirely outside

3  California.

4       At least at this stage, the Court should reject the Cannons' assertion that California law ap-

5  plies to their tort claims, and instead apply Florida law either pursuant to their mortgage's choice

6  of law clause or because their home's location is the only solid basis their complaint provides for

7  choosing applicable state law.

8                    **II.      THE EXCESSIVE COVERAGE THEORY IS NOT VIABLE**

9       The Cannons' excessive coverage theory is based on a patent misinterpretation of their

10 mortgage's clear language.  The theory does not and cannot support any viable claim.

11 **A.      The Cannons Cannot State A Breach Of Contract Claim**

12           **1.      The Mortgage Allows A Lender To Require RCV Flood Coverage**

13      As shown in Wells Fargo's opening memorandum (pp. 8-9), section 5 of the Fannie Mae/

14 Freddie Mac form mortgage requires the borrower to maintain hazard (including flood) insurance

15 "in the amounts … that Lender requires."  The section further states that "[w]hat Lender requires

16 … can change during the term of the Loan."  These sentences clearly and unambiguously grant the

17 Lender discretion to decide the amount of hazard insurance the borrower must maintain and to

18 change that amount during the loan term.

19      Though they quote a portion of section 5 in their opposition, the Cannons never suggest

20 any other meaning these sentences' clear language could reasonably be given.  *See* Opp., 5-7.  The

21 case on which the Cannons principally rely also concedes that this portion of the Fannie Mae/

22 Freddie Mac mortgage clearly grants the lender the discretion to set and change the amount of

23 hazard (including flood) insurance the borrower must maintain.[3]

24 _____

25 [2]      The Cannons argue that "Defendants do not aver that their collusive dealing arrangements
   and decisions regarding required insurance amounts occurred outside the state of California."

26 Opp., 4:21-24.  Of course, on a motion to dismiss, defendants do not and cannot "aver" anything.
   If and when the time comes for it to present allegations or evidence, Wells Fargo will show that all

27 the relevant transactions did, in fact, occur outside California.

28 [3]      *Lass v. Bank of America, N.A.*, ___ F.3d ___, 2012 WL 4240504, at *4 (1st Cir. 2012) ("[I]f
                                                                                    (Fn. cont'd)

Moreover, this clearly granted authority to set and change the amount of required insurance would be meaningless unless it allowed the lender to require more than principal balance coverage. Federal law already mandates that borrowers maintain principal balance flood insurance coverage. The mortgage must allow the lender to require more. Otherwise, section 5's words are nullified.

The Fannie Mae/Freddie Mac form mortgage's drafting history confirms that the current form, which the Cannons signed, permits the lender to require hazard insurance in excess of principal balance coverage. Fannie Mae and Freddie Mac first promulgated a uniform security instrument in 1972. To blunt consumer advocates' criticism, that first uniform security instrument contained the following proviso at the end of the hazard insurance section: "***provided, that Lender shall not require that the amount of such coverage exceed that amount of coverage required to pay the sums secured by this Mortgage***."[4]

The quoted proviso clearly and expressly stated exactly what the Cannons think their mortgage also says. Under the proviso, the lender could require no more than principal balance hazard insurance coverage. If the Cannons' mortgage contained that proviso, they unquestionably would have a viable breach of contract claim. But it doesn't. And they don't. Fannie Mae and Freddie Mac deleted the proviso during the 1980s or 1990s. That change in the form had a clear, obvious purpose. The proviso gone, the current form permits the lender to require flood insurance in excess of principal balance coverage.

### 2. The Lender May Place Insurance It May Require

Unable to offer any other interpretation of section 5's first paragraph, the Cannons claim

---

(Fn. cont'd)
Paragraph 5 constituted the entire agreement on flood insurance, the Bank would have a compelling argument that the mortgage could only reasonably be interpreted to give it discretion to increase the insurance obligation during the life of the loan.")

[4] *See* Raymond A. Jensen, *Mortgage Standardization: History of Interaction of Economics, Consumerism and Governmental Pressure*, 7 Real Prop., Prob. & Tr. J. 397, 410, 412, 421 (1972). FNMA/FHLMC forms included this proviso for more than a decade after 1972. See *Foster v. Liberty Fed. Sav. Bank*, 1993 WL 541025, at *1 (Tenn. App. 1993) (quoting proviso from 1979 mortgage); *In re Cayer*, 150 B.R. 829, 830 (Bankr. M.D. Fla. 1993) (quoting proviso from 1986 mortgage).

Reply Memo. i/s/o Motion To Dismiss 1st Amended Compl.

that, by stating it "shall cover Lender," the section's second paragraph limits lender-placed insurance to principal balance coverage. Opp., 7:1-9. But the Cannons present no argument and cite no authority to support the claim. They also fail to respond to Wells Fargo's memorandum, which pointed out that the Cannons' construction of "shall cover Lender" was both wrong and unreasonable. *See* Opening Memo., 9-10, 11-12. The Cannons' conclusory statement of their position without supporting argument or authority would waive the issue for purposes of appeal.[5] This Court need not give the Cannons' ipse dixit any greater credence.

Rejecting the same argument, Magistrate Judge Spero recently explained:

> Plaintiffs wrongly assume that their voluntary flood insurance policies, which cover only their outstanding loan balances, fully protect the lender's interests. As discussed above, flood insurance exceeding the loan balance does not just protect the borrower's equity in the property, but can also protect the lender's financial interests. Accordingly, FPI [force-placed insurance] policies that cover the difference between the borrower's voluntary insurance and the replacement cost value do cover the lender.

*McKenzie v. Wells Fargo Home Mortg., Inc.*, No. C-11-04965 (N.D. Cal. Oct. 30, 2012) (order granting motion to dismiss), slip opn. at 28.

### 3. The Cannons' NSFH Introduces No Ambiguity

The Cannons finally argue that the First Circuit's recent decision in *Lass* supports their claim. Opp., 6:2-14, 7:10-8:3. They are wrong. *Lass* turned on unique wording of the NSFH given the borrower in that case. The Cannons' NSFH contains no comparable language.

Lass's NSFH stated:

> [A]t the closing the property you are financing must be covered by flood insurance in the amount of the principle [sic] amount financed, or the maximum amount available, whichever is less. This insurance will be mandatory until the loan is paid in full.

*Lass*, 2012 WL 4240504 at *1.

---

[5]     *See Autotel v. Nevada Bell Tel. Co.*, __ F.3d __, 2012 WL 3799919, at *8 n. 9 (9th Cir. 2012) ("the conclusory statement in its opening brief, unaccompanied by argument or citation to the record, is insufficient to preserve the issue for appeal"); *Maldonado v. Morales*, 556 F.3d 1037, 1048 n. 4 (9th Cir.2009) ( "Arguments made in passing and inadequately briefed are waived."); *Retlaw Broad. Co. v. NLRB*, 53 F.3d 1002, 1005 n. 1 (9th Cir.1995) (declining to address argument summarily mentioned but not fully briefed).

This language, the First Circuit held, could be interpreted as an exercise of the discretion conferred by Section 5 of the mortgage "to align Lass's flood insurance obligation with the level of coverage deemed adequate under federal law, and … to make that amount the benchmark for the entire mortgage period." *Id.*, at \*5.

The NSFH given the Cannons contained no similar language—no words that reasonably could be read as an exercise by the Lender of its authority to set the amount of required flood insurance at the legally required minimum even temporarily, let alone for the entire loan term.

The Cannons' NSFH mentions amount of flood coverage only in describing what federal law requires, and even then states, "[a]t a minimum," flood insurance must cover the lesser of the loan's outstanding principal balance or the $250,000 maximum allowed under the National Flood Insurance Program. *See* Opening Memo., 10-11 n. 19. As pointed out before, that statement is an accurate—and legally required—description of what federal law mandates. *Id.*, at 10. It says nothing about the Lender's exercise of its contractual authority to require flood insurance.

The Cannons' NSFH did not contain the nonstandard language that *Lass* relied on to find Lass's loan agreement ambiguous. The Cannons are left with only Section 5's clear, express language granting the Lender authority to set, and change, the amount of flood or other hazard insurance that the Cannons were required to provide. As *Lass* found, that language clearly authorizes the Lender to change the amount of required flood insurance during the term of the loan and to require coverage in excess of the loan's principal balance. *Lass*, 2012 WL 4240504, at \*4.

That is exactly how Magistrate Judge Spero interpreted the NSFH and Fannie Mae/Freddie Mac mortgage in *McKenzie*. Distinguishing *Lass* as dealing with non-standard NSFH language, Judge Spero held:

> [T]hat the NSFH specifies the required minimum flood insurance coverage does not make it reasonable to conclude that the NSFH restricts the lender's discretion to set the required coverage above the minimum. The NSFH establishes the amount of flood insurance due at closing and sets a minimum, but not a maximum amount of coverage. Paragraph 5 unambiguously provides Defendants the discretion to determine the appropriate amount of flood insurance. …
>
> [Para.] … [N]othing in the NSFH restricts the lender's ability to require more than the minimum coverage. Read in isolation, it may

> be plausible to interpret the phrase "[a]t a minimum" to not mean that the amount of coverage specified in the NSFH is the minimum the lender may require. But the existence of Paragraph 5 precludes such an interpretation.

*McKenzie*, slip opn. at 26, 27& n. 11.

In short, the Cannons' mortgage allowed the Lender to require the Cannons to maintain RCV flood insurance coverage. So Wells Fargo did not breach the mortgage by mandating that coverage. Thus, the Cannons cannot state a viable breach of contract claim based on their excessive coverage theory.

## B. The Cannons' Other Common Law Claims Are Not Viable

Insofar as they are based on the excessive coverage theory, the Cannons' other common law causes of action fail to state viable claims for relief.

The Cannons' breach of implied covenant of good faith claim cannot survive given that the Cannons' mortgage expressly allowed Wells Fargo to demand RCV flood insurance coverage. In support of their claim that requiring RCV flood insurance coverage breached the implied covenant, the Cannons simply repeat their "cover Lender" and NSFH arguments from their breach of contract claim. *Compare* Opp., 9:13-21 *with id.*, 6:2-14, 7:1-8:3. Restating those arguments does not make them convincing. *See McKenzie*, slip opn. at 31.

Nor does *Lass* support the Cannons' breach of good faith claim. *See* Opp., 10:17-11:1. In allowing Lass' bad faith claim to proceed, the First Circuit rested its decision on two bases, neither of which support the Cannons' claim. First, the First Circuit found Lass' mortgage ambiguous based on the nonstandard nature of his NSFH. As already shown, the Cannons' NSFH did not contain the wording crucial to *Lass'* finding of ambiguity.

Second, the First Circuit opined that bad faith might be shown if the lender exercised its discretion to require more insurance coverage "for the purpose of increasing profits for itself or its affiliates." *Lass*, 2012 WL 4240504, at *7. That reasoning may suffice under Massachusetts law, but it does not under Florida law. Under Florida law good faith is judged objectively, not subjec-

1    tively,[6] and the implied covenant imposes only the mildest restraint on the exercise of discretion

2    that a contract expressly confers on a party.  "Unless no reasonable party ... would have made the

3    same discretionary decision ..., it seems unlikely that [the party's] decision would violate the cov-

4    enant of good faith ...."[7]  The Cannons do not and cannot allege that no reasonable lender would

5    require the amount of flood insurance coverage FEMA and federal banking regulators recom-

6    mend.

7         The Cannons' unjust enrichment claim cannot stand.  A party may not invoke unjust en-

8    richment to undo express contract terms.[8]  As the Cannons agree, unjust enrichment does not lie

9    when an enforceable binding agreement defines the parties' rights.  *See* Opp., 11:21-23.  Here, the

10   Cannons' mortgage expressly allowed Wells Fargo to require RCV flood insurance coverage.  So

11   any benefit Wells Fargo obtained by doing so was not "unjust."  *Lass* held to the contrary only be-

12   cause it had found Lass' mortgage ambiguous on the issue based on the nonstandard NSFH given

13   Lass.  *See* Opp., 12:16-20, quoting *Lass,* 2012 WL 4240504, at *9.  Because the Cannons' NSFH

14   contained no similar language, it created no ambiguity, and there was none under the clear word-

15   ing of Section 5 of their mortgage.

16        The Cannons' conversion claim fails for the same reason.  "[T]here can be no conversion

17   where an owner either expressly or impliedly assents to … the taking, use or disposition of his

18   property."[9]  Here, the Cannons gave their consent.  Their mortgage expressly allowed Wells Fargo

19   to require RCV flood insurance coverage and to buy that insurance when the Cannons failed to

20   _____

21   [6]      *See Vila & Son Landscaping Corp. v. Posen Constr., Inc.*,__ So.3d __, 2012 WL 4093545, at *4-5 (Fla. App. 2012).

22   [7]      *Cibran Enters., Inc. v. BP Products N. Am., Inc.*, 365 F.Supp.2d 1241, 1257-58 (S.D. Fla. 2005), quoting *Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1291 (11th Cir.2001),

23   quoting *Sepe v. City of Safety Harbor*, 761 So.2d 1182, 1185 (Fla. App. 2000) (internal quotes omitted).

24   [8]      *Degirmenci v. Sapphire-Fort Lauderdale, LLP*, 693 F.Supp.2d 1325, 1347 (S.D. Fla. 2010); *Cal. Fed. Bank v. Matreyek*, 8 Cal.App.4th 125, 131-34 (1992); *see also* Rest. Restitution,

25   § 12 cmt. a.

26   [9]      *Virtanen v. O'Connell,* 140 Cal.App.4th 688, 707 (2006); *see Wilson Cypress Co. v. Logan*, 120 Fla. 124, 130, 162 So. 489, 492 (Fla. 1935); *Nat'l Bank of Melbourne & Trust Co. v.*

27   *Batchelor*, 266 So.2d 185, 187 (Fla. App. 1972); *McDowell v. James Talcott, Inc.*, 183 So.2d 592-93 (Fla. App. 1966).

28

obtain it on their own. That consent obviates the Cannons' conversion claim. *See McKenzie,* slip opn. at 32-33.

The breach of fiduciary duty claim fails because a lender owes a borrower no fiduciary duty in handling payments to and from a mortgage loan's escrow account for taxes and insurance.[10] *Lass* is distinguishable because there the lender chose not to argue it owed no fiduciary duty. *See Lass,* 2012 WL 4240504, at *9 ("The Bank does not contest the existence of a duty …."). *See McKenzie,* slip opn. at 33.

## C. The Cannons' Statutory Claims Should Be Dismissed

### 1. The Cannons Allege No TILA Violation

Long on invective, but short on statutory analysis, the Cannons' argument fails to support their TILA claim. *See* Opp., 15-19. Unlike California's UCL, TILA does not forbid misleading statements generally or require disclosure of all information a borrower may, in hindsight, think important. Instead, TILA and Reg. Z require disclosure of only a select set of terms at specified times and in specified disclosure documents. Courts are not at liberty to stretch TILA or Reg. Z "beyond their obvious limits to construe them as a mandate for [generalized] disclosure." *Hauk v. JP Morgan Chase Bank USA,* 552 F.3d 1114, 1121 (9th Cir. 2009).

The Cannons begin by complaining that Wells Fargo did not accurately disclose (or failed to correct misdisclosures about) flood insurance requirements in the Cannons' mortgage and NSFH. *See* Opp., 16:15-26. The argument fails for two reasons. First, the mortgage clearly states the borrower's insurance obligations. *See* pp. 3-7 above. Second, TILA does not regulate "disclosures" in a mortgage or NSFH, but instead mandates that only certain information—not including insurance requirements[11]—to be disclosed in a separate Truth-in-Lending Disclosure Statement.

---

[10] *Rose v. J.P. Morgan Chase, N.A.,* 2012 WL 3205426, at *3-4 (E.D. Cal. 2012); *Petherbridge v. Prudential Sav. & Loan Ass'n,* 79 Cal.App.3d 509, 522-24 (1978).

[11] The Cannons cite 12 C.F.R. § 226.4(b)(8) for the proposition that premiums on property insurance "written in connection with a credit transaction" are included in the finance charge. *See* Opp., 17:2-6. The regulation, however, does not apply to insurance the lender buys when the borrower fails to do so, as required by the loan agreement. "Insurance sold after consummation in closed-end credit transactions … is not considered 'written in connection with' the credit transaction if the insurance is written because of the consumer's default (for example, by failing to obtain

(Fn. cont'd)

1    *See* 15 U.S.C. § 1638(a); 12 C.F.R. § 226.18.

2         Next, the Cannons cite several district court decisions for the proposition that a lender must

3    give supplemental disclosures when it buys and charges a borrower for insurance "not authorized

4    by the loan documentation."  *See* Opp., 17:6-19:7.  However, as already shown, Section 5 of the

5    Cannons' mortgage did *authorize* Wells Fargo to purchase RCV flood insurance when the Can-

6    nons failed to do so.  Thus, the cited cases, even if legally correct,[12] do not help the Cannons.

7    Magistrate Judge Spero so held in *McKenzie*, slip opn. at 36 (fn. omitted):

8              Plaintiffs base their TILA claim on the theory that the letters sent to
              Plaintiffs notifying them that their coverage was insufficient altered
9             the terms of their loans and Defendants failed to disclose this
              alteration.  However, as discussed previously, the contracts already
10            provided Defendants the authority to require coverage beyond the
              principal loan balance.  The letters sent to Plaintiffs, therefore, did
11            not alter the terms of the loans and no disclosure under TILA was
              required.  See *Travis v. Boulevard Bank, N.A.*, 880 F. Supp. 1226,
12            1229-30 (N.D. Ill. 1995) (requiring post-consummation TILA
              disclosures under 12 C.F.R. 226.18 only where the defendant force-
13            placed insurance *without proper authorization*); *Wulf v. Bank of
              Am., N.A.*, 798 F. Supp. 2d 586, 588-89 (E.D. Pa. 2011) (same).

14

15        **2.    The Cannons Cannot State A UCL Claim**

16         The Cannons live in Florida.  Their mortgage chose Florida law.  The Cannons are not

17   entitled to the protections of California law and cannot state a claim under California's UCL.

18         Contrary to the Cannons ' assertion, Opp., 21:1-2, the mere fact that Wells Fargo maintains

19   its principal office in San Francisco does not make California law applicable to all of Wells

20   Fargo's worldwide business dealings.[13]  The complaint does not allege that any conduct relevant

21   to the Cannons' claim occurred in or even "emanated from" California.  Hence, they have not

22

23   (Fn. cont'd)
     or maintain required property insurance) …."  12 C.F.R. pt. 226 Supp. I, ¶¶ 4(b)(7) and (b)(8).2.

24   [12] The Ninth Circuit has rejected the cited cases' reasoning.  Rather, as it has explained TILA
     requires only disclosures that are accurate when made.  A later "breach of a credit agreement
25   based on conduct independent of the disclosures does not necessarily give rise to a TILA claim."
     *Hauk*, 552 F.3d at 1120.

26   [13] *Norwest Mortg., Inc. v. Superior Court*, 72 Cal.App.4th 214, 224-25 (1999); *In re Toyota
27   Motor Corp.*, 785 F.Supp.2d 883, 916-17 (C.D. Cal. 2011); *In re Nat'l W. Life Ins. Co. Deferred
     Annuities Litig*, 467 F.Supp.2d 1071, 1089 (S.D. Cal. 2006).

28

1  averred facts showing their standing to sue under the UCL.

2        Nor may the Cannons acquire standing to sue under the UCL by alleging a class of bor-

3  rowers some of whom are Californians who might bring such a claim.  *See* Opp., 21:3-6.  "When a

4  named plaintiff has no cognizable claim for relief, 'she cannot represent others who may have

5  such a claim, and her bid to serve as a class representative must fail.' "  *Sanford v. Memberworks,*

6  *Inc.*, 625 F.3d 550, 560 (9th Cir. 2010) (citations omitted).  "Here, because the [Cannons] lack a

7  cognizable [UCL] claim, dismissal of their individual claims [is] proper, and they cannot represent

8  a[] [UCL] class."  *Id.*

9        **3.        The Cannons Have No RESPA Claim**

10       The Cannons cannot state a viable RESPA claim because lender placed insurance first pur-

11  chased three years after the consummation of their loan is not a "settlement service" provided in

12  connection with a real estate settlement.  *See* Opening Memo., 23:21-24:7, citing *McNeary-Callo-*

13  *way v. JP Morgan Chase Bank, N.A.*, 2012 WL 1029502, at *20 (N.D. Cal. 2012).  The Cannons'

14  opposition simply ignores this crucial defect in their claim and instead argues about irrelevancies

15  such as RESPA's limitations period.  *See* Opp., 21:8-22:15.  At times, silence is golden; here, si-

16  lence concedes defeat.

17  **III.        THE FILED RATE DOCTRINE BARS THE CANNONS' KICKBACK THEORY**

18       Insofar as the Cannons base their claims on alleged kickbacks, back-dating of policies, and

19  the like, Wells Fargo incorporates by reference the arguments set forth in its separate reply memo-

20  randum in support of its Rule 12(b)(1) motion to dismiss.  The filed rate doctrine bars the Can-

21  nons' claims for the reasons stated in that memorandum.

22  **IV.   THE NATIONAL BANK ACT PREEMPTS THE CANNONS' STATE LAW CLAIMS**

23       As shown in the opening memo., pp. 24-26, the National Bank Act preempts the Cannons'

24  state law claims because they are non-contractual, state law efforts to regulate Wells Fargo's loan

25  servicing activities, its ability to require insurance on security for loans, and its setting terms of

26  credit and associated fees.

27

28

To restate, state law is preempted where it prevents or significantly interferes with a bank's exercise of its powers.[14] The Office of the Comptroller of the Currency (the "OCC") has promulgated regulations specifying those areas where national banks may exercise their federally-granted powers free from state interference, including "the ability of a creditor to require or obtain private mortgage insurance, insurance for other collateral, or other credit enhancements or risk mitigants"[15]

Additional guidance from the OCC makes clear that Wells Fargo was exercising its powers as a National Bank in this case. The OCC's "Insurance Activities Comptroller's Handbook" discusses permissible insurance activities for a national bank.[16] The handbook states that "[a] national bank may act as a finder to bring together potential purchasers and sellers of insurance" and "may receive a fee" for doing so.[17] The handbook goes on to provide guidelines for the OCC in regulating and supervising national bank's insurance activities.

This is just what Wells Fargo did here. It obtained insurance for plaintiffs from ASIC through its insurance agent affiliate, which received a commission for this service. Plaintiffs' suit challenges the commission that ASIC paid WFI. *See* FAC, ¶ 54 ("the notion that any 'commission' is due to Wells Fargo or its affiliates is false.") Hence, plaintiffs' suit interferes directly with conduct that the OCC has determined falls within Wells Fargo's power as a national bank, and with the OCC's regulation and supervision of that conduct.[18]

In their opposition, plaintiffs rely heavily on 12 U.S.C. § 25b. *See* Opp., 24:14-25:2. That section was enacted as part of the Dodd-Frank Act. Pub. L. 111-203, § 1044, 124 Stat. 1376,

---

[14] *Barnett Bank of Marion Cty., N. A. v. Nelson*, 517 U.S. 25, 33 (1996); *see Watters v. Wachovia Bank, N.A.,* 550 U.S. 1, 12 (2007).

[15] 12 C.F.R. § 34.4(a)(2).

[16] The OCC's handbook is available at http://www.occ.gov/publications/publications-by-type/comptrollers-handbook/insactfinal.pdf. For ease of reference, a copy of the handbook is attached as Exhibit A.

[17] *Id.*, p. 10.

[18] The OCC also issued an interpretive letter in which it opined that a bank's sale of credit-related insurance, in that case crop insurance, is "incidental to the business of banking" and, hence, falls within a national bank's incidental powers. *See* OCC Interpretative Letter #812, issued December 29, 1997, at 1-4 available at http://www.occ.gov/static/interpretations-and-precedents/jan98/int812.pdf. For ease of reference, a copy has been attached as Exhibit B.

2014-17 (July 21, 2010). Under the Act's express terms, § 25b does not apply to any contract entered into before its enactment. *Id.*, § 1043, 124 Stat. at 2014. The Cannons' note and mortgage were entered into five years before Dodd-Frank's enactment. So § 25b is inapplicable. *See Copeland-Turner v. Wells Fargo Bank,* 800 F.Supp.2d 1132, 1137-38 (D. Or. 2011).

The Cannons also argue that 12 C.F.R. § 7.4002 does not apply because "ASIC's insurance premiums are not 'fees and charges' connected to any banking services," and 12 C.F.R. § 34.4 "is limited to the moment a national bank makes a loan." Opp., 25:14-23. The Cannons cite no authority for either proposition. Neither makes any sense. The insurance premiums are charges that Wells Fargo passes on to the borrower in the course of its banking service of mortgage loan servicing. Similar claims regarding passed through fees for tax services were held preempted by § 7.4002 in *Martinez v. Wells Fargo Bank, N.A.*, 2007 WL 2213216, at *4-5 (N.D. Cal. 2007). Also, § 34.4 applies well beyond the moment a loan is made. By its express terms, the regulation, § 34.4(a)(10), preempts state laws relating to loan servicing. A loan is serviced only after it is made. It is no surprise, therefore, that cases have applied § 34.4 to post-consummation events. *See, e.g., Frye v. Bank of America, N.A.*, 2010 WL 3244879, at *6-7 (N.D. W.Va. 2010); *Lomax v. Bank of America, N.A.*, 435 B.R. 362, 371 (N.D. W.Va. 2010).[19]

Finally, the Cannons rely on *Williams v. Wells Fargo Bank, N.A.*, 2011 WL 4901346 (S.D. Fla. 2011) and *Kunzelmann v. Wells Fargo Bank, N.A.*, 2012 WL 2003337 (S.D. Fla. 2012). Wells Fargo submits that those cases were wrongly decided on the preemption issue and others. This Court should not follow them into error.

## V. THE JURY TRIAL WAIVER SHOULD BE ENFORCED

In a case in federal court, federal law determines the enforceability of a jury trial waiver. *Merrill Lynch & Co.,Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 188 (2d Cir. 2007). Under federal law, "a contractual waiver is enforceable if it is made knowingly, intentionally, and voluntar-

---

[19] The Cannons also argue that § 34.4 "excludes contract and tort claims from preemption." Opp., 25:22-26. That is true only "to the extent that they only incidentally affect the exercise of national banks' real estate lending powers." 12 C.F.R. § 34.4(b) (2011). In this instance, the effect is more than incidental.

Reply Memo. i/s/o Motion To Dismiss 1st Amended Compl.

ily." *Id.*  Just before their signature, the Cannons' mortgage stated:

> **25.    Jury Trial Waiver**.  The Borrower hereby waives any right to trial by jury in any action, proceeding, claim or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

Compl., Ex. A, p. 23.

The Cannons try to wriggle out of this clear jury trial waiver because the paragraph was at the end of their mortgage and they had no opportunity to negotiate the standard terms of their Fannie Mae/Freddie Mac mortgage.  *See* Opp., 26:21-27:1.  Neither excuse works.  This same clause has been repeatedly enforced despite its location and its being a standard, non-negotiable term of every Florida Fannie Mae/Freddie Mac mortgage.[20]

The Cannons also claim that the motion to strike their jury trial demand is "premature as to claims that do not arise out of the mortgage contract."  Opp., 27:2-7.  The jury trial waiver is not so limited.  It applies to any claim that "aris[es] out of or [is] in any way related to" the Cannons' note or mortgage.  The Cannons do not (and cannot truthfully) say that any of the claims they alleged fall outside that broadly inclusive provision.

## VI.    CONCLUSION

For the reasons stated above and those stated in the opening memorandum, the Court should dismiss the Cannons' claims and dismiss or strike their jury trial demand.

---

[20]    *See Kunzelmann,* 2012 WL 2003337, at *6; *Correa v. BAC Home Loans Servicing LP*, 2012 WL 1176701, at *15-16 (M.D. Fla. 2012); *Madura v. BAC Home Loans Servicing L.P.*, 851 F.Supp.2d 1291, 1294 (M.D. Fla. 2012); *Sekesen v. Aegis Funding Corp.*, 2010 WL 1249443, at *1 (S.D. Fla. 2010); *Collins v. Countrywide Home Loans, Inc.*, 680 F.Supp.2d 1287, 1295-96 (M.D. Fla. 2010); *Oglesbee v. IndyMac Fin. Servs., Inc.*, 675 F.Supp.2d 1155, 1158-59 (S.D. Fla. 2009).

DATED: November 5, 2012

SEVERSON & WERSON
A Professional Corporation


By: _____/s/ Jonah S. Van Zandt_____
                    Jonah S. Van Zandt

Attorneys for Defendant
WELLS FARGO BANK, N.A.