UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STANLEY D. CANNON, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>WELLS FARGO BANK. N.A., *et al.*,<br><br>    Defendants.<br>_____/ | No. C-12-1376 EMC<br><br><br>**AMENDED ORDER GRANTING DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>**(Docket No. 106)** |

Plaintiffs Stanley D. Cannon, Patricia R. Cannon, and Cheryl Bullock have filed a class action against Wells Fargo Bank, N.A. In essence, Plaintiffs challenge Wells Fargo's business practices related to force-placed flood insurance. Currently pending before the Court is Wells Fargo's motion to dismiss certain claims in Plaintiffs' second amended complaint ("SAC"). The claims that Wells Fargo seeks to dismiss are (1) the claim for violation of the anti-tying provisions of the Bank Holding Company Act ("BHCA"), *see* 12 U.S.C. § 1972, and (2) all claims based on a "backdating" (as opposed to "kickback") theory.

## I. FACTUAL & PROCEDURAL BACKGROUND

Plaintiffs allege the following in their SAC.

Wells Fargo is a national bank. *See* SAC ¶ 20. Part of its business relates to the mortgage industry. Wells Fargo's mortgage business includes mortgage lending, purchasing mortgages on the secondary market, and mortgage servicing. *See* SAC ¶ 22. At issue in the instant case is Wells Fargo's mortgage servicing.

1  According to Plaintiffs, under their mortgages, they are required to maintain acceptable flood
2  insurance on the real property securing their loans. *See* SAC ¶ 2. If not, then the lender may
3  purchase insurance for them – and at their cost. This is called force-placed or lender-placed
4  insurance. *See* SAC ¶ 2. For example, the Cannons' mortgage[1] provides as follows:

> 5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by . . . hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. . . .
>
> If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. . . .

SAC, Ex. A (Mortgage § 5).

Plaintiffs admit that force-placed insurance is "standard and appropriate." SAC ¶ 2. They argue, however, that, while acting as a mortgage servicer, Wells Fargo has improperly exploited force-placed insurance to its advantage. More specifically, Plaintiffs contend that Wells Fargo has an exclusive purchasing arrangement with a third party, American Security Insurance Company ("ASIC"), under which Wells Fargo will purchase all force-placed insurance from ASIC and in return ASIC will pay a kickback (10-20% of every premium) to either Wells Fargo or its affiliate, Wells Fargo Insurance, Inc. *See* SAC ¶¶ 3-6. The cost of insurance from ASIC is excessive – "at least twice as much, and sometimes up to 10 times as much" as the cost of insurance from other companies. SAC ¶ 7. While Wells Fargo claims that the kickbacks are commissions that Wells Fargo Insurance, Inc. gets as the insurance agent – *i.e.*, for finding and placing the insurance policies – Plaintiffs maintain, "there is no 'finding' involved." SAC ¶ 9. According to Plaintiffs, "Wells Fargo Insurance, Inc. performs no services whatsoever" because Wells Fargo already has in place

---

[1] According to Plaintiffs, Ms. Bullock's mortgage has terms that are "materially identical to those contained in [the Cannons'] mortgage. *See* SAC ¶ 50.

2

"written contracts with ASIC" under which it has agreed to purchase all force-placed insurance from ASIC. SAC ¶ 9.

According to Plaintiffs, the benefit that Wells Fargo gets from ASIC for the kickbacks is not entirely obvious. Wells Fargo, when acting as a mortgage servicer, actually outsources many of its insurance-relating servicing responsibilities to ASIC. *See* SAC ¶ 8. "Wells Fargo pays ASIC a below-cost fee for these services, but gets the cost of these services returned when ASIC kicks back a portion of every premium it receives to Wells Fargo. [Thus,] [b]orrowers are forced to foot the bill for Wells Fargo's outsourcing arrangement." SAC ¶ 8.

In addition to the kickback scheme, Plaintiffs allege that Wells Fargo has engaged in an additional improper practice related to force-placed insurance. More specifically, Plaintiffs assert that Wells Fargo has a practice of force-placing *retroactive* insurance policies covering periods of time in the past where coverage had lapsed – even where "there are no claims during the lapsed period and the homeowner has since secured standard insurance." SAC ¶ 77. This practice has been denominated "backdating," both by this Court and other courts.[2]

In the pending motion to dismiss, Wells Fargo argues that all claims based on the backdating theory should be dismissed. Wells Fargo further argues that an anti-tying claim brought under the BHCA should also be dismissed.

## II. DISCUSSION

A.  Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In considering such a motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are

---

[2] The Court notes that it addresses herein only Plaintiffs' "pure" backdating claims. To the extent Plaintiffs have alleged that Wells Fargo retroactively placed insurance to get a kickback, that is really a kickback claim.

1  insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir.
2  2009). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough
3  facts to state a claim to relief that is plausible on its face.'" *Id.* "A claim has facial plausibility when
4  the plaintiff pleads factual content that allows the court to draw the reasonable inference that the
5  defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see*
6  *also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "The plausibility standard is not akin to
7  a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted
8  unlawfully." *Iqbal*, 129 S. Ct. at 1949.

B.  Tying Claim

The BHCA prohibits certain tying arrangements. More specifically, the BHCA provides as follows:

> (1) A bank shall not in any manner extend credit, lease or sell property of any kind, or furnish any service, or fix or vary the consideration for any of the foregoing, on the condition or requirement –
>
> . . . .
>
> (B) that the customer shall obtain some *additional* credit, property, or service from a bank holding company of such bank, or from any other subsidiary of such bank holding company . . . .

12 U.S.C. § 1972(1)(B) (emphasis added). In their complaint, Plaintiffs maintain that Wells Fargo is furnishing a service on the condition that the borrower shall obtain an additional service from Wells Fargo Insurance, Inc., which is a subsidiary of Wells Fargo's holding company, Wells Fargo & Company. *See* SAC ¶¶ 147-49. As alleged in Plaintiffs' complaint, "[t]he 'tying product' is Wells Fargo's service of purchasing insurance on borrowers' behalf." SAC ¶ 156. "The 'tied product' . . . is WFI's [*i.e.*, Wells Fargo Insurance, Inc.'s] 'service' of acting as an insurance agent for force-placed insurance." SAC ¶ 155.

In its motion, Wells Fargo makes the following arguments: (1) There is no tying product because Wells Fargo purchases insurance on its own behalf – *i.e.*, to protect its own interests – and not any borrower's; (2) there is no tied product because Plaintiffs have admitted in their complaint that Wells Fargo Insurance, Inc. does not actually perform any service (*i.e.*, it receives a

"commission" for doing nothing); (3) there can be no tying unless the products are distinct and here they are not; and (4) even if there is a tying arrangement, a § 1972 claim is viable only where the banking practice is unusual in the banking industry. For purposes of this opinion, the Court need only address the third argument.

In its third argument, Wells Fargo focuses on the requirement that, in order for there to be a tie, there must be distinct products or services. This requirement is clear from the statutory language. *See* 12 U.S.C. § 1972(1)(B) (providing that "[a] bank shall not in any manner . . . furnish any service . . . on the condition or requirement . . . that the customer shall obtain some *additional* . . . service from a bank holding company of such bank, or from any other subsidiary of such bank holding company") (emphasis added); *S&N Equip. Co. v. Casa Grande Cotton Fin. Co.*, 97 F.3d 337, 346 (9th Cir. 1996) (stating that "[a] tie-in is an arrangement by one party to sell one product (the tying product), but only on the condition that the buyer also purchase a *different* . . . product (the tied product)") (emphasis added; internal quotation marks omitted). In *S&N*, the Ninth Circuit noted that the question of whether there are two distinct products, or in fact only one, "turns on the character of the demand for the two items." *Id.* (internal quotation marks omitted). The court noted, for example, that, in *McGee v. First Federal Savings & Loan Association*, 761 F.2d 647 (11th Cir. 1985), the Eleventh Circuit found that "loan and loan-related appraisal services are not two products because 'there is no legitimate consumer demand by a borrower to purchase loan-related appraisal services separate from the purchase of the loan itself.'" *S&N*, 97 F.3d at 346.

Wells Fargo makes two different arguments regarding the distinct products requirement. First, it argues that there are no distinct products because there is no customer demand at all for either the tying product (Wells Fargo's service of purchasing insurance on borrowers' behalf, *see* SAC ¶ 156) or the tied product (Wells Fargo Insurance, Inc.'s "'service' of acting as an insurance agent for force-placed insurance," SAC ¶ 155). According to Wells Fargo, there is no real customer demand in either case because the customer (*i.e.*, the borrower) actually "plays no role in [the] process" – it is the lender (or the servicer as the lender's agent) that selects the insurance. Mot. at 9. Second, it makes the argument that there are no distinct products because "purchasing insurance for someone and being an insurance agent for someone are the same thing." Reply at 4.

5

The Court need not address the former argument because the latter argument is dispositive. As Wells Fargo points out, Plaintiffs have failed to explain "how . . . the service of purchasing insurance on [a borrower's] behalf [is] different [from] the service of being [a borrower's] agent for obtaining insurance." Reply at 1; *see also* SAC ¶ 156 (alleging that "[t]he 'tying product' is Wells Fargo's service of purchasing insurance on borrowers' behalf"); SAC ¶ 155 (alleging that "[t]he 'tied product' . . . is WFI's [*i.e.*, Wells Fargo Insurance, Inc.'s] 'service' of acting as an insurance agent for force-placed insurance"). In short, the service of purchasing insurance and the service of being the agent for obtaining the insurance are really nothing more than two sides of the same coin. The purported distinction presented herein is even less viable than that presented in *McGee* where the Eleventh Circuit found that "loan and loan-related appraisal services are not two products because 'there is no legitimate consumer demand by a borrower to purchase loan-related appraisal services separate from the purchase of the loan itself.'" *S&N*, 97 F.3d at 346. In the instant case, there is no functional distinction between the two putative services.

None of Plaintiffs' arguments to the contrary are availing. For example, the Third Circuit case that Plaintiffs cited at the hearing, *see In re Insurance Brokerage Antitrust*, 618 F.3d 300 (3d Cir. 2010), does not address the issue of whether products or services are distinct for tying purposes.[3] To the extent Plaintiffs argue that whether two products or services are distinct cannot be resolved on a motion to dismiss because it is a factual question, *see* Opp'n at 6, the Court acknowledges that such can be the case in some circumstances. *Cf. S&N*, 97 F.3d at 346-47 (at summary judgment, stating that "there is enough doubt in the record regarding whether a legitimate consumer demand exists for ginning services without loans and vice versa, that we should not attempt to decide the defendants' claim of a unified market here"; remanding to the district court to decide in the first instance). But here, Plaintiffs have failed to articulate plausibly how, under the facts alleged in this case, consumer demand for the service of purchasing insurance is separate from the consumer demand for the service of being the agent in obtaining insurance, particularly in the context presented herein which involves the forced placement of insurance. To the extent Judge

---

[3] Contrary to what Plaintiffs suggested at the hearing, they did not cite *In re Insurance Brokerage Antitrust Litigation* in their papers.

6

1 Alsup found a factual question that could not be resolved at the 12(b)(6) phase in *Lane v. Wells Fargo Bank, N.A.*, No. C 12-04026 WHA, 2013 U.S. Dist. LEXIS 58920, at *12 (N.D. Cal. Apr. 24, 2013) – a case similar to the instant case – the Court respectfully disagrees.

Finally, the Court notes that, at the hearing, Plaintiffs tried to recharacterize what the tying product or service is in the case at bar, claiming that it is the insurance product itself (rather than the service of purchasing the insurance). The problem is that is not what Plaintiffs have alleged in their complaint. Furthermore, even if Plaintiffs had pled such in their complaint, they would fare no better. As Wells Fargo argued at the hearing, Plaintiffs have never suggested that Wells Fargo directly sells insurance itself. Rather, it is ASIC who sells the insurance. The putative "additional" service would not be one provided by the bank holding company or a subsidiary thereof as required by § 1972(1)(B) of the BHCA.

Accordingly, the Court grants the motion to dismiss the BHCA tying claim. The dismissal is with prejudice because, although the Court gave Plaintiffs multiple opportunities at the hearing to explain how there were distinct products or services provided by the bank holding company or subsidiary thereof, Plaintiffs failed to do so. The only alternative offered by Plaintiffs was that the tying product was the insurance (rather than the service of purchasing insurance). As discussed above, this alternative theory is not viable, and thus any amendment by Plaintiffs would be futile.

C.  Backdating Claims

As to the backdating claims brought by Plaintiffs, Wells Fargo makes two arguments: (1) backdating is required by the National Flood Insurance Act ("NFIA"); and (2) the mortgages that Plaintiffs signed give the lender (including its agents) the authority to backdate. The Court addresses the latter argument first.

1.  Mortgages

According to Wells Fargo, the mortgages that Plaintiffs had with their lenders permitted backdating. As noted above, the Cannons' mortgage[4] provides as follows:

---

[4] According to Plaintiffs, Ms. Bullock's mortgage has terms that are "materially identical to those contained in [the Cannons'] mortgage. *See* SAC ¶ 50.

7

> 5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by . . . hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) *and for the periods that Lender requires*. . . .

SAC, Ex. A (Mortgage § 5) (emphasis added).

On the face of the mortgage, there are no limits as to the periods for which the lender may require insurance. Presumably, though, Plaintiffs' position is that there are implied limits – *i.e.*, through the implied covenant of good faith and fair dealing – that require Wells Fargo to act reasonably. *See QBE Ins. Corp. v. Chalfonte Condo Apt. Ass'n*, 94 So. 3d 541, 548 (Fla. 2012) (stating that "Florida law does recognize an implied covenant of good faith and fair dealing in every contract"). Thus, the ultimate question is whether, consistent with that implied covenant, it is reasonable for a lender to require flood insurance as of the date of lapse of insurance, even if, as it turns out, "there are no claims during the lapsed period and the homeowner has since secured standard insurance." SAC ¶ 77.

Wells Fargo takes the position that the Court can find the contract in this case reasonable as a matter of law. It cites in support, *Schilke v. Wachovia Mortg., FSB*, 820 F. Supp. 2d 825, 834 (N.D. Ill. 2011) (stating that "[p]laintiff's 'backdating' allegations ignore her contractual duty in her mortgage agreement to maintain continuous, uninterrupted insurance on the property, which serves as security for the loan, and also ignore the terms authorizing Plaintiff's lender or servicer to 'do and pay for whatever *it deems reasonable or appropriate* to protect the Lender's rights in the Property'") (emphasis in original). According to Wells Fargo, it is reasonable to backdate flood insurance to the date of lapse because Wells Fargo had no way of knowing whether a loss had occurred during the lapsed period:

> Wells Fargo was not somehow required to take plaintiffs' word that no damage had occurred during the period in which their coverage lapsed, even if such assurance had been offered, which plaintiffs do not allege. Nor is a lender required to arrange for, and bear the considerable cost of, inspecting property each time a borrower breaches his obligation to maintain required insurance coverage to attempt to determine whether a loss has occurred.

8

Mot. at 14. As the court observed in *Webb v. Chase Manhattan Mortg. Corp.*, No. 2:05-cv-0548, 2008 U.S. Dist. LEXIS 42559 (S.D. Ohio May 28, 2008), "Chase had to ensure that the property was continuously covered in the event that a loss had occurred during the lapse in insurance coverage because no inspection of the property was done." *Id.* at *54.

In its reply brief, Wells Fargo makes additional points that have merit. For example:

> What if damage occurred during the lapse, but its effect is not apparent until much later (such as mold or structural weakening)? Even if a borrower were communicating with a bank about his breach – a rarity – and even if a bank could simply take a borrower's word that there had been no damage – which no prudent bank could – what happens when the borrower is not aware of the damage? Absent coverage effective on the lapse date, what protects the bank?

Reply at 5-6. Wells Fargo also contends that the Court *must* deem it reasonable given that it is now clear that the NFIA explicitly permits (if not requires) backdating. *See* 12 U.S.C. § 4012a(e)(2); *see also* Reply at 7 ("Why else, of course, would federal law ever authorize it?").

The Court finds Wells Fargo's position as applied to flood insurance persuasive. Notably, Plaintiffs failed to explain at the hearing why it would be unreasonable to backdate flood insurance given that, *e.g.*, some damage may not be readily apparent (such as mold).

Plaintiffs cite *McNeary-Calloway v. JP Morgan Chase Bank, N.A.*, 863 F. Supp. 2d 928 (N.D. Cal. 2012), for the proposition that the mortgage does not permit backdating. In *McNeary-Calloway*, Judge Spero noted that nothing "in the contract authorize[s] backdating FPI policies to cover periods of time where no loss occurred. Because the Court cannot say that the contracts' terms unambiguously authorize Defendants' alleged behavior, the Court denies Defendants' motion to dismiss the California Plaintiffs' breach of contract claim." *Id.* at 956; *see also id.* at 962 (in evaluating § 17200 "unfairness" claim, stating that "[t]his practice was disadvantageous to Plaintiffs and unsupported by any apparent reason other than the fact that Defendants stood to benefit financially from the high-priced, backdated policy"). But here, this Court finds the language in the mortgage does not preclude the practice, and Wells Fargo *has* articulated a reasonable basis for the backdating practice. Finally, the Court notes that *McNeary-Calloway* was decided several months before § 4012a(e)(2) of the NFIA was enacted. As noted below, Congress's enactment of §

4012a(e)(2) (and the legislative history of the predecessor bill) suggests that backdating is viewed by Congress as a reasonable practice.

Plaintiffs also rely on *Lane*, where Judge Alsup – confronted with the same mortgage language as in the instant case, *see Lane*, No. C-12-4026 WHA (Docket No. 83) (FAC ¶ 40 & Ex. A) (Mortgage § 5) – stated that, "[b]ecause there is a dispute on the interpretation of the mortgage language, it is not appropriate to determine the issue on a motion to dismiss." *Lane*, 2013 U.S. Dist. LEXIS 58920, at *9. But contract interpretation including the scope of the implied covenant of good faith and fair dealing in the context of this case is a question of law.[5] *See ABCO Premium Fin. LLC v. American Int'l Group, Inc.*, No. 11-23020-CIV-SCOLA/BANDSTRA, 2012 U.S. Dist. LEXIS 111833, at *8 (S.D. Fla. Aug. 9, 2012) (stating that, "'[a]s with all contracts, the interpretation of an insurance contract is a question of law to be determined by the court'"); *see also Shibata v. Lim*, 133 F. Supp. 2d 1311, 1318 (M.D. Fla. 2000) (stating that "[t]he implied covenant is not a limitless duty or obligation" but rather "is an interpreting, gap-filling tool of contract law"); *Barnes v. Burger King Corp.*, No. No.:94-889-CIV-UNGARO-BENAGES, 1995 U.S. Dist. LEXIS 21266, at *32 (S.D. Fla. Oct. 13, 1995) (indicating that "the implied covenant is only used 'as a means of interpreting express provisions of a contract in a manner consistent with the parties' expectations'"). There are no disputed issues of fact which inform that interpretation in the instant case.

2. NFIA

Because the mortgage permits backdating, the only remaining question is whether the NFIA bars the practice.

Title 42 U.S.C. § 4012a(b)(1)(A) provides in relevant part that

> [e]ach Federal entity for lending regulation . . . shall by regulation direct regulated lending institutions –
>
> (A) not to make, increase, extend, or renew any loan secured by improved real estate or a mobile home located or to be located in an area that has been identified . . . as an area having special

---

[5] Plaintiffs have not made any contention, either in their papers or at the hearing, that, even if there were objective reasons for the backdating practice, Wells Fargo had subjective bad faith in deciding to impose the practice.

> flood hazards and in which flood insurance has been made available . . . unless the building or mobile home . . . is covered *for the term of the loan* by flood insurance . . . .

42 U.S.C. § 4012a(b)(1)(A) (emphasis added). In its papers, Wells Fargo argues that the phrase "for the term of the loan" means that "a lender must ensure *continuous* flood insurance coverage," Mot. at 11 (emphasis added), thus implicitly authorizing, if not actually requiring, backdating (*i.e.*, insuring that there is coverage once there is a lapse for the entire period of the loan).

In *Lane*, Judge Alsup observed that, "[w]hile the [above] statute suggests that continuous coverage was necessary, the plain language of the statute did not *require* backdating force-placed insurance and charging borrowers the increased cost. [Indeed,] the language did not even appear in the section that permits force-placement of insurance." *Lane*, 2013 U.S. Dist. LEXIS 58920, at *4 (emphasis in original). The Court agrees with Judge Alsup that the plain language of § 4012a(b)(1)(A) does not expressly *require* backdated coverage. However, as noted above, since the Court finds that backdating of flood insurance is permitted by the mortgage, the only question that needs to be resolved here is whether, notwithstanding the mortgage, the NFIA bars backdating. It does not.

Although the plain language of § 4012(a)(b)(1)(A) does not require backdating (as Wells Fargo contends), it does not bar it. In fact, NFIA appears to authorize the practice. Section 4012a(e)(2) of the NFIA provides:

> If the borrower fails to purchase such flood insurance within 45 days after notification under paragraph (1), the lender or servicer for the loan shall purchase the insurance on behalf of the borrower and may charge the borrower for the cost of premiums and fees incurred by the lender or servicer for the loan in purchasing the insurance, including premiums or fees incurred for coverage *beginning on the date on which flood insurance coverage lapsed or did not provide a sufficient coverage amount*.

42 U.S.C. § 4012(e)(2) (emphasis added). Although the above version of § 4012a(e)(2) was not passed until July 2012, *i.e.*, after Plaintiffs initiated this lawsuit, *see* 112 P.L. 141, at *100244 (July 6, 2012); *see also Lane*, 2013 U.S. Dist. LEXIS 58920, at *6 (stating that the above version of § 4012a(e)(2) became effective as of January 2013), the Court agrees with Wells Fargo that this section was intended "'to clarif[y] and codif[y] longstanding practices that allow lenders and

1 servicers to collect premiums and fees incurred for coverage beginning on the date an existing flood
2 insurance policy lapsed or did not provide sufficient coverage,'" Mot. at 11 n.7 (quoting H.R. Rep.
3 No. 112-102), as evidenced by the House Report for a prior bill that was not enacted but that served
4 as the basis for the law that was enacted. *See* Mot. at 11 n.7 (noting that the above version of §
5 4012a(e)(2) was added by the Biggert-Waters Flood Insurance Reform Act of 2012 but originated in
6 the (unenacted) Flood Insurance Reform Act of 2011); Reply at 9.

7        In *Lane*, Judge Alsup gave little weight to the House Report (which reflects that the prior bill
8 was intended to affirm and codify the pre-existing practice of backdating flood insurance) because
9 that Report was "part of a different bill that never passed the Senate and never became law." *Lane*,
10 2013 U.S. Dist. LEXIS 58920, at *7. But, as Wells Fargo points out, the Supreme Court has stated
11 that the legislative history for an unenacted bill can have relevance for the bill that is ultimately
12 enacted, particularly where language is carried forward from the unenacted bill into the enacted one.
13 *See Transcontinental & Western Air, Inc. v. Civil Aero. Bd.*, 336 U.S. 601, 606 n.6 (1949) (stating
14 that "[t]his legislative history is relevant to our problem, for though it relates to the 1937 bill which
15 was not passed, the 'make effective' clause crystallized at that time and appeared in the 1938 bill
16 which was enacted"); *United States v. Emmons*, 410 U.S. 396, 405 n.14 (1973) (stating that remarks
17 made by sponsor with respect to his original bill "are wholly relevant to an understanding of the
18 Hobbs Act, since the operative language of the original bill was substantially carried forward into
19 the Act"); *see also Brock v. Louvers & Dampers, Inc.*, 817 F.2d 1255, 1258 (6th Cir. 1987) (stating
20 that, "[a]lthough the proposed amendment was not passed, the legislative history is relevant because
21 the following year Congress enacted a similar amendment including the amusement and recreational
22 exemption"); *cf. Owner-Operator Indep. Drivers Ass'n v. Mayflower Transit, LLC*, 615 F.3d 790,
23 792 (7th Cir. 2010) (stating that "when a statute's language *conflicts* with its legislative history . . . it
24 is the enacted text rather than the unenacted legislative history that prevails") (emphasis added).
25 That is the case here. Thus, the House Report for the prior bill is relevant to determining Congress's
26 intent in enacting § 4012a(e)(2).

To the extent Plaintiffs argue that flood insurance regulations prohibit backdating, *see* 12 C.F.R. § 22.7, that argument is problematic. The regulation is ambiguous.[6] The borrower must obtain flood insurance for "the remaining term of the loan," *id.*, but the regulation does not specify when the policy period must commence; and if the borrower does not obtain flood insurance, the regulation does not specify the permissible limits of the policy period for the force-placed insurance. Although Judge Beeler's decision in *Ellsworth v. U.S. Bank, N.A.*, No. C 12-02506 LB, 2012 U.S. Dist. LEXIS 176277 (N.D. Cal. Dec. 11, 2012), does lend some support to Plaintiffs' position, the Court notes that Judge Beeler did not definitively endorse their interpretation of § 22.7. She simply stated in *Ellsworth* that the bank's interpretation of the regulation – *i.e.*, that insurance was required as of the date of lapse – was not an "unassailable" interpretation and that "perhaps more arguably" the phrase "for the remaining term of the loan" "is prospective beginning no earlier than when the bank determines there is inadequate flood insurance and more likely from the end of the 45-day notice period." *Id.* at *35. To read more into § 22.7 would contravene Congress's intent in enacting § 4012(a)(e)(2) to affirm the practice of backdating of flood insurance.

///

///

///

///

///

---

[6] The regulation provides as follows:

> If a bank, or a servicer acting on behalf of the bank, determines at any time during the term of a designated loan that the building or mobile home . . . securing the designated loan is not covered by flood insurance or is covered by flood insurance in an amount less than the amount required under § 22.3, then the bank or its servicer shall notify the borrower that the borrower should obtain flood insurance, at the borrower's expense, in an amount at least equal to the amount required under § 22.3, *for the remaining term of the loan*. If the borrower fails to obtain flood insurance within 45 days after notification, then the bank or its servicer shall purchase insurance on the borrower's behalf. The bank or its servicer may charge the borrower for the cost of premiums and fees incurred in purchasing the insurance.

12 C.F.R. § 22.7 (emphasis added).

### IV. CONCLUSION

For the foregoing reasons, the Court grants Wells Fargo's motion to dismiss. The BHCA tying claim is dismissed with prejudice. In addition, all claims based on a "pure" backdating theory are dismissed with prejudice. In essence, this case is now based solely on Plaintiffs' kickback theory.

The Court shall hold a further status conference on Thursday, July 17, 2013, at 9:00 a.m. A joint case management statement shall be filed one week prior thereto.

This order disposes of Docket No. 106.

IT IS SO ORDERED.

Dated: July 2, 2013

_____
EDWARD M. CHEN
United States District Judge